UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PLINTRON TECHNOLOGIES USA LLC,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>JOSEPH PHILLIPS, RICHARD PELLY, THOMAS MATHEW, GREG MCKERVEY, and DESIREE MICHELLE GRAY,<br><br>　　　　　　　　　Defendants. | CASE NO. C24-93<br><br>ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER |

This matter comes before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. (Dkt. No. 11.) Having reviewed Defendants Responses (Dkt. Nos. 20, 25), and having held oral argument on February 6, 2024, the Court DENIES the Motion for a Temporary Restraining Order.

**BACKGROUND**

This case arises out of Defendants employment with Plaintiff Plintron Technologies USA LLC ("Plintron"). Defendants are all former employees of Plintron who resigned or were terminated in the last four months. (Complaint ¶¶ 13-17.) Plintron alleges Defendants breached their contract and fiduciary duties, committed fraud and misappropriated trade secrets. (Id. at ¶¶ 137-222.)

Plintron USA is an offshoot of Plintron Global, a telecommunications company based in India. (Response at 1.) Plintron Global expanded into the United States in 2012. (Compl. ¶ 31.) When it did, it hired Phillips to serve as Chief Executive Office, manage US operations, onboard new MVNOs and manage Plintron's commercial relationships and contract with T-Mobile. (Id. at ¶¶ 31-32.) Phillips in turn hired Defendant Richard Pelly to act as Chief Operating Officer and Defendant Thomas Mathew to serve as Executive Vice President. (Id. at ¶ 2.) Phillips also hired Defendant Greg McKervey as Plintron's Senior Director of IT Operations and Defendant Desiree Michelle Gray as an administrative assistant. (Id.)

Defendants all left or were terminated by Plintron in October and early November 2023. (Compl. ¶¶ 13-17.) Plintron brings the following ten causes of action against Defendants: (1) Misappropriation of Trade Secrets ("DTSA") (Federal); (2) Misappropriation of Trade Secrets (State); (3) Breach of Contract against Phillips; (4) Breach of Fiduciary Duties; (5) Unfair Competition; (6) Tortious Interference with Contract against Phillips, Pelly, and Mathew; (7) Tortious Interference with Business Relationships or Expectancy against Phillips, Pelly and Mathew; (8) Fraud; (9) Defamation against Phillips, Pelly, and Mathew; and (10) Conversion.

Plintron now moves for a Temporary Restraining Order ("TRO") on its DTSA claims, its contract claim against Phillips, and its conversion claim. Plintron alleges that Defendants Pelly,

1 | Mathew, and Phillips failed to return their Plintron computers and that all Defendants failed to
2 | return documents and material containing trade secrets that belong to Plintron. (Mot. at 4.) The
3 | main allegation has to do with Phillips and the return of his computer. Phillips refused to return
4 | his Plintron computer because it contains sensitive personal information. (Mot. at 5.) Instead,
5 | Phillips deposited the computer with a third party pending the duration of this aspect of the
6 | litigation. (Id.) At the time of oral argument all Defendants except Phillips had returned the
7 | materials requested. (See Response by Greg, Mathew, McKervey, Pelly (Dkt. No. 25).) Counsel
8 | indicated they could cooperate to have a neutral remove any personal data from Phillips'
9 | computer. Plintron alleges all the Defendants had access to Plintron's trade secrets through the
10 | course of their employment and a TRO is required to preserve the status quo and prevent any
11 | actual or threatened misappropriation. (Id. at 7 -9.)

**ANAYLSIS**

A. **Legal Standard**

A temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, 555 U.S. 7, 22 (2008). The purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered. U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010).

TROs are governed by the same standard applicable to preliminary injunctions. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n. 7 (2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical"). To obtain a TRO, Plintron must show it is (1) likely to succeed on the merits, (2) likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor,

1   and (4) an injunction is in the public interest. Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127

2   (9th Cir. 2009). The purpose of a TRO is to preserve the status quo and prevent irreparable harm

3   until a hearing can take place on the propriety of a preliminary injunction. Reno Air Racing

4   Assoc., Inc v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006).

**B.      Balancing the Winter Factors**

      1.      Likelihood of Success

Likelihood of success on the merits is the "threshold inquiry" and "the most important factor" in determining whether interim, injunctive relief is warranted. Envtl. Prot. Info. Ctr. V. Carlson, 968 F.3d 985, 990 (9th Cir. 2020). If the moving party fails to show a likelihood of success on the merits, the court "need not consider the remaining three [elements]." Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (internal citation omitted).

      a.      Breach of Contract

Plintron brings a breach of contract claim only against Phillips. Though the complaint contains numerous allegations of breach, the pertinent allegation for the purposes of Plintron's motion is Plintron's allegation that Phillips breached his contract by not returning Plintron property. (Mot. at 10.) The Court is not persuaded of Plintron's success on the merits for this aspect of its breach of contract claim.

In order to prevail on a breach of contract claim, a party must establish that (1) a duty imposed by the contract (2) was breached, with (3) damages proximately caused by the breach. Nw. Indep. Forst Mfrs. V. Dep't of Labor & Indus., 78 Wn. App. 707, 712 (1995).

Plintron alleges Phillips breached the "Return Upon Termination" clause of his employment contract, which required Phillips to return "all of [Plintron USA]'s property, including but not limited to intellectual property, trade secrets, information, customer lists, operation manuals, Executive handbook, records and accounts, materials subject to copyright,

trademark, or patent protection, customer and Employer information, credit cards, business documents, reports, automobiles, keys, passes, and security devices." (Mot. at 10.) (alteration in original). Plintron alleges that after Phillips left Plintron, Phillips refused to return the domain name, email system, the "Paychex" payroll system, and the computer he used. (Mot. at 10.) Plintron acknowledges that since the filing of its complaint, Philips returned all but the computer. (Id.) Plintron claims that Phillips' continued withholding of the computer and potential use of trade secrets is preventing Plintron from fully maintaining business operations.

Plintron's arguments are unpersuasive. Though Plintron can demonstrate it has met the first two elements of the breach of contract claim, its argument as to damages is conclusory. Plintron not only fails to explain how Phillips' retention of the computer and his potential use of trade secrets has hindered its business operations, but it provides no evidence for this argument. And Plintron does not claim any part of its operations have ceased or left it unable to do business because of Phillips' failure to return the computer. Because of this failure, Plintron cannot meets its burden to demonstrate success on the merits of this claim.

b.   Defend Against Trade Secrets Claim

Plintron brings both federal and state trade secret claims, and is unlikely to succeed on both of them.

The elements of a DTSA and UTSA claim are substantially similar. Compare 18 U.S.C. § 1839(5), with RCW 19.108.010(2). A plaintiff asserting a DTSA or UTSA claim must establish (1) that it possessed a trade secret; (2) that defendant misappropriated the trade secret; and (3) the "misappropriation caused or threatened damage to the plaintiff." InteliClear, LLC v. ETC Glob. Holdings, Inc., 978 F.3d 653-657-58 (9th Cir. 2020). Under the DTSA and UTSA a trade secret is information that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons . . .;

and (b) the owner of the information has taken reasonable measures to keep such information secret. 18 U.S.C. § 1839(3); RCW § 19.108.010(4)(a)-(b). Courts may grant an injunction to protect against the threat of disclosure or use of trade secret information. 18 U.S.C. § 1836(b)(3)(A); RCW 19.108.020.

Plintron fails to demonstrate that it is likely to succeed on the merits of its DTSA and UTSA claims. The main issue with Plintron's argument is the threat of trade secret disclosure is entirely speculative. In the three months since Defendants have ceased working for Plintron, Plintron cannot point to any trade secret disclosure and has no evidence to support its assertion there is a threat of trade secret disclosure. Plintron asserts Defendants may use Plintron trade secrets in the course of their new employment, and points to the loss of business since Defendants left Plintron as support. (Mot. at 13.) But loss of business does not inherently indicate a trade secret has been misappropriated. And critically, Plintron argues the loss was calculated before Defendants left Plintron when they allegedly deleted the exclusivity clause in customers contracts. (Id.) This argument undermines Plintron's position there is a threat of trade secret misappropriation as deleting the exclusivity clause is not trade secret misappropriation.

Because Plintron has no evidence of trade secret misappropriation or the threat of trade secret disclosure, the Court finds Plintron has failed to demonstrate a likelihood of success on the UTSA and DTSA claims.

    c. Conversion Claim

Plintron's conversion claim against Defendants lies solely in Phillips' retention of his Plintron computer. The other Defendants state they do not have Plintron devices or materials in their possession, with the exception of McKervey, who still retains some mobile phones and sim cards he tested while at Plintron. (Response by Pelly, Mathew, McKervey, and Gary at 3, 7.)

1    McKervey claims none of them were used and do not have any Plintron information on them and
2    he is willing to turn them over to Plintron. (Id. at 3.)
3           With regard to Phillips' computer, the computer contains Phillips' personal data which
4    needs to be removed before it can be returned to Plintron. The Court discussed this issue with
5    counsel during oral argument and counsel indicated they could work together to find a neutral
6    third-party to review the data and remove any personal information, after which the computer
7    could be returned. Because this matter can be resolved without the need for the Court's ruling,
8    the Court declines to analyze this claim under the Winter factors.
9           2.      Irreparable Injury
10          Plintron only argues irreparable injury as it applies to its trade secrets claims and its
11   conversion claim. Plintron's delay in waiting three months to file a TRO, along with its failure to
12   allege a change in circumstances that would now warrant a TRO, undermines its argument that a
13   TRO is necessary to preserve the status quo and prevent irreparable harm.
14          The Ninth Circuit makes clear that a showing of immediate irreparable harm is essential
15   for prevailing on a TRO. See Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th
16   Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant
17   granting a preliminary injunction."). The Ninth Circuit has also found that a long delay before
18   seeking a preliminary injunction implies a lack of urgency and irreparable harm. Oakland Trib.,
19   Inc. v. Chron. Pub. Co., 762 F.2d 1374, 1377 (9th Cir. 1985).
20          Because there is no longer a need for a conversion claim, as discussed above, the Court
21   turns to Plintron's trade secrets claim, Plintron's argument that irreparable injury will occur is
22   based solely on the threat of potential disclosure of these trade secrets. (Mot. at 15.) As discussed
23   above, the problem with this is Plintron's claim is entirely speculative. Plintron's argument
24

consists of string cites to other district court decisions wherein the court found irreparable injury for the threatened disclosure of a trade secret. While the courts in those cases may be correct, Plintron fails to submit any evidence of a threat to disclose trade secrets. Absent any evidence there is nothing to suggest, or for the Court to rely on, that irreparable injury would occur if the Court does not issue a TRO.

Lastly, Plintron claims Defendants activities have caused and will continue to cause Plintron irreparable harm due to its loss of customers and goodwill. (Mot. at 16.) But again, Plintron does nothing more than cite to various court decisions where loss of goodwill is found and then concludes that the same type of harm is occurring here. That is insufficient to demonstrate that an immediate, irreparable harm is impending, and a TRO is warranted.

### 3.   Balance of Equities

The Court finds the balance of equities shows no clear favor. Plintron argues the balance of equities tips in its favor because a TRO would prohibit Defendants from misappropriating trade secrets and provide Plintron access to its rightful property. (Mot. at 17-18.) Defendants, on the other hand, deny they have trade secrets. The Court finds the equities here do not strongly favor either party.

### 4.   Public Interest

Lastly, the Court is not convinced there is a strong public interest in the granting of a TRO. Though the Court acknowledges that the public interest is benefitted through the enforcement of contractual provisions, and in the prevention of the theft of trade secrets, the Court is not convinced a TRO here is necessary to protect these interests. Plintron has continued to do business in the three months since Defendants left without any harm to the company as a result of trade secret misappropriation or Phillips' refusal to return the computer pursuant to his

| | |
|---|---|
| 1 | contract. Plintron argues the public interest is served by protecting companies' property rights |
| 2 | and economic interests. But this argument requires the Court to then find that companies' |
| 3 | property rights and economic interests are more important than private, personal information, |
| 4 | including health information. On balance, the Court finds these factors do not weigh strongly in |
| 5 | favor of either party. |
| 6 |      5.    The Court's Balancing of the Winter Factors |
| 7 | Mindful that a temporary restraining order is an "extraordinary remedy that may only be |
| 8 | awarded upon a clear showing that the plaintiff is entitled to such relief," Winter, 555 U.S. at 22, |
| 9 | the Court finds that the record before it weighs against entry of such an order. The Court does |
| 10 | not find Plintron has made a clear showing that it will succeed on its claims or that it will suffer |
| 11 | irreparable harm in the absence of a TRO. Additionally, the Court does not find that the balance |
| 12 | of equities or the public interest favor Plintron. The Court finds an insufficient basis on which to |
| 13 | grant the TRO and DENIES the Motion. |
| 14 | **C.**     **Plintron's Request for Expedited Discovery** |
| 15 | Plintron seeks expedited discovery to serve third party subpoenas on Bank of America, |
| 16 | Paychex, and Microsoft Corp. (Mot. at 20-21.) |
| 17 | Federal Rule of Civil Procedure 26(d) bars parties from seeking "discovery from any |
| 18 | source before the parties have conferred as required by Rule 26(f), except in a proceeding |
| 19 | exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by |
| 20 | stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). Courts may permit expedited discovery |
| 21 | before the parties' Rule 26(f) conference only upon a showing of good cause. See Am. LegalNet, |
| 22 | Inc. v. Davis, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009). "Good cause may be found where |
| 23 | the need for expedited discovery, in consideration of the administration of justice, outweighs the |
| 24 | |

prejudice to the responding party." <u>Semitool, Inc. v. Tokyo Electron Am., Inc.</u>, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Factors commonly considered in determining the reasonableness of expedited discovery include, but are not limited to: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." <u>Am. LegalNet</u>, 673 F. Supp. 2d at 1067 (internal quotation marks omitted). But at a minimum, the moving party must demonstrate adequate diligence and good faith to satisfy the "good cause" standard. <u>See</u> <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 609l (9th Cir. 1992); <u>see also</u> <u>Amazon.com, Inc. v. Yong</u>, No. 21-170RSM, 2021 WL 1237863, at *1 (W.D. Wash. Apr. 2, 2021).

Plintron seeks to subpoena (1) Bank of America for information on Stratabites; (2) Paychex for information pertaining to its account; and (3) Microsoft for "backup" copies of Plintron's Microsoft accounts. (Mot. at 20-21.) Plintron argues good cause exists for Bank of America because Stratabites recently deleted information. (<u>Id.</u> at 20.) And Plintron claims good cause exists for Paychex and Microsoft because that data is only held pursuant to the companies' retention policies, which are unknown to Plintron. (<u>Id.</u> at 21.)

The Court is not convinced good cause exists. The need for expedited discovery is undermined by Plintron's delay in commencing litigation. Now that the parties have entered into litigation and should be proceeding with a discovery conference shortly, it is unclear how many extra days Plintron would actually get from expedited discovery. Further, Plintron's claims regarding Stratabites deletion of information is unconvincing because Plintron seeks to subpoena documents about Stratabites, not from Stratabites. In addition, Defendants have asked that this

case be handled through alternate dispute resolution, thus a ruling by the Court runs the risk of conflicting rulings in each forum.

Because Plintron has not demonstrated the diligence necessary to satisfy good cause, the Court DENIES Plintron's Request for Expedited Discovery.

**CONCLUSION**

Having reviewed the record as presented and heard oral argument, the Court finds Plintron has not sufficiently supported its request for a Temporary Restraining Order. The Court therefore DENIES the TRO. The Court similarly finds that Plintron has not demonstrated good cause to warrant expedited discovery. The Court DENIES Plintron's request as to Expedited Discovery.

The clerk is ordered to provide copies of this order to all counsel.

Dated February 12, 2024.

Marsha J. Pechman
United States Senior District Judge