1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

PLINTRON TECHNOLOGIES USA,
LLC,

11

                        Plaintiff,

12

          v.

13

JOSEPH PHILLIPS, RICHARD
PELLY, THOMAS MATHEW, GREG
MCKERVEY, and DESIREE
MCHIELLE GRAY ,

14
15
16

                        Defendant.

17

CASE NO. C24-93 MJP

ORDER DENYING MOTION TO
COMPEL ARBITRATION

18

This matter comes before the Court on Defendant Joseph Phillips' Motion to Compel

19

Arbitration. (Dkt. No. 5.) Having reviewed the Motion, the Response (Dkt. No. 37), the Reply

20

(Dkt. No. 40), and all supporting materials, the Court DENIES the Motion.

21

**BACKGROUND**

22

This case arises out of Defendants employment with Plaintiff Plintron Technologies USA

23

LLC ("Plintron"). Defendants are all former employees of Plintron who resigned or were

24

1  terminated in the last six months. (Complaint ¶¶ 13-17.)  Plintron alleges Defendants breached

2  their contract and fiduciary duties, committed fraud and misappropriated trade secrets. (Id. at ¶¶

3  137-222.)

4        Though Plintron names five defendants in the suit, the current motion only pertains to

5  Defendant Joseph Phillips and whether any claims against him should be sent to arbitration.

6  Phillips executed an Employment Agreement when he began his employment with Plintron.

7  (Declaration of Joseph Phillips, Exhibit 1 (Dkt. No. 6).) The Agreement contains a mediation and

8  arbitration clause that states:

9        Employer and Executive agree to first mediate and may then submit to binding
      arbitration any claims that they may have against each other, of any nature

10        whatsoever, other than those prohibited by law or for workers compensation,
      unemployment or disability benefits, and pursuit [sic] to the rules of the

11        American Arbitration Association.

12  (Phillips Decl., Ex. 1 at 8.)

13        The Agreement also contains a choice of law, jurisdiction and venue agreement. (Phillips.

14  Decl., Ex. 1 at 14.)

15        Phillips now brings a motion to compel arbitration pursuant to the Agreement. (Dkt. No.

16  5.) Phillips argues the language in the clause mandates the parties to submit their dispute to

17  arbitration. Plintron disagrees arguing the word "may" in the clause makes arbitration

18  permissive, not mandatory. (Response at 4 (Dkt. No. 37).)

19                                      **ANALYSIS**

20  **A.**      **Whether the Court has the Authority to Determine Arbitrability**

21        The Federal Arbitration Act ("FAA") provides that agreements to arbitrate "shall be

22  valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

23  revocation of any contract." AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)

24

1    (citation and quotation omitted). "Both the arbitrability of the merits of a dispute and the

2    question of who has the primary power to decide arbitrability depend on the agreement of the

3    parties." Goldman, Sachs & Co. v. City of Reno, 747 F.3d 733, 738 (9th Cir. 2014) (citation

4    omitted). "But, unlike the arbitrability of claim in general, whether the court or the arbitrator

5    decides arbitrability is an issue for judicial determination unless the parties clearly and

6    unmistakably provide otherwise." Id. (citing Oracle Am., Inc. v. Myriad Group A.G., 742 F.3d

7    1069, 1072 (9th Cir. 2013). "Thus, there is a presumption that courts will decide which issues are

8    arbitrable." Id.

9           The Court finds it has the authority to determine arbitrability. Plintron argues the

10   arbitration clause in the Employment Agreement creates a clear and unmistakable agreement to

11   allow threshold questions of arbitrability to go to the arbitrator. (Mot. at 8.) Plintron bases this

12   argument on Agreement's phrasing that any claims may be submitted to arbitration "[pursuant]

13   to the rules of the American Arbitration Association." (Id.) AAA Employment Rule 6(a) states

14   that the "arbitrator shall have the power to rule on his or her own jurisdiction including any

15   objections with respect to the existence, scope, or validity of the arbitration agreement." But, as

16   discussed in more detail below, whether there is an agreement to arbitrate depends on how the

17   Court interprets the word "may." Because that is up for interpretation, it is not a clear and

18   unmistakable agreement to send the issue to an arbitrator.

19   **B.      Whether there is an Agreement to Arbitrate**

20          Arbitration is a matter of contract, meaning that a "a party cannot be required to submit to

21   arbitration any dispute which he has not agreed to submit." Howsam v. Dean Witter Reynolds,

22   Inc., 537 U.S. 79, 83 (2002). While there is a "liberal federal policy" favoring arbitration

23   agreements, see id., that policy was intended "to overrule the judiciary's longstanding refusal to

24

enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." Morgan v. Sundance, Inc., 596 U.S. 411, 418 (2002) (internal quotation and citation omitted). Put another way, "[t]he policy is to make arbitration agreements as enforceable as other contracts, but not more so." Id. (internal quotation and citation omitted). This means "a court must hold a party to its arbitration contract just as the court would to any other kind." Id. "But a court may not devise novel rules to favor arbitration over litigation." Id.

In deciding whether to compel arbitration, a court must determine two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. Howsam, 537 U.S. at 84. "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). In order to determine whether parties agreed to arbitrate, Courts apply ordinary state-law contract principals. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Washington courts apply the manifest theory of contract interpretation: "[t]he role of the court is to determine the mutual intentions of the parties according to the reasonable meaning of their words and acts." Fisher Props. Inc. v. Arden-Mayfair, Inc., 106 Wn.2d 826, 837 (1986).

The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." Norcia v. Samsun Telecomm. Am., LLC, 845 F.3d 1279, 1283 (9th Cir. 2017). This burden is substantial, and the Court must give the party denying the existence of an agreement to arbitrate "the benefit of all reasonable doubts and inferences that may arise." Three Valleys Mun. Water Dist. V. E.F. Hutton & Co., 925 F.2d 1136, 1141 (9th Cir. 1991) (internal quotations omitted). Because Phillips is the one who seeks to compel arbitration, he has the burden.

The parties do not dispute the Agreement covers the claims brought by Plintron, but instead focus their argument on whether there is an agreement to arbitrate.

The Court finds there is no binding agreement. In determining whether there is an agreement to arbitrate, the Court focuses on the word "may" and whether it makes arbitration permissive or mandatory. Because interpretation of the word depends on how it is used in context, there is no binding case law for the Court to rely on and each case is different. Thus, the context and language in the clause is critical to the Court in making its determination.

The Court finds there is no binding agreement to arbitrate for two reasons. First, words in a contract should be given their ordinary meaning. Corbray v. Stevenson, 98 Wn.2d 410, 415 (1982). The word "may" is a modal verb that is "used to say that something is possible." *May*, Oxford English Dictionary (2024). The ordinary meaning of "may" suggests permission or possibility, not requirement. Second, the Agreement states that "Employer and Executive agree to first mediate and may then submit to binding arbitration . . ." (Phillips Decl., Ex. 1 at 8.) The Court notes that the parties involved here are both sophisticated and arguably know how to negotiate a contract and make binding agreements. This is evidenced by the parties clear and unmistakable intent to first mediate any dispute that arises. Had the parties wished to make arbitration mandatory, they could have used the term "shall" instead of "may." Because they use the word "may," the parties preserved other options to resolve disputes, including litigation. This is further supported by the parties' inclusion of a choice of law, jurisdiction and venue clause in the Agreement. Clearly, the parties contemplated litigation as a possible means to resolving disputes otherwise this clause would not have been necessary.

Phillips makes two arguments in response. First, Phillips encourages the Court to follow the rationale in Health Integrated, Inc. v. Community Health Plan of Washington, No. C18-1522

1    RSM, 2019 WL 399027 (W.D. Wash. Jan. 31, 2019), and argues the facts in that case are similar

2    to those here. The Court disagrees. In Health Integrated the court interpreted an arbitration clause

3    to require arbitration. There, the arbitration clause stated "[i]f the dispute is not resolved through

4    mediation, either Party may request binding arbitration . . ." 2019 WL 399027 at *2. This

5    language differs from the language at issue here in that "either Party may request binding

6    arbitration." This suggests, and indeed the Health Integrated court found, that even though the

7    permissive "may" was used, when read it context, it makes arbitration binding once one party

8    requests it. Id. at *4. Critically, the Health Integrated court noted that "may" is permissive, but

9    can be changed depending on the context. There, "may" was permissive in that it allowed one

10   party to request arbitration, but neither party was required to. However, once one party requested

11   arbitration then arbitration became mandatory. That is not the case here. The Court agrees the

12   outcome in Health Integrated was the correct one, but disagrees that the facts here are similar.

13        Phillips also argues that an arbitration clause would "be meaningless if it was interpreted

14   as permissive, because parties may always arbitrate their dispute if both parties consent."

15   (Response at 8.) Phillips cites to several district court cases in support of this assertion. But the

16   Court is not persuaded by these cases as context is critical. For example, Phillips cites to

17   Casiano-Bel Air Homeowners Ass'n v. Phila. Indem. Ins., No. 2:16-v-8549-SVW, 2017 WL

18   3273654 (C.D. Cal. Feb. 22, 2017) in support of its argument. Casiano, however, has an

19   arbitration clause similar to Health Integrated wherein "either party may make a written demand

20   for arbitration." 2017 WL 327654 at *2. Again, the court found the use of the word "may"

21   referred to the parties' option to demand arbitration, but once a demand was made, the arbitration

22   clause became mandatory. Put in context, there, the term "may" modified and made permissive

23   the parties' ability to "make a written demand." In contrast, here, "may" modifies and makes

24

permissive the parties' ability to "submit to binding arbitration." Therefore, the use of the word

"may" in each case modifies a different part of the arbitration clause. Phillips citations to other

district court cases similarly fails to persuade the Court because as one of the cases Phillips cites

to points out:

> "A plain reading of the term 'may' is that it is used to indicate possibility
> or probability. However, as is almost always the case, the meaning of a word is
> greatly affected by the context in which it is used."

Tolentino v. Saito, No CV 23-00280 SOM-KJM, 2023 WL 7090375, at *8 (D. Haw. Oct. 26,

2023).

Given the structure of the arbitration clause, the Court finds the Agreement does not

mandate the parties resolve their disputes by arbitration; there is no agreement reflected

anywhere in the contract to submit disputed to binding arbitration. The section of the Agreement

discussing mediation and arbitration clearly indicates that mediation is mandatory before any

other dispute resolution, after which the parties "may" rather than "shall" have their disputes

resolved via arbitration. Because "may" requires the parties to agree to arbitration, the possibility

is left open for the parties to resolve any outstanding disputes through the court system. For these

reasons, the Court DENIES Phillips' Motion.

## CONCLUSION

Given the language in the Employment Agreement, the Court finds the parties are not

obligated to resolve their disputed issues by arbitration. The Court DENIES Phillips' Motion.

The clerk is ordered to provide copies of this order to all counsel.

Dated April 10, 2024.

Marsha J. Pechman
United States Senior District Judge