UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PLINTRON TECHNOLOGIES USA LLC, | CASE NO. 2:24-cv-00093 |
| Plaintiff, | ORDER GRANTING IN PART COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS |
| v. | |
| JOSEPH PHILLIPS, RICHARD PELLY, THOMAS MATHEW, GREG MCKERVEY, and DESIREE MICHELLE GRAY, | |
| Defendants. | |
| JOSEPH PHILLIPS, | |
| Counterclaim Plaintiff, | |
| v. | |
| PLINTRON TECHNOLOGIES USA LLC, et al. | |
| Counterclaim Defendants. | |

1

## INTRODUCTION

2       This matter comes before the Court on Plaintiff/Counterclaim Defendant Plintron

3   Technologies USA LLC and Counterclaim Defendants Mohan Kumar Sundaram, Subhashree

4   Radhakrishnan, Plintron Holdings PTE Ltd., and Plintron Mobility Solutions PVT Ltd.'s Motion

5   to Dismiss (Dkt. No. 193.) Having reviewed the Motion, Defendant/Counterclaim Plaintiff

6   Joseph Phillips' Opposition (Dkt. No. 213), the Reply (Dkt. No. 225), and all other supporting

7   materials, the Court GRANTS the Motion IN PART.

8

## BACKGROUND

9       The underlying dispute concerns allegations made by Plaintiff Plintron Technologies

10  USA LLC ("Plintron USA") that Defendants, all former employees, breached their contractual

11  and fiduciary duties, committed fraud, and misappropriated trade secrets by using Plintron

12  USA's resources, contacts, and funds to benefit competing companies. (See generally, Complaint

13  (Dkt. No. 1).) In response, Defendant/Counterclaim Plaintiff Joseph Phillips, the former CEO of

14  Plintron USA, filed counterclaims against his former employer. (See Dkt. No. 48.) Phillips

15  alleged that Plintron USA failed to pay him the agreed-upon contractual benefits by, among

16  other things, intentionally transferring funds to shell companies and other corporate subsidiaries

17  thereby reducing his compensation. (Id. ¶ 33–70.) Phillips brought six original counterclaims

18  against Plintron USA: (1) Breach of Contract; (2) Conversion; (3) Failure to Pay Wages, RCW

19  §§ 49.48.010, 52.070; (4) Double Damages for Willful and Intentional Withholding of Wages,

20  RCW §§ 49.52.050, 070; (5) Failure to Permit Employee Access to Personnel File and

21  Employment Records, RCW § 49.12.250; and (6) Unjust Enrichment. (Id.)

22

23

24

Phillips amended his counterclaims nearly a year after first filing them. (See Dkt. No. 156.) Upon amendment, Phillips added the following Non-Resident Counterclaim Defendants ("NRCDs") to his counterclaims:

- Plintron Holdings PTE LTD ("Plintron Global") is the parent company of an international group of subsidiary companies (the "Plintron Global Group"). Plintron USA is a wholly owned subsidiary company of Plintron Global.

- Plintron Mobility Solutions Pvt Ltd. ("PMS") is a wholly owned subsidiary company of Plintron Global, which previously operated under the name Plintron Global Technologies Pvt Ltd.

- Mohan Kumar Sundaram, a founder, owner, and director of Plintron Global and a founder, owner, and former director of Plintron USA.

- Subhashree Radhakrishnan, a founder, owner, and director of Plintron Global and a founder, owner, and former director of Plintron USA.

- Hem Senthil Raj is the Head Company Secretary within the Plintron Global Group, and a current director of Plintron USA.

- Murali Krishna Posa, the Chief Technology Officer within the Plintron Global Group, and a current director of Plintron USA.

(See Phillips' Answer and First Amended Counterclaims (Dkt. No. 201).) Phillips also amended his counterclaims to include the following four new causes of action:

- Civil Conspiracy as to all Counterclaim Defendants

- Defamation as to Plintron USA, Plintron Global, Sundaram, Radhakrishnan, Raj, and Posa.

- <u>Tortious Interference with Business Relationships or Expectancy</u> as to Plintron USA, Plintron Global, Sundaram, Radhakrishnan, Raj, and Posa.

- <u>Unfair Competition</u>, RCW § 19.86 et seq. as to as to Plintron USA, Plintron Global, Sundaram, Radhakrishnan, Raj, and Posa.

The Counterclaim Defendants now move to dismiss the majority of Phillips' counterclaims. (<u>See</u> <u>generally</u>, Mot. (Dkt. No. 193).) Prior to the motion ripening, the Parties stipulated to the dismissal with prejudice of Counterclaim Defendants Raj and Posa, as well as Phillips' defamation, tortious interference, and unfair competition claims. (Dkt. No. 208.)

## ANALYSIS

### A.    Personal Jurisdiction

The Counterclaim Defendants first seek dismissal of the NRDCs, including the individual Counterclaim Defendants—Sundaram and Radhakrishnan (together, the "ICDs")—and the Corporate Counterclaim Defendants—Plintron Global and PMS (together, the "CCDs")—on the basis that they are not subject to personal jurisdiction in Washington. (Mot. at 17–25.) As discussed below, the Court concludes that it has personal jurisdiction as to the ICDs but lacks the same as to the CCDs.

#### 1.    Legal Standard

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800 (9th Cir. 2004). Unless there has been an evidentiary hearing, the plaintiff's pleadings and affidavits must "make a prima facie showing of personal jurisdiction." <u>Id.</u> (quoting <u>Caruth v. Int'l Psychoanalytical Ass'n</u>, 59 F.3d 126, 128 (9th Cir. 1995)). "[T]he plaintiff need only demonstrate facts that if true would support jurisdiction over

the defendant," <u>Ballard v. Savage</u>, 65 F.3d 1495, 1498 (9th Cir. 1995), but cannot "simply rest

on the bare allegations of its complaint," <u>Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.</u>, 551 F.2d

784, 787 (9th Cir. 1977).

There are two types of personal jurisdiction: general and specific. <u>Bristol-Myers Squibb</u>

<u>Co. v. Superior Ct.</u>, 582 U.S. 255, 262 (2017). General jurisdiction "enables a court to hear cases

unrelated to the defendant's forum activities . . . if the defendant has 'substantial' or 'continuous

and systematic' contacts with the forum." <u>Brand v. Menlove Dodge</u>, 796 F.2d 1070, 1073 (9th

Cir. 1986) (quoting <u>Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.</u>, 784 F.2d 1392,

1396 (9th Cir. 1986)). Meanwhile, specific jurisdiction requires that the suit "arise out of or

relate to the defendant's contacts with the forum," which requires "an 'affiliation between the

forum and the underlying controversy.'" <u>Bristol-Myers</u>, 582 U.S. at 262 (cleaned up) (quoting

<u>Daimler AG v. Bauman</u>, 571 U.S. 117, 127 (2014)); <u>Goodyear Dunlop Tires Operations, S.A. v.</u>

<u>Brown</u>, 564 U.S. 915, 919 (2011) (cleaned up). "For this reason, 'specific jurisdiction is confined

to adjudication of issues deriving from, or connected with, the very controversy that establishes

jurisdiction.'" <u>Bristol-Myers</u>, 582 U.S. at 262 (quoting <u>Goodyear</u>, 564 U.S. at 919).

Because Phillips does not contest that the Court lacks general jurisdiction over the

NRCDs, the jurisdictional dispute is focused on specific jurisdiction. "There are three

requirements for a court to exercise specific jurisdiction over a nonresident defendant: (1) the

defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail

himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which

arises out of or relates to the defendant's forum-related activities'; and (3) "the exercise of

jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

<u>Axiom Foods, Inc. v. Acerchem Int'l, Inc.</u>, 874 F.3d 1064, 1068 (9th Cir. 2017) (cleaned up)

1  (quoting Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). "The plaintiff bears

2  the burden of satisfying the first two prongs of the test." Schwarzenegger, 374 F.3d at 802. If

3  successful, "the burden then shifts to the defendant to 'present a compelling case' that the

4  exercise of jurisdiction would not be reasonable." Id. (quoting Burger King Corp. v. Rudzewicz,

5  471 U.S. 462, 476-78 (1985)).

6  **2.    ICDs**

7  The Court first assesses whether specific personal jurisdiction exists over the ICDs.

8  Based on the record presented by the Parties, the Court finds both ICDs are subject to specific

9  personal jurisdiction in Washington due to having purposefully availed themselves of the forum.

10  **a.    Relevant Test**

11  Phillips must first show that the ICDs either purposefully directed their activities toward

12  Washington or purposefully availed themselves of the privileges of conducting activities in

13  Washington. While purposeful direction analyses are most often used in suits sounding in tort

14  and purposeful availment analyses in those sounding in contract, see Schwarzenegger, 374 F.3d

15  at 802, the Court recognizes that there is no "rigid dividing line" between the two. See

16  Impossible Foods Inc. v. Impossible X LLC, 80 F.4th 1079, 1088–89 (9th Cir. 2023). Here,

17  although Phillips asserts both contract and tort claims against the ICDs, the Court employs the

18  purposeful availment analysis because Phillips' counterclaims sound in contract or otherwise

19  "arise out of the [plaintiff]'s contractual relationship with the defendants," the type of which the

20  Ninth Circuit has held should be assessed through the purposeful availment test. See Sher v.

21  Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990) (applying the purposeful availment test after

22  holding that tort claims relating to the alleged incompetence of the plaintiff's attorneys arose out

23  of the plaintiff's contractual relationship with them). This conclusion is consistent with the

Court's determination as to Phillips' conversion and unjust enrichment counterclaims found supra in Section B.2 of this Order.

### b.  Purposeful Availment

In their Motion, the Counterclaim Defendants argue that Phillips cannot show that the ICDs took actions on behalf of themselves to create a substantial connection with Washington. (Mot. at 19.) The Court disagrees.

For the court to have jurisdiction on a theory of purposeful availment, the defendant must have taken "some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities within the forum State." Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 592 U.S. 351, 352 (2021) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). The test is met if "the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." Ballard, 65 F.3d at 1498; see also Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987) (noting that a defendant is not required to have had physical contact with the forum state to be subject to personal jurisdiction there). "So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." Burger King, 471 U.S. at 475 n.18. However, "random, fortuitous, or attenuated contacts" do not suffice. Id. at 475 (internal quotations omitted).

The Parties dispute the frequency and substance of Sundaram and Radhakrishan's contacts with Washington. Phillips remembers negotiating his employment contract with Sundaram and Radhakrishnan "in Washington State . . . on or about May 27 or 28, 2014." (Declaration of Joseph Phillips (Dkt. No. 215) ¶ 3.) Sundaram claims that this is false because "[a]ll of the acts taken by [the ICDs] took place in India," and the Employment Agreement "was in effect as of May 8." (Supplemental Declaration of Mohan Sundaram (Dkt. No. 226) ¶ 3.) And Radhakrishnan has previously claimed that she had "no[] role" in the hiring of Phillips. (Dkt. No.

1    115 ¶ 10.) Phillips recalls that the ICDs "came to Washington State approximately annually"

2    between 2014 and 2023. (Philips Decl. ¶ 5.) Sundaram refutes this as well, testifying that "[w]e

3    only met Mr. Phillips in Washington about four times over the course of ten years." (Suppl.

4    Sundaram Decl. ¶ 4.) And Phillips alleges that the ICDs "executed contracts central to [his]

5    Counterclaims" while they were in Washington, (see Opp. at 10), including a contract between

6    Plintron USA and T-Mobile which was signed by Radhakrishnan on behalf of PMS, (see Phillips

7    Decl. ¶ 4). This is yet again contradicted by Sundaram, who claims that Radhakrishnan signed

8    the agreement in India. (Suppl. Sundaram Decl. ¶ 5.)

9        In this posture, the Court construes these factual disputes in Phillips' favor. While courts

10   may consider affidavits on a Rule 12(b)(2) motion to dismiss, courts may not "assume the truth

11   of allegations in a pleading which are contradicted by affidavit." LNS Enters. LLC v. Cont'l

12   Motors, Inc., 22 F.4th 852, 858 (9th Cir. 2022) (quoting Data Disc, Inc. v. Sys. Tech. Assocs.,

13   Inc., 557 F.2d 1280, 1284 (9th Cir. 1977)). Where the parties have, as here, both submitted

14   affidavits regarding key jurisdictional facts, "[c]onflicts between the parties over statements

15   contained in affidavits must be resolved in [Phillips'] favor." LNS Enters., 22 F.4th at 858.

16       Interpreting these factual disputes in Phillips' favor, the Court finds that Sundaram and

17   Radhakrishnan had extensive contacts with Washington. Both individuals met with Phillips in

18   Washington to negotiate the Employment Agreement that forms the foundation of Phillips'

19   counterclaims. Both ICDs "regularly provide[s] guidance and directions on operations" in

20   Washington. (Declaration of Matthew Diggs (Dkt. No. 214), Ex. B at 22–23.) And both have

21   previously traveled to Washington on multiple occasions as part of ongoing business

22   relationships between Plintron USA and its customers and to "discuss the business of Plintron

23   USA" with Phillips. (Phillips Decl. ¶ 5.)

24

The Court is guided by Ninth Circuit's decision in Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A., 972 F.3d 1101 (9th Cir. 2020). There, the court held that Californian personal jurisdiction over Honduran corporate officers was warranted when those officers had negotiated the contract at issue and "previously traveled to California on multiple occasions as part of the ongoing business relationship." Id. at 1109–10. Separately, the court determined that the officers "interjected [themselves] into the transaction," by assuming personal liability for their corporation's contractual obligations, and thus availed themselves of the forum. Id. And although the parties disputed whether the corporate officers had actually "met with Global employees in Global's California office," the Ninth Circuit interpreted the genuine factual disputes in Global's favor. Id. As in Glob. Commodities, the Court finds Sundaram and Radhakrishnan's contacts sufficient to show they purposefully availed themselves of the forum. See also Raner v. Fun Pimps Ent. LLC, No. 3:22-CV-05718-TMC, 2023 WL 8004720, at *9 (W.D. Wash. Nov. 17, 2023) (CEO's multi-year connection with Washingtonian plaintiff, which included supervision, discussion, and direction of operations was enough to show purposeful availment).

Citing to Cannon v. Commc'n Components, Inc., 2020 WL 433351 (W.D. Wash. Jan. 28, 2020), the ICDs argue that there is purposeful availment of the forum when their "contacts with Washington were not in their personal capacities but were related to other business obligations." (Reply at 8–9.) But after Cannon was decided, the Ninth Circuit clarified that the rule from those cases prohibiting exercise of jurisdiction over corporate employees for actions taken in their official capacities is no longer good law. Glob. Commodities, 972 F.3d at 1108 ("Not all of our holding in Forsythe survived the Supreme Court's subsequent decisions in Calder and Keeton. Our statement in Forsythe that 'a corporate officer who has contact with a forum only with

regard to the performance of his official duties is not subject to personal jurisdiction in that forum,' is clearly irreconcilable with the Supreme Court's decisions subjecting corporate employees to suit in exactly those circumstances." (citations omitted)). The Court therefore rejects this argument.

Accordingly, the Court finds that the first prong of the specific jurisdiction test is satisfied as to the ICDs because they purposefully availed themselves of the forum.

### c.    Forum-Related Activities

The second prong of the specific jurisdiction test requires the Court to determine whether the claims at issue arose out of or related to the ICD's forum contacts. Yamashita v. LG Chem, Ltd., 62 F.4th 496, 504 (9th Cir. 2023). "[F]or a claim to arise out of a defendant's forum contacts requires" a showing of but-for causation. Id. at 504–06.

Phillips' counterclaims all relate to the alleged failure of Plintron USA and its directors to pay him the wages, benefits, and bonuses due to him under his Employment Agreement and other contractual obligations. The Court concludes that ICD's negotiation of that agreement, direction of Plintron USA's payroll and finances, and travel to Washington are all but-for causes of that failure. The Court notes that the ICDs do not contest that Phillips meets his burden of showing causation. (See Reply at 10–11.) The second prong is satisfied.

### d.    Reasonableness

Having found the first two prongs to be established, the burden now shifts to the Counterclaim Defendants to "'present a compelling case' that the exercise of jurisdiction would be unreasonable and therefore violate due process." CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1079 (9th Cir. 2011) (quoting Burger King, 471 U.S. at 477–78). To do so, the Court considers seven factors:

(1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Id. (quoting Dole Food, 303 F.3d at 1114). The Court assesses these factors, below.

### i.    Extent of Purposeful Injection

The ICDs admit that this factor is "akin to purposeful availment." (Mot. at 22.) Accordingly, analysis of the first factor would be "redundant." Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991) ("As we have concluded, albeit narrowly, that appellees purposefully availed themselves of the privilege of conducting activities in California, there is no need to analyze this first factor separately"). The Court finds this to weigh in favor of reasonability.

### ii.    Burdens on Defendants

The ICDs claim it "would be incredibly burdensome and expensive" for them to defend this suit in Washington due to "significant travel permission-related issues (the inability to obtain visas) and significant conflicts between time zones (11-12 hour differences)." (Mot. at 22.) However, Phillips has alleged that the ICDs travel to Washington annually and will be traveling here for depositions in this case. (Resp. at 19.) The Court finds that any burden on the ICDs would be negligible and therefore this factor weighs in favor of reasonability.

### iii.    Extent of Conflict With Sovereignty of Foreign States

The ICDs argue that "[l]itigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." (Mot. at 22 (citing Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1133 (9th Cir. 2003)). However, the burden is on ICDs to show how the courts

1    exercise of jurisdiction would interfere with the sovereignty of those countries in which the ICDs

2    reside (India and Dubai). They do discuss any concrete sovereignty concerns presented by the

3    exercise of jurisdiction here, and therefore not meet that burden. This factor weighs in favor of

4    reasonableness.

5            **iv.     Washington's Interest in Adjudication**

6          The ICDs concede that "Washington has an interest in adjudicating this dispute," but

7    claim the "interest is not strong," because "Phillips is primarily alleging harms to MVNOC."

8    (Mot. at 22.) But Phillips' claims with regards to MVNOC—defamation, tortious interference,

9    and unfair competition—have been dismissed. (<u>See</u> Dkt. No. 208.) Washington has an interest in

10    adjudicating the remaining counterclaims, as they relate to the contractual obligations owed to

11    one of its citizens. This factor weighs in favor of reasonableness.

12            **v.     Most Efficient Judicial Resolution**

13          The ICDs argue that this factor "is a wash" given that there are witnesses and parties

14    from all over the globe. (Mot. at 23.) Plintron USA filed its original suit against Phillips and the

15    other Defendants in Washington. That suit involves largely the same witnesses and parties.

16    Given the overlap in subject matter, witnesses, and parties, it is efficient for Washington to have

17    jurisdiction over both Plintron USA's claims and Phillips' counterclaims. This factor weighs in

18    favor of reasonableness.

19            **vi.     Convenience and Effectiveness of Relief for Plaintiff**

20          "[N]o doctorate in astrophysics is required to deduce that trying a case where one lives is

21    almost always a plaintiff's preference." <u>Roth</u>, 942 F.2d at 624. However, the ICDs do not make

22    any argument against the convenience of Phillips' claims to exist in Washington beyond noting

23

24

that his interests in convenience and effectiveness are "not of paramount importance." (Mot. at 23 (citing <u>Dole Food</u>, 303 F.3d at 1116). This factor weighs in favor of reasonability.

### vii.    Availability of an Alternative Forum

The last factor shifts the burden back to Phillips, who, as the Counterclaim Plaintiff, "bears the burden of proving the unavailability of an alternative forum." <u>Roth</u>, 942 F.2d at 624. Phillips argues that Washington is the only available forum because it is "unclear where the ICDs could be sued," as "they are apparently residents of Dubai, but run their companies out of several other countries." (Opp. at 20.) But Phillips does not say why Dubai or those other countries could not be an acceptable forum in this case. Accordingly, this weighs against reasonability.

On balance, six of the seven factors weigh in favor of jurisdiction being reasonable. The Court therefore considers exercise of personal jurisdiction over the ICDs to be reasonable.

*        *        *

By repeatedly traveling to Washington and negotiating Phillips' employment agreement there, the ICDs purposefully availed themselves of the forum. If not for that purposeful availment, the harms alleged by Phillips would not have occurred. And the exercise of personal jurisdiction over the ICDs is reasonable. Accordingly, the Court DENIES the Motion as to the jurisdictional arguments regarding the ICDs.

### 3.    CCDs

Phillips' Amended Counterclaims state two bases for personal jurisdiction over the CCDs. (<u>See</u> Dkt. No. 201 ¶¶ 16–17.) First, he alleges that both companies availed themselves of the forum by "entering into purported loan agreements" (Plintron Global) or otherwise contracting with Plintron USA (PMS). (<u>Id.</u>) Second, Phillips alleges that jurisdiction is proper

because Plintron Global is an alter ego of Washington-based Plintron USA. (Id. ¶¶ 16, 33–44.)
The Court notes that while Phillips' Amended Counterclaims do not designate PMS as an alter
ego of Plintron USA, the Parties have nonetheless put the issue in controversy. (See, e.g., Mot. at
23 (summarizing Phillips' allegations to claim that both "Plintron Holdings and Plintron
Mobility . . . are alter egos of Plintron USA.") (Mot. at 23.) Therefore, the Court will address the
alter ego arguments as if made against both PMS and Plintron Global. Because the alter ego
argument constitutes the bulk of the Parties briefing regarding personal jurisdiction over the
CCDs, the Court analyzes it first before then turning to the question of purposeful availment.

### a. Alter Ego

As a threshold matter, the Parties dispute whether the alter ego analysis should be under
Delaware or Washington law. However, Counterclaim Defendants concede that "because
Delaware's and Washington's alter ego tests are the same, it does not matter which state law the
Court applies." (Reply at 12.) Courts in the Ninth Circuit "apply the law of the forum state in
determining whether a corporation is an alter ego[.]" S.E.C. v. Hickey, 322 F.3d 1123, 1128 (9th
Cir.), opinion amended on denial of reh'g sub nom. Sec. & Exch. Comm'n v. Hickey, 335 F.3d
834 (9th Cir. 2003). Accordingly, the Court will apply Washington law.

"[T]he alter ego test may be used to extend personal jurisdiction to a foreign parent or
subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate."
Ranza v. Nike, Inc., 793 F.3d 1059, 1073 (9th Cir. 2015). "As a general rule, a corporate entity
and the limitations on liability afforded by corporate structure will be respected by the courts."
Culinary Workers & Bartenders Union No. 596 Health & Welfare Tr. v. Gateway Cafe, Inc., 588
P.2d 1334, 1343 (Wash. 1979). "It is a general principle of corporate law deeply ingrained in our
economic and legal systems that a parent corporation (so-called because of control through

1    ownership of another corporation's stock) is not liable for the acts of its subsidiaries." United

2    States v. Bestfoods, 524 U.S. 51, 61 (1998)).

3        A court may pierce the corporate veil under Washington's alter ego theory upon finding

4    that "the corporate entity has been disregarded by the principals themselves so that there is such

5    a unity of ownership and interest that the separateness of the corporation has ceased to exist."

6    Columbia Asset Recovery Grp., LLC v. Kelly, 177 Wn. App. 475, 486 (2013) (quoting Grayson

7    v. Nordic Constr. Co., 92 Wn.2d 548, 553 (1979). Alternatively, the court may pierce the

8    corporate veil upon the plaintiff demonstrating "(1) that the corporate form was intentionally

9    used to violate or evade a duty, and (2) disregard of the corporate form is necessary to prevent

10   unjustified loss to the injured party." Campagnolo S.R.L. v. Full Speed Ahead, Inc., No. C08-

11   1372 RSM, 2010 WL 2079694, at *7 (W.D. Wash. May 20, 2010), aff'd, 447 F. App'x 814 (9th

12   Cir. 2011) (citing Meisel v. M & N Modern Hydraulic Press Co., 97 Wn.2d 403, 410 (1982)). In

13   either instance, the party seeking to pierce the corporate veil bears the burden of proof.

14   Chadwick Farms Owners Ass'n v. FHC LLC, 166 Wn.2d 178, 200 (2009).

15       Phillips' primary argument is that Plintron USA and the CCDs "ceased to function as

16   separate entities," and he has sufficiently alleged that the employees or agents of the CCDs "had

17   direct and exclusive control over Plintron USA's funds and bank accounts," "failed to keep

18   adequate records," "signed contracts on behalf of Plintron USA," and that the CCDs themselves

19   "exercised control over [Plintron USA's] payroll and wages," and therefore the corporate veil

20   should be disregarded. (Opp. at 23.) The Court disagrees.  While the companies are undoubtedly

21   connected, "[a] parent corporation may be directly involved in financing and macro-management

22   of its subsidiaries . . . without exposing itself to a charge that each subsidiary is merely its alter

23   ego." Ranza 793 F.3d at 1074. And there is evidence in the record showing that Plintron USA

24

1    and the CCDs maintain separate boards of directors and signatories, (see Dkt. No. 194 ¶¶ 5–10,

2    13), and maintained formal corporate records regarding the deals between Plintron USA and the

3    CCDs, (see, e.g., Diggs Decl. Ex. AD (loan agreement between Plintron USA and Plintron

4    Global)). The Court finds that Phillips does not meet the burden of showing that the CCDs and

5    Plintron USA are so enmeshed as to be regarded as a single legal entity, and therefore declines to

6    adopt Phillips' alter ego argument.

7         Additionally, Phillips will not be denied relief should his claims proceed only against

8    Plintron USA rather than Plintron Global and PMS. Under both Washington and federal law, a

9    court may only pierce the corporate veil where the plaintiff would otherwise be denied relief. See

10   Campagnolo, 2010 WL 2079694, at *5–6. Even if, as Phillips claims, the CCDs used Plintron

11   USA as a shell company to enrich themselves, their owners, and directors at Phillips' expense,

12   Phillips' counterclaims seek monetary damages. Plintron USA, the existing corporate defendant,

13   "has more than $10 million in cash on hand." (see Mot. at 24; see also Dkt. No. 194, Ex. B

14   (Plintron USA balance sheet showing over $12 million in "cash and cash equivalents".) Phillips

15   does not claim that this amount is so paltry that the CCDs must be included in his lawsuit in

16   order for him to be made whole. This is an independent basis on which the Court declines to

17   adopt Phillips' alter ego argument.

18      **b.  Purposeful Availment**

19        Even if not alter egos of Plintron USA, Phillips argues that the CCDs are still subject to

20   the specific personal jurisdiction of the Court due to having purposefully availed themselves of

21   the forum through the actions of the ICDs. (Opp. at 20.) The Court disagrees. As the Court

22   concluded above, jurisdiction over the ICDs is appropriate based on Phillips' allegations that

23   they visited Washington on an annual basis, including for the purposes of negotiating his

24

employment contract. (See discussion supra Section A.2.b.) However, Phillips does not claim

that Sundaram or Radhakrishnan represented either CCDs during their negotiations or visits to

Washington. He alleges that the ICDs negotiated the terms of his employment and the

subsequent amendment "on behalf of Plintron USA." (Dkt. No. 201 ¶¶ 23, 26.) And the record

only reflects that the ICDs annual travel to Washington was for the purposes of attending

"internal meetings" for Plintron USA. (Diggs Decl., Ex. B at 22.) The Court does not find that

the ICDs contacts are adequately imposed upon the CCDs, and therefore finds there to be no

purposeful availment.

*    *    *

Having rejected Phillips' alter ego arguments and finding that the CCDs did not

purposefully avail themselves of Washington, the Court concludes that it lacks personal

jurisdiction over the corporate entities. Accordingly, the Motion is GRANTED as to the CCDs

and Phillips' counterclaims against Plintron Global and PMS are DISMISSED.

**B.      Failure to State a Claim**

The Counterclaim Defendants also move to dismiss six of the seven remaining

Counterclaims on the grounds that Phillips fails to state a claim upon which relief may be

granted. (Mot. at 25–28, 35.) For the reasons stated below, the Court GRANTS the Motion IN

PART.

**1.      Legal Standard**

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a

claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must

construe the complaint in the light most favorable to the non-moving party and accept all well

pleaded allegations of material fact as true. Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,

1  416 F.3d 940, 946 (9th Cir. 2005); Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658,

2  661 (9th Cir. 1998). Dismissal is appropriate only where a complaint fails to allege "enough facts

3  to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544,

4  570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows

5  the court to draw the reasonable inference that the defendant is liable for the misconduct

6  alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must provide "more than

7  labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

8  do." Twombly, 550 U.S. at 555.

9      **2.    Conversion & Unjust Enrichment (Counterclaim Nos. 2 & 6)**

10         The Counterclaim Defendants argue that Phillips' conversion and unjust enrichment

11  claims should be dismissed as to all Counterclaim Defendants because the claims are not

12  independent of his breach of contract claim brought against Plintron USA. (Mot. at 25–26.) The

13  Court agrees.

14         In Washington, claims of unjust enrichment (and conversion) sound in tort and are

15  subject to the independent duty doctrine. Under the independent duty doctrine, "[a]n injury is

16  remediable in tort if it traces back to the breach of a tort duty arising independently of the terms

17  of the contract. . . . When no independent tort duty exists, tort does not provide a remedy." Puget

18  Soundkeeper All. v. APM Terminals Tacoma LLC, 545 F. Supp. 3d 893, 897 (W.D. Wash.

19  2021) (quoting Eastwood v. Horse Harbor Found., Inc., 170 Wn.2d 380, 389 (2010)).

20         Phillips argues that the independent duty doctrine does not apply because his unjust

21  enrichment claim is "against all of the [NRCDs] (while his Employment Agreement is only with

22  Plintron USA)" and alleges that they "conspired to enrich themselves through conduct that falls

23  outside of the Employment Agreement." (Opp. at 29.) Phillips specifically alleges facts

24

1   pertaining to one such agreement, where "Phillips would receive the profit and equity allocated

2   to another Plintron USA employee [should] that employee left the company." (Id. (citing Dkt.

3   No. 201 ¶¶ 28, 30).) But Phillips admits that, like his employment agreement, these other

4   agreements "granted him a contractual right to a certain share of Plintron USA's profits and

5   GNR." (Id. ¶ 118) (emphasis added). And the funds which Phillips alleges were converted or

6   otherwise misappropriated by the Counterclaim Defendants would have only flown to him

7   through the contractual guarantees found in his employment agreement (or auxiliary

8   agreements.) Accordingly, the Court finds that Phillips' unjust enrichment and conversion claims

9   are not independent of his contract claims and are therefore barred by the independent duty

10  doctrine. The Court therefore DISMISSES Phillips' unjust enrichment counterclaim

11  (Counterclaim No. 2) and conversion counterclaim (Counterclaim No. 6) WITH PREJUDICE.

12          **3.    Wage Withholding (Counterclaim No. 3)**

13          In his third counterclaim, Phillips alleges that the Counterclaim Defendants violated

14  RCW 49.48.010 when they "failed to cause Plintron USA" to issue him a final, accurate

15  paycheck reflecting his base salary, commissions, bonuses, PTO and business expense

16  reimbursement. (Dkt. No. 201 ¶ 106.) RCW 49.48.010(2) says that "[w]hen any employee shall

17  cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due

18  him or her on account of his or her employment shall be paid to him or her at the end of the

19  established pay period."

20          The Counterclaim Defendants argue Phillip' wage withholding claim should be dismissed

21  because RCW 49.48.010 does not apply to Phillips' allegations as he only alleges that he did not

22  receive the correct compensation from 2019 onward (and not his final pay period). The Court

23  disagrees. Wright v. Belfor USA Grp., Inc., a recent case in this district upon which both Parties

24

1  rely, is instructive. No. C24-0907-JCC, 2024 WL 3917157, at *5 (W.D. Wash. Aug. 22, 2024).

2  There, the court found that the plaintiff employee's allegations that her employer had withheld

3  overtime wages stated a claim under RCW 49.48.010 because she alleged that those withheld

4  wages were due to her through her final paycheck. See id. at *5 n.4. Here, Phillips alleges that he

5  was not issued "an accurate final paycheck" due to the Counterclaim Defendants' failure to

6  include profit shares, expenses, commissions, and vacation time, all of which were due to him

7  under the employment agreement. (Dkt. No. 201 ¶¶ 105–06.) That is, he alleges (1)

8  Counterclaim Defendants withheld wages and benefits which he had accrued during his tenure as

9  CEO, and (2) those withheld wages should have been paid to him as part of his final paycheck.

10  The Court finds these allegations, when accepted as true, are sufficient to state a claim for wage

11  withholding under RCW 49.48.010. Therefore, the Motion is DENIED as to Phillips' wage

12  withholding counterclaim (Counterclaim No. 3).

13       **4.    Wage Withholding Statutory Double Damages (Counterclaim No. 4)**

14       Relatedly, Phillips' fourth counterclaim alleges that Counterclaim Defendants exercised

15  control over payment of his wages to such an extent that withholding those wages was

16  considered willful and therefore subject to double damages under RCW 49.52.050 & .070. (Dkt.

17  No. 201 ¶¶ 109–13.) The Counterclaim Defendants do not contest these allegations as they relate

18  to Plintron USA but argue that the claim should be dismissed as to the NRCDs because Phillips

19  cannot show that the NRCDs were directly responsible for his pay. (Reply at 19.) The Court

20  agrees in part. Phillips has proffered evidence sufficient to show that Sundaram was responsible

21  for Phillips' compensation. (See Diggs Decl., Ex. I at 41 (in responding to an interrogatory,

22  Plintron USA identifies Sundaram as "responsible[]" for the "compensation of Joseph

23  Phillips").) Therefore, Phillips has sufficiently pled his double damages claim as to Sundaram.

24

1    However, the Court finds no similar admission (or specific, non-conclusory fact or allegation) in

2    the record sufficient to show that Radhakrishnan had any direct responsibility for Phillips'

3    compensation. Therefore, the Motion is GRANTED as to Radhakrishnan but DENIED as to

4    Sundaram. Phillips' wage withholding double damages counterclaim (Counterclaim No. 4) is

5    DISMISSED as to Counterclaim Defendant Radhakrishnan WITHOUT PREJUDICE.

6         **5.     Failure to Provide Phillips' Personnel File (Counterclaim No. 5)**

7         The Counterclaim Defendants argue that Phillips' personnel file counterclaim fails

8    because RCW 49.12.250 does not provide a private cause of action and because Phillips failed to

9    exhaust his administrative remedies before filing suit as required by Martin v. Gonzaga Univ.,

10   191 Wn.2d 712, 731 (2018). (Mot. at 28.) The Court disagrees.

11        Before seeking a judicial remedy from the court as to his personnel file claim Phillips

12   was required to have first pursued an administrative request through the Washington Department

13   of Labor and Industries ("DLI"). See Martin v. Gonzaga Univ., 191 Wn.2d 712, 731 (2018); see

14   also Lopez v. Nutex Health, No. 3:24-CV-05773-TMC, 2024 WL 5159153, at *3 (W.D. Wash.

15   Dec. 18, 2024). "The failure to exhaust administrative remedies is an affirmative defense on

16   which the defendant bears the burden of proof." Akhtar v. Mesa, 698 F.3d 1202, 1210 (9th Cir.

17   2012).

18        The Counterclaim Defendants argue that Phillips "was on notice of [the failure to

19   exhaust] defense and failed to plead facts showing he had satisfied the administrative filing

20   requirement." (Reply at 16.) According to the Counterclaim Defendants, because the affirmative

21   defense of failure to exhaust administrative remedies was "obvious on the face of a complaint,"

22   the defense may be raised in a motion to dismiss. (Reply at 16 (quoting Rivera v. Peri & Sons

23   Farms, Inc., 735 F.3d 892, 902 (9th Cir. 2013).) However, unlike the statute of limitations

24

1    defense at issue in <u>Rivera</u>, the Court does not find it so obvious that Phillips failed to exhaust his

2    administrative remedies as to alleviate Counterclaim Defendants of their burden of proof

3    required at this stage. The Court notes that if Phillips ultimately cannot show that he pursued his

4    request through DLI, then this claim cannot survive. <u>Martin</u>, 191 Wn.2d at 731 (holding that

5    defendant was entitled to summary judgment on plaintiff's personnel file claim when plaintiff

6    had not adduced any evidence to show they had first brought their request to DLI). But on the

7    pleadings, Phillips need only allege that he requested that his employer produce his employment

8    file and that this request was denied. <u>See</u> 5B Fed. Prac. & Proc. Civ. § 1357 (4th ed.) ("Although

9    dismissal is appropriate when an affirmative defense appears on the face of the complaint, a

10   plaintiff is not required to plead the negation of an affirmative defense in order to survive a

11   motion to dismiss.")

12        Accordingly, the Motion is DENIED as to Phillips' personnel file claim (Counterclaim

13   No. 5).

14        **6.    Civil Conspiracy (Counterclaim No. 7)**

15        Finally, the Counterclaim Defendants seek dismissal of Phillips' conspiracy counterclaim

16   on the narrow ground that because "none of Phillips' tort claims can survive dismissal, his civil

17   conspiracy counterclaim must also be dismissed." (Mot. at 35.) The Court disagrees. "[W]hen

18   interpreting common law standards for civil conspiracy, courts have limited 'wrongful' or

19   'illegal' actions to torts or <u>statutory violations</u>." <u>Inteum Co., LLC v. Nat'l Univ. of Singapore</u>,

20   No. C17-1252-JCC, 2018 WL 2317606, at *3 (W.D. Wash. May 22, 2018) (emphasis added).

21   While courts in this district have found civil conspiracy claims unable to stem from a breach of

22   contract, <u>see</u> <u>id.</u>, Phillips' statutory claims—including his wage withholding and personnel file

23

24

claims—are still live. Accordingly, the Motion is DENIED as to Phillips' civil conspiracy claim (Counterclaim No. 7).

### CONCLUSION

The Counterclaim Defendants' Rule 12(b)(2) arguments are GRANTED IN PART. Phillips has shown that the ICDs have purposefully availed themselves of Washington by negotiating his employment contract and travelling to the state annually. Therefore, the Counterclaim Defendants' 12(b)(2) arguments as to the ICDs are DENIED. However, the CCDs are not so intertwined as to be considered alter egos of Plintron USA, nor has Phillips shown that they have purposefully availed themselves of Washington through the actions of the ICDs. Therefore, the Counterclaim Defendants' Rule 12(b)(2) arguments as to the CCDs are GRANTED. The Court DISMISSES Phillips' Amended Counterclaims against Plintron Global and PMS WITH PREJUDICE.

The Counterclaim Defendants' Rule 12(b)(6) arguments are also GRANTED IN PART. The Motion is GRANTED as to Phillips' unjust enrichment and conversion counterclaims (Counterclaim Nos. 2 & 6) because those counterclaims necessarily flow from his employment contract with Plintron USA and so are not independent of Phillips' breach of contract claim. Counterclaim Nos. 2 & 6 are DISMISSED WITH PREJUDICE. The Motion is DENIED as to Phillips' wage withholding claim (Counterclaim No. 3) because Phillips adequately alleges the Counterclaim Defendants withheld wages and other compensation due to him via his final paycheck. The Motion is GRANTED IN PART as to Phillips' wage withholding double damages claim (Counterclaim No. 4) because Phillips has adequately alleged that Sundaram—but not Radhakrishnan—were responsible for his wages. Counterclaim No. 4 is DISMISSED as to Radhakrishnan. The Motion is DENIED as to Phillips' personnel file counterclaim

(Counterclaim No. 5) because the Counterclaim Defendants fail to show that Phillips exhausted his administrative remedies prior to bringing the claim. Finally, the Motion is DENIED as to Phillips' civil conspiracy claim (Counterclaim No. 7) because there remain live statutory counterclaims against two or more Counterclaim Defendants.

The clerk is ordered to provide copies of this order to all counsel.

Dated August 5, 2025.

Marsha J. Pechman
United States Senior District Judge