UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PLINTRON TECHNOLOGIES USA LLC,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH PHILLIPS, *et al.*,<br><br>Defendants. | Case No. C24-93-TL-MLP |
| JOSEPH PHILLIPS,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>PLINTRON TECHNOLOGIES USA LLC,<br>*et al.*,<br>Counterclaim Defendants. | ORDER GRANTING MOTION FOR JOINDER |

## I.      INTRODUCTION

This matter is before the Court on Defendant and Counterclaim Plaintiff Joseph Phillips' Motion for Joinder. (Mot. (dkt. # 351).) Plaintiff Plintron Technologies USA LLC ("Plintron USA") filed an opposition (Resp. (dkt. # 359)), and Mr. Phillips filed a reply (Reply (dkt. # 363)).

ORDER GRANTING MOTION FOR JOINDER - 1

Having considered the parties' submissions, the record, and the applicable law, the Court concludes that MVNO Connect LLC ("MVNO Connect") and KonnectOne Inc. ("KonnectOne") (together, the "Companies") are required parties under Federal Rule of Civil Procedure 19(a). The Motion for Joinder (dkt. # 351) is therefore GRANTED.

## II.    BACKGROUND

### A.    The Federal Action

Plintron USA filed this action on January 22, 2024, against Mr. Phillips (its former CEO), Richard Pelly (former COO), Thomas Mathew (former Vice President), Greg McKervey (former IT Director), and Michelle Gray (former employee) (collectively, the "Defendants"). (Dkt. # 1.) In its operative pleading, Plintron USA alleges that these former employees breached fiduciary duties and employment agreements, misused confidential information and trade secrets, and failed to return property after their departures. (Federal Compl. (dkt. # 189), ¶¶ 137-222.)

The Federal Complaint alleges that Mr. Phillips is an owner and member of the Companies and that the Defendants acted in connection with, and on behalf of, those entities.[1] (Federal Compl., ¶¶ 3(b), 3(e), 76-96.) Plintron USA pleads that MVNO Connect "overbilled Plintron USA for referral fees to funnel over a million dollars to one or more Defendants," that MVNO Connect "later emerged (and currently exists) as a competitor," and that one or more

---

[1] The pleadings are not entirely consistent regarding Mr. Phillips' ownership of, and role in, the Companies. The Federal Complaint alleges that Mr. Phillips "admitted he owned thirty percent (30%) of KonnectOne" (Federal Compl., ¶¶ 3(e), 130) and that "one or more of the Defendants, including Mr. Phillips, have an ownership interest and/or other substantial ties with MVNO Connect." (*id.*, ¶¶ 3(b), 3(e), 96). In the State Complaint, Plintron USA alleges that, "[a]t the time of all the acts and omissions referenced in the Complaint, Mr. Phillips was the sole member of KonnectOne" and "the sole member of MVNO Connect" and further that Mr. "Phillips was the sole owner and member of both KonnectOne and MVNO[ Connect] and, as their sole officer and member, his knowledge was imputed" to them. (State Compl. (dkt. # 364, Ex. B), ¶¶ 1.3, 2.3-2.4, 4.3.) The Court need not resolve these discrepancies at this stage. For purposes of Rule 19, it is sufficient that Plintron USA's own pleadings in both actions premise its requested relief on Mr. Phillips' ownership and control of the Companies, and on the imputation of his knowledge and conduct to those entities.

ORDER GRANTING MOTION FOR JOINDER - 2

Defendants, including Mr. Phillips, "was and/or are involved in MVNO Connect." (*Id.*, ¶ 3(b).) It further alleges that, while still employed by Plintron USA, Defendants "were simultaneously working on behalf of MVNO Connect to both overbill Plintron USA for unnecessary services and to develop MVNO Connect as a competitor," causing Plintron USA to "overpa[y] MVNO Connect for these referral services by over a million dollars." (*Id.*, ¶¶ 76-77.)

Plintron USA alleges that Defendants "orchestrated a long term scheme" to "utilize[] Plintron USA proprietary and confidential information and trade secrets for different competitive entities, such as MVNO Connect, and thereby take business away from Plintron USA." (Federal Compl., ¶ 82.) It further asserts that Defendants removed exclusivity clauses from at least two Plintron USA customer agreements, enabling those customers to "utilize[] MVNO Connect as an additional [mobile virtual network operator] provider," and "successfully established a service relationship between MVNO Connect and a third Plintron USA customer that had an exclusivity clause" with Plintron USA. (*Id.*, ¶¶ 83-85.) The tortious interference claim alleges that Defendants "secur[ed] customer contracts for MVNO Connect despite existing exclusivity clauses." (*Id.*, ¶ 192.)

The Federal Complaint pleads that Mr. Phillips has long been associated with KonnectOne, that he later admitted he owns thirty percent of the company, and that "many of Plintron USA's employees, including all Defendants, were working for KonnectOne at the same time they were fully employed by Plintron USA" with Mr. Phillips' knowledge and approval. (Federal Compl., ¶¶ 3(e), 130, 133.) Plintron USA alleges that all Defendants now work for KonnectOne in the same competitive space, that KonnectOne is connected with MVNO Connect because MVNO Connect "utilizes 'Moxee Services' which are offered and operated by

ORDER GRANTING MOTION FOR JOINDER - 3

KonnectOne," and that KonnectOne employed numerous Plintron USA employees while they were still on Plintron USA's payroll. (*Id.*, ¶¶ 13-17, 89-92, 130-33.)

The Federal Complaint further alleges the Companies are embedded in the systems and infrastructure at issue. Plintron USA claims that Mr. Phillips commingled benefits for his "other business ventures (including Arrow Sales Group LLC and KonnectOne LLC)" into Plintron USA's Paychex payroll and benefits account, which was opened under Plintron USA's EIN. (Federal Compl., ¶¶ 9, 120-29.) It also alleges that Stratabites and MVNO Connect share the same registered agent address, that a Stratabites domain resolved to an MVNO Connect login page, and that MVNO Connect uses "Moxee Services" provided by KonnectOne. (*Id.*, ¶¶ 91-93.)

Although the Companies are not named as defendants in this action, Plintron USA's requested relief directly implicates them. Plintron USA seeks to enjoin "all Defendants and anyone associated with Defendants from acquiring, using or disclosing Plintron USA's proprietary and confidential information, and Plintron USA's trade secrets," and to require "all Defendants and anyone associated with Defendants to account for and return to Plintron USA all Plintron USA property in Defendants' possession, custody, and control . . . in whatever form, including electronic [and] physical . . . including any copies thereof." (Federal Compl. at 52-53.) In light of the allegations that the Companies are owned by Mr. Phillips, employ all individual Defendants, and presently use the disputed information and relationships in their own businesses, "anyone associated with Defendants" necessarily includes the Companies. (*See id.* ¶¶ 3(b), 3(e), 13-17, 76-96, 130-33, 183; Wisegarver Decl. (dkt. # 353), ¶¶ 4-6, 10-13.)

The Court's initial scheduling order set July 31, 2024, as the deadline to join additional parties. (Dkt. # 62.) That date passed without any motion by Plintron USA to add the Companies and without any motion by the Companies to intervene. The parties have since engaged in

ORDER GRANTING MOTION FOR JOINDER - 4

extensive discovery, including written discovery, multiple depositions, and third party subpoenas to MVNO Connect and KonnectOne. (*See*, *e.g.*, dkt. ## 94, 126, 164; Thomsen Decl. (dkt. # 360), ¶¶ 2-4.) In ruling on a discovery dispute involving the Companies, the Court noted that "neither MVNO Connect nor KonnectOne have been named as defendants in the lawsuit" and substantially limited the discovery required from them on that basis. (Dkt. # 164 at 4, 14.)

**B.    The State Action**

On October 6, 2025, more than a year after the federal joinder deadline, Plintron USA filed a separate lawsuit in King County Superior Court, *Plintron Technologies USA, LLC v. KonnectOne Inc., et al.*, Case No. 25-2-29366-1 SEA. In that case, Plintron USA named the Companies as defendants and Mr. Phillips as a nominal defendant. (First Smith Decl. (dkt. # 352), ¶ 4, Ex. A; Thomsen Decl., ¶ 7, Ex. 1.) On December 1, 2025, Plintron USA filed the operative state pleading. (Second Smith Decl. (dkt. # 364), ¶ 8, Ex. B ("State Compl.").)

In the State Complaint, Plintron USA alleges the Companies "received millions of dollars in ill begotten gains, and used confidential and proprietary information to their material advantage and to Plintron's substantial economic detriment." (State Compl., ¶¶ 1.1-1.4.) Plintron USA seeks a constructive trust on Mr. Phillips' ownership interests in the Companies, coupled with an order transferring such interest to Plintron USA, and disgorgement of all gains and economic benefits the Companies allegedly received, or damages equal to the financial impacts they caused. (*Id.*, ¶¶ 1.2, 1.5, 5.2-5.8; *see also id.* at 47.)

The State Complaint alleges that Mr. Phillips created KonnectOne "for the sole purpose of exploiting opportunities Plintron was pursuing at the time, to take Plintron's business, and to financially benefit at Plintron's expense," and that KonnectOne "began distributing handsets and devices directly to Plintron's existing [mobile virtual network operator] customers by leveraging

ORDER GRANTING MOTION FOR JOINDER - 5

existing government subsidy programs" and using Plintron USA's customer relationships, office space, employees, and technology. (State Compl., ¶¶ 4.10, 4.19-4.21, 4.28-4.32.) It pleads that nearly every Plintron USA employee, including all Defendants, simultaneously worked for KonnectOne, and that KonnectOne operated out of Plintron USA's offices and used Plintron USA's Microsoft 365 tenant for its own data. (*Id.*, ¶¶ 4.28-4.29.)

With respect to MVNO Connect, the State Complaint alleges that Mr. Phillips formed MVNO in 2017 "as a sham company to divert millions from Plintron USA based on a referral agreement," that Plintron USA paid MVNO Connect more than a million dollars under that agreement, and that MVNO Connect later became a "Plintron clone" and direct competitor that, through Mr. Phillips, Mr. Pelly, and Mr. Mathew, "systematically targeted each Plintron customer" and convinced them to move their business to MVNO Connect by exploiting Plintron USA's confidential information and contract terms. (State Compl., ¶¶ 4.33-4.37, 4.41-4.52.) The State Complaint further alleges that MVNO Connect served as a central conduit for funds paid by Stratabites, a sham vendor, and that Stratabites transferred nearly half of its receipts to MVNO Connect, which then routed money to Mr. Phillips and his family. (*Id.*, ¶¶ 4.39-4.40.)

Plintron USA further alleges the Companies have maintained possession and control over its electronic data, including at least emails, and have refused to return it. (State Compl., ¶¶ 4.53-4.56, 11.2-11.4.) Plintron USA asserts claims for tortious interference with employee and customer contracts, violation of the Washington Consumer Protection Act ("CPA"), misappropriation of trade secrets, unjust enrichment, conversion, and civil conspiracy, all premised on the Companies' alleged use of Plintron USA's confidential information, relationships, and infrastructure to build and operate their current businesses. (*Id.*, ¶¶ 6.1-12.4.)

ORDER GRANTING MOTION FOR JOINDER - 6

Plintron USA characterizes the State action as "focus[ed] exclusively on the corporate entities that directly engaged in the above acts and omissions . . . and also benefitted from the acts and omissions of Phillips and other former Plintron officers and employees." (State Compl., ¶ 4.61.) After filing the State Complaint, counsel for Mr. Phillips and the Companies asked Plintron USA to stipulate joining the Companies as defendants here; Plintron USA declined. (First Smith Decl., ¶ 8, Ex. C.)

### III.    DISCUSSION

The parties agree that joining MVNO Connect and KonnectOne would not destroy subject matter jurisdiction and that there are no venue or personal jurisdiction barriers. (Mot. at 8-9; Resp. at 6-7.) The dispute is whether the Companies must be joined under Rule 19(a).

### A.    Legal Standard

Rule 19(a) requires joinder of a person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction if: (1) "in that person's absence, the court cannot accord complete relief among existing parties," Fed. R. Civ. P. 19(a)(1)(A); or (2) the person "claims an interest relating to the subject of the action" and proceeding without that person may "as a practical matter impair or impede" the person's ability to protect that interest, or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" Fed. R. Civ. P. 19(a)(1)(B). The inquiry is "practical and fact specific." *Maverick Gaming LLC v. United States*, 123 F.4th 960, 972 (9th Cir. 2024).

### B.    Complete Relief Among Existing Parties

Rule 19(a)(1)(A) focuses on "relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." *Eldredge v. Carpenters 46 N. California Ctys. Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981)

ORDER GRANTING MOTION FOR JOINDER - 7

(citations omitted). The question is whether, without the Companies, the Court can "fashion meaningful relief as between the parties." *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983).

Plintron USA emphasizes that it chose to sue only the individuals here, that joint tortfeasors are ordinarily permissive rather than necessary parties, and that the Court could enjoin the individuals from using or disclosing Plintron USA's information without naming the Companies. (Resp. at 9-11 (citing *Eldredge*, 662 F.2d at 537; *Northrop*, 705 F.2d at 1043; *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1501 (9th Cir. 1991)).)

That framing does not reflect the claims pled. The Federal Complaint and the State Complaint together allege a single scheme in which Mr. Phillips and other former officers used the Companies to siphon money from Plintron USA and its customers, divert Plintron USA's customers and opportunities, and control Plintron USA's data and systems.

Both pleadings ask courts to decide overlapping issues, including:

(1)    Whether specific customers and contracts were diverted from Plintron USA to the Companies, and what legal consequences follow for those ongoing relationships. In the Federal Complaint, Plintron USA alleges that Defendants diverted customers to MVNO Connect, removed exclusivity clauses in at least two agreements, and secured contracts with a third customer that remained subject to an exclusivity clause in favor of Plintron USA. (Federal Compl., ¶¶ 82-85, 190-193.) In the State Complaint, Plintron USA alleges that MVNO Connect "targeted each Plintron customer" and "convinced Plintron's largest customers to contract with MVNO[ Connect]," including customers bound by exclusivity provisions that were amended or

ORDER GRANTING MOTION FOR JOINDER - 8

concealed, and that KonnectOne likewise solicited and contracted with existing Plintron USA customers. (State Compl., ¶¶ 4.19-4.21, 4.41-4.52, 7.2-7.4.)

(2)    Whether particular categories of information (customer lists, pricing, margins, performance and usage data, and the terms of Plintron USA's T-Mobile agreement) are Plintron USA's trade secrets or confidential information, or instead constitute legitimately held business information of the Companies. The Federal Complaint defines Plintron USA's trade secrets to include "business and operating plans, customer usage reports, customer performance reports and metrics, finance reports, technology cost reports, product development reports, information regarding customers, customer pricing and profit margins, forecasts, and competitive intelligence information," and alleges that Defendants misappropriated that information for the benefit of the Companies. (Federal Compl., ¶¶ 140, 143-45, 152-55, 158-60; *see also id.*, ¶¶ 82, 86.) The State Complaint similarly defines Plintron USA's trade secrets to include "business opportunities, customer names, contract terms with customers, contract terms with T-Mobile, revenue, customer margins, customer performance reports and metrics, [and] competitive intelligence information," and alleges that the Companies acquired and used that information through Mr. Phillips, Mr. Pelly, and Mr. Mathew to solicit and undercut Plintron USA's customers and to obtain equal or better terms from T-Mobile. (State Compl., ¶¶ 4.45-4.50, 9.3-9.8.)

(3)    Whether the Companies' current revenues and assets are ill-gotten gains traceable to the alleged fiduciary breaches and fraud. The Federal Complaint alleges that MVNO Connect "overbilled Plintron USA for referral fees to funnel over a million dollars to one or more Defendants," that Plintron USA "overpaid MVNO Connect by over a million dollars," and that MVNO Connect "received a benefit" from customer diversion. (Federal Compl., ¶¶ 3(b), 76-77, 82-88.) It further alleges that Defendants used Stratabites as a vehicle to extract additional

millions from Plintron USA and its customers, and that the Companies benefitted from those flows. (*Id.*, ¶¶ 52-75, 177-88, 203-10.) The State Complaint alleges that the Companies "received millions of dollars in ill-begotten gains," that KonnectOne generated "tens of millions" in revenues by exploiting Plintron USA's opportunities and customers, and that nearly half of the amounts paid to Stratabites by Plintron USA were transferred to MVNO Connect and then routed to Mr. Phillips and his family. (State Compl., ¶¶ 1.2-1.4, 4.19-4.21, 4.33-4.40, 4.52, 5.3-5.5, 8.3-8.4, 10.2-10.4.)

(4)     Whether the Companies lawfully possess, retain, or use Plintron USA's electronic data and accounts. The Federal Complaint alleges that Defendants retained Plintron USA's laptops, made images of those devices, refused for months to transfer the Microsoft 365 tenant and email system, blocked or deleted emails, and refused to transfer the plintronamericas.com domain and the Paychex payroll and benefits account, all of which Plintron USA claims as its property. (Federal Compl., ¶¶ 98-116, 120-29, 216-21; *id.* at 52-53.) The State Complaint alleges that the Companies, through their agents, contracted with third parties to obtain possession of Plintron USA's email and electronic data, caused it to lose access to that data, "maintained possession and/or control over Plintron's electronic data . . . and refused to return [it]," and thereby converted Plintron USA's property. (State Compl., ¶¶ 4.53-4.56, 9.6-9.9, 11.2-11.4.)

To grant Plintron USA meaningful relief as between it and the Defendants, the Court would necessarily have to resolve questions that go to the heart of the Companies' contracts, property, and operations, including: (1) whether particular customers and revenue streams currently served by the Companies were wrongfully diverted and must be relinquished or reallocated; (2) whether specific emails, databases, and backups located in KonnectOne controlled accounts are Plintron USA's property or the Companies' business records; and (3)

ORDER GRANTING MOTION FOR JOINDER - 10

what conduct by employees and agents "associated with Defendants" must cease to comply with any injunction directed at the use of information and relationships on which the Companies rely.

In the Companies' absence, the Court cannot bind them directly, order them to return property they assert they own, or structure equitable relief that addresses the alleged diversion of customers, revenues, and data into the Companies. Courts in analogous circumstances have held that complete injunctive relief is unavailable without the nonparty. *See*, *e.g.*, *Disabled Rts. Action Comm.*, 375 F.3d at 879.

In *Eldredge*, nonparty employers were not required because the requested injunction ran against a training committee and did not require adjudication of the employers' property rights, reallocation of their customers, or a determination that data in their possession belonged to the plaintiffs. 662 F.2d at 538. Here, by contrast, Plintron USA seeks relief that would recharacterize and, in effect, redistribute customer relationships and revenues currently held by MVNO Connect, and would require the return of property located in KonnectOne controlled systems. Those remedies go beyond the incidental effects present in *Eldredge*.

Because the Court cannot, in practical terms, accord complete and coherent relief among the existing parties without adjudicating the Companies' asserted rights in their contracts, data, and business operations, MVNO Connect and KonnectOne are required parties under Rule 19(a)(1)(A).

C.      **Impairment of the Companies' Interests**

1.      *Claim of Interest*

Rule 19(a)(1)(B)(i) applies where an absent party claims an interest relating to the subject of the action and proceeding without that party may, as a practical matter, impair or impede its ability to protect that interest. Plintron USA argues that this prong is unavailable because the

Companies have not claimed an interest in this litigation, and because they previously opposed subpoenas as disinterested third parties and chose not to intervene. (Resp. at 11 (citing *Roberts v. City of Fairbanks*, 947 F.3d 1191, 1204 (9th Cir. 2020); *Northrop*, 705 F.2d at 1043-44; *Reichert v. Keefe Commissary Network, L.L.C.*, 331 F.R.D. 541, 557-58 (W.D. Wash. 2019)).)

An existing party may not obtain joinder merely by "championing the interest of an absentee." *Reichert*, 331 F.R.D. at 558. The present record, however, goes further. Through their CFO's sworn declaration and their active defense of the State action, the Companies now claim concrete interests in: (1) customer contracts and relationships that Plintron USA alleges were diverted; (2) emails, data, and backups in KonnectOne accounts that Plintron USA contends are its property; and (3) the ability to continue operating their businesses using information and know-how they describe as their confidential information and their employees' legitimate industry knowledge. (Wisegarver Decl., ¶¶ 12, 15-18.) These statements, together with the Companies' role as defendants in the State action, satisfy the "claims an interest" requirement of Rule 19(a)(1)(B)(i). *See Hammons v. Wells Fargo Bank, N.A.*, 2015 WL 9258092, at *7 (N.D. Cal. Dec. 18, 2015).

2.      *Nature of the Interest*

Plintron USA contends that the Companies' interests are not legally protected within the meaning of Rule 19, but amount at most to a financial stake in the outcome. (Resp. at 12-15 (citing *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 996 (9th Cir. 2020); *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 852 (9th Cir. 2019); *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. Calif.*, 547 F.3d 962, 970-71 (9th Cir. 2008)).) Plintron USA argues that Mr. Phillips has not provided the underlying customer contracts, that the Companies can have no cognizable interest in misappropriated information,

and that the Wisegarver declaration is too general to show more than speculative economic consequences. (Resp. at 12-13.)

A "mere financial stake" is insufficient. Rule 19, however, recognizes as legally protected "an interest that arises from terms in bargained contracts" when that interest is substantial, as well as concrete property and confidentiality interests in the subject matter of the dispute. *Cachil*, 547 F.3d at 970 (quoted citation omitted).

Here, the Companies assert: (1) contractual rights in ongoing customer relationships that Plintron USA characterizes as diverted and seeks to restrain or unwind (Federal Compl., ¶¶ 82-88, 190-93; Wisegarver Decl., ¶¶ 12, 17); (2) ownership and confidentiality rights in emails, data, and backups maintained in KonnectOne accounts that Plintron USA seeks to have declared its property and ordered returned (Federal Compl. at 52-53; Wisegarver Decl., ¶ 18); and (3) operational interests in continuing to run their businesses using information they regard as their business property and their employees' accumulated knowledge, in the face of Plintron USA's request for broad injunctive relief over customer metrics, pricing, performance data, and other categories of information. (Federal Compl., ¶ 140; Wisegarver Decl., ¶¶ 15-16.)

These asserted interests implicate contract rights, claimed property and confidentiality rights in specific data and systems, and the ability to continue operating existing businesses under current customer and supplier arrangements. They therefore qualify as legally protected interests for Rule 19 purposes. *See Cachil*, 547 F.3d at 970.

### 3.    *Practical Impairment, Including Preclusion*

The Court must also consider whether proceeding without the Companies may, as a practical matter, impair or impede their ability to protect those interests. Fed. R. Civ. P. 19(a)(1)(B)(i). This inquiry often involves "the possibility of the absent party being collaterally

ORDER GRANTING MOTION FOR JOINDER - 13

estopped in another proceeding." *U.S. ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 908 (9th Cir. 1994) (citation omitted). An absent party is necessary if there is a "significant possibility" of such estoppel; Rule 19 "speaks to possible harm, not only to certain harm." *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 821 (9th Cir. 1985); *see Goose Pond Ag, Inc. v. Duarte Nursery, Inc.*, 2020 WL 6043951, at *4 (E.D. Cal. Oct. 13, 2020).

Under Washington law, collateral estoppel may be asserted offensively where "the facts and the issue are identical" and the second case involves "substantially the same bundle of legal principles that contributed to the rendering of the first judgment." *Lemond v. State, Dep't of Licensing*, 143 Wn. App. 797, 805 (Wash. App. 2008) (internal quotations omitted). Offensive issue preclusion is "equally available to the plaintiff." *State Farm Fire & Cas. Co. v. Ford Motor Co.*, 186 Wn. App. 715, 722 (Wash. App. 2015).

There is at least a significant possibility that factual and legal determinations in this action will be asserted against the Companies in the State action, including whether Defendants breached fiduciary duties by diverting customers and corporate opportunities; whether particular customers and contracts were unlawfully acquired or diverted to MVNO Connect; whether specific categories of information constitute Plintron USA's trade secrets and were misappropriated; and whether certain conduct violates the CPA. (*See* Federal Compl., ¶¶ 82-88, 137-65, 181-88, 190-202; State Compl., ¶¶ 4.33-4.52, 7.2-7.4, 8.3-8.9, 9.3-9.9.)

Plintron USA points to differences between the actions, including the presence of constructive trust and unjust enrichment claims in state court, the identity of the defendants, and the elements of the remedies sought. (Resp. at 14-15.) The underlying factual predicates and many of the governing legal standards overlap. (*Compare* State Compl., ¶¶ 5.1-12.4, *with* Federal Compl., ¶¶ 137-222.) That overlap creates a material risk that determinations made here,

ORDER GRANTING MOTION FOR JOINDER - 14

in the Companies' absence, will constrain their ability to contest those issues in the State action. Rule 19(a)(1)(B)(i) does not require certainty of preclusion; the "significant possibility" identified in *Takeda* is sufficient. 765 F.2d at 821.

### 4. Adequacy of Representation

Plintron USA argues that even if the Companies have legally cognizable interests, they are not necessary because Mr. Phillips adequately represents those interests. (Resp. at 15-16 (citing *Salt River Project Agric. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012)).) Courts consider: (1) whether the present party's interests are such that it will "undoubtedly" make all of the absent party's arguments; (2) whether the party is capable of and willing to make those arguments; and (3) whether the absentee would offer any necessary element that the existing parties would neglect. *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992).

The fact that Mr. Phillips and the Companies share counsel, and that some of their interests align, does not establish adequacy. The Companies are separate legal entities with their own corporate histories, records, contractual obligations, and operations. Plintron USA has argued that they possess "unique information, documents, and testimony" unavailable from current parties. (Dkt. # 94 at 5; *see* Wisegarver Decl., ¶¶ 4-6, 10-13.) There is no basis to conclude that Mr. Phillips will undoubtedly present every argument the Companies might raise about their contracts, data, and post-employment conduct, or that his litigation strategy as an individual defendant will align with the Companies' institutional and commercial interests. *See Shermoen*, 982 F.2d at 1318.

To the extent Plintron USA suggests that Mr. Phillips is in privity with the Companies for collateral estoppel purposes, that contention heightens the concern. If Mr. Phillips is treated as

ORDER GRANTING MOTION FOR JOINDER - 15

their proxy for preclusion, then adjudicating issues here without their presence would, as a practical matter, adjudicate their rights. *See Cnty. of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1033 (N.D. Cal. 2005) (rejecting the argument that alleged privity both supports preclusion and defeats necessity under Rule 19). Rule 19 is designed to avoid that result.

### D. Risk of Multiple or Inconsistent Obligations

Rule 19(a)(1)(B)(ii) also requires joinder where proceeding without the absent party may leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. "Inconsistent obligations" arise when "a party is unable to comply with one court's order without breaching another court's order concerning the same incident," as distinct from merely "inconsistent adjudications or results." *Cachil*, 547 F.3d at 976; *see A.H.R. v. Wash. State Health Care Auth.*, 469 F. Supp. 3d 1018, 1037 (W.D. Wash. 2020); *St. Paul Fire & Marine Ins. Co. v. Ins. Co. of Pa.*, 2016 WL 1191808, at *10 (N.D. Cal. Mar. 28, 2016).

Plintron USA's requested remedies here, and in the State action, create such a risk for Mr. Phillips. In this action, Plintron USA seeks injunctive relief that would require Mr. Phillips, in his capacity as owner of the Companies, to cause the Companies and their personnel ("anyone associated with Defendants") to refrain from using specified information, change their dealings with certain customers, and return data and property that Plintron USA claims as its own. (Federal Compl. at 52-53.) In the State Complaint, Plintron USA seeks a constructive trust and "a legal right" to Mr. Phillips' membership interests in the Companies, which could require him to transfer those interests and relinquish control. (State Compl., ¶¶ 5.1-5.8; *see also id.* at 47.)

If this Court issues an injunction premised on Mr. Phillips' ability, as owner, to direct the Companies to act or refrain from acting in specified ways, and the state court subsequently orders the transfer of his ownership interests or otherwise restructures control of the Companies,

ORDER GRANTING MOTION FOR JOINDER - 16

Mr. Phillips could be placed in a position where he cannot comply with both courts' commands. For example, he could be ordered here to instruct MVNO Connect to cease serving certain customers or to return particular data, while a state court decree removes his authority to give those directions or imposes different obligations concerning the same customers and data. (*See* Wisegarver Decl., ¶¶ 16, 20.)

Plintron USA contends that any relief would be complementary because both courts would seek to prevent Mr. Phillips from profiting from alleged misconduct. (Resp. at 16-17.) Rule 19, however, addresses the risk of practical incompatibility between specific judicial commands, not the alignment of general purposes. Given the central role Mr. Phillips' ownership and control of the Companies play in the remedies sought in both actions, and the overlapping factual bases for those remedies, there is a substantial risk of inconsistent obligations if the Companies are not joined.

## E.   Feasibility and Case Management

Joinder under Rule 19(a) is required only if it is feasible, meaning that personal jurisdiction exists, venue is proper, and subject matter jurisdiction is preserved. *See Aesthetic Eye Assocs., P.S. v. Alderwood Surgical Ctr., LLC*, 2023 WL 3739937, at *5 n.6 (W.D. Wash. May 31, 2023). Those conditions are satisfied here. The Companies consent to this Court's jurisdiction and waive any venue objections. (Wisegarver Decl., ¶ 21; First Smith Decl., Ex. C.) Plintron USA is a citizen of Ireland, the Companies are citizens of Wyoming, and Mr. Phillips is a citizen of Washington; joinder will not defeat diversity jurisdiction. *See* 28 U.S.C. § 1332.

Plintron USA argues that joinder is nonetheless inappropriate because the joinder deadline expired in July 2024, the parties have completed extensive discovery and motion practice, and adding the Companies now would require reopening discovery and adjusting the

ORDER GRANTING MOTION FOR JOINDER - 17

schedule. (Resp. at 17.) These concerns are significant, but they do not render joinder infeasible within the meaning of Rule 19. The trial date has been continued several times and remains nearly a year away. (Dkt. ## 111, 236, 312.) The Court retains discretion to adjust pretrial deadlines and manage its docket when joinder is required. *See CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 911 (9th Cir. 1991); *Ten Bridges LLC v. Hofstad*, 2023 WL 7281331, at *2 (W.D. Wash. Nov. 3, 2023) (citing *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016)).

**F.    Other Entities**

Plintron USA's pleadings also reference Stratabites LLC and Moxee Services. On the record before the Court, those references do not render Stratabites or any separate Moxee entity required parties under Rule 19. Stratabites is alleged to have been a sham vendor that funneled funds to MVNO Connect, not to hold ongoing customer contracts or business operations that would be the subject of the injunctive or equitable relief sought. (Federal Compl., ¶¶ 3(a)-(b), 52-75, 89-95; State Compl., ¶¶ 4.39-4.40.) Moxee Services is similarly alleged to be a line of services "offered and operated by KonnectOne," rather than an independent company whose own contractual or property interests are at issue. (Federal Compl., ¶¶ 91, 131; State Compl., ¶¶ 4.10.) In contrast, Plintron USA's Federal Complaint and State Complaint place MVNO Connect and KonnectOne at the center of the alleged scheme at issue, and the Court's Rule 19 analysis is limited to those entities.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that MVNO Connect and KonnectOne are required parties under Rule 19. The Motion for Joinder (dkt. # 351) is therefore GRANTED.

Plintron USA is ORDERED to file, within **fifteen (15) days** of the date of this Order, an amended complaint adding MVNO Connect and KonnectOne as defendants in this action. The

ORDER GRANTING MOTION FOR JOINDER - 18

parties shall meet and confer and, within **twenty-one (21) days** of the amended complaint's filing, submit a joint proposal addressing any necessary adjustments to the case schedule in light of this joinder.

Dated this <u>29th</u> day of January, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER GRANTING MOTION FOR JOINDER - 19