THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| PLINTRON TECHNOLOGIES USA LLC,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH PHILLIPS, RICHARD PELLY, THOMAS MATHEW, GREG MCKERVEY, and DESIREE MICHELLE GRAY, KONNECTONE INC., and MVNO CONNECT LLC,<br><br>Defendants. | No. 2:24-cv-00093-TL-MLP<br><br>PLAINTIFF AND COUNTERCLAIM DEFENDANT PLINTRON TECHNOLOGIES USA LLC'S SECOND AMENDED COMPLAINT<br><br>**JURY TRIAL DEMANDED** |
| JOSEPH PHILLIPS,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>PLINTRON TECHNOLOGIES USA LLC; MOHAN KUMAR SUNDARAM, and his marital community; SUBHASHREE RADHAKRISHNAN, and her marital community,<br><br>Counterclaim Defendants. | |



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

# TABLE OF CONTENTS


SECOND AMENDED COMPLAINT ........................................................................ 1

NATURE OF CLAIM ........................................................................................ 1

I. Plintron USA's Business ........................................................................ 12

II. Mr. Phillips Was Entrusted to Run Plintron USA for Over Nine Years ........ 13

III. Remaining Defendants Are Former Plintron USA Employees ..................... 16

IV. Use of Stratabites to Improperly Siphon Money from Plintron USA and its Customers ........ 17

A. Overview ........ 17

B. Stratabites is a Sham Company ........ 18

C. Defendants Siphoned Funds from Plintron USA Customers Through a Fraudulent Shell Company, and Doctored Customer Agreements to Actively Conceal This Information ........ 20

D. When Plintron Global Probed into Stratabites, Defendants Suddenly Disavowed Having Contacts and Stratabites Promptly Dissolved .... 22

V. Defendants Fraudulently Developed MVNO Connect as a Competitor and Overbilled For its Services ........ 23

A. Defendants Interfered With Plintron USA's Contracts ........ 24

B. MVNO Connect, KonnectOne and Stratabites Are All Connected ... 26

VI. Defendants Attempted to Cover-Up their Misconduct ........ 28

A. Defendants Have Not Returned Plintron USA's Property ........ 28

B. Mr. Phillips and Mr. McKervey Refused to Provide Plintron USA Full Access to Microsoft Office 365 and the Mail Service Systems . 31

C. Mr. Phillips and Mr. McKervey Refuse to Provide Plintron USA Full Access to the Website Domain ........ 33

D. Mr. Phillips Set Up Plintron USA's Paychex Payroll Accounts Under Plintron USA's Tax ID But Used It For Other Businesses and Upon His Departure, Attempted to Delete the Account and is Blocking Plintron USA's Access ........ 34

VII. Defendants' Co-Employment With KonnectONE ........ 36




BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

VIII. Mr. Phillips Breached His Fiduciary Obligations to Plintron USA by Managing Other Companies ........ 36

IX. KonnectOne is Created to Usurp Plintron USA's Opportunity While Using Plintron USA's Resources and Confidential Information........ 37

A. Phillips Creates KonnectOne to Usurp Plintron USA's Opportunities in Selling and Distributing Handsets and in the Internet of Things Market. ........ 37

B. KonnectOne Obtains Substantial Economic Advantages from Plintron's Handset and IoT Opportunities While Mr. Phillips Simultaneously Thwarts Plintron USA. ........ 41

C. KonnectOne Was Aware that Mr. Phillips Actively Misled Plintron USA About His Relationship to KonnectOne. ........ 43

D. KonnectOne Exploits Mr. Phillips and Other Plintron USA Officers and Employees for its own Economic Benefit. ........ 45

E. Mr. Phillips and Other Plintron USA Officers Use MVNO Connect to Compete Against Plintron USA While They Were Still Acting as Plintron USA Officers. ........ 47

F. MVNO Connect, Through Mr. Phillips and Other Plintron USA Officers, Use Plintron USA's Confidential Information to Take Plintron's Customers. ........ 48

X. Defendants Unlawfully Retain, Destroy, and Conceal Plintron's Proprietary Electronic Data. ........ 49

CAUSES OF ACTION ........ 50

COUNT I – MISAPPROPRIATION OF TRADE SECRETS ........ 50

COUNT II – MISAPPROPRIATION OF TRADE SECRETS ........ 53

COUNT III – BREACH OF CONTRACT ........ 56

COUNT IV – BREACH OF FIDUCIARY DUTIES ........ 57

COUNT V – UNFAIR COMPETITION ........ 58

COUNT VI – TORTIOUS INTERFERENCE WITH CONTRACT ........ 60

COUNT VII – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS OR EXPECTANCY ........ 62

COUNT VIII – FRAUD ........ 63

COUNT IX – DEFAMATION ........ 70



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

COUNT X – CONVERSION .......... 71
COUNT XI – UNJUST ENRICHMENT .......... 72
COUNT XII – CIVIL CONSPIRACY .......... 74
COUNT XIII – VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT .......... 75
COUNT XIV – NEGLIGENCE .......... 76
PRAYER FOR RELIEF .......... 79



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

**SECOND AMENDED COMPLAINT**

Plaintiff Plintron Technologies USA LLC ("Plaintiff" or "Plintron USA") by and through its counsel, submits this Second Amended Complaint against Defendants Joseph Phillips, Richard Pelly, Thomas Mathew, Greg McKervey, Desiree Michelle Gray, KonnectOne Inc. ("KonnectOne"), and MVNO Connect LLC ("MVNO Connect") (collectively, "Defendants"), to add KonnectOne and MVNO Connect as defendants pursuant to the Court's Order Granting Motion for Joinder (Dkt. 381) and respectfully alleges the following.

**NATURE OF CLAIM**

1. Plaintiff seeks recovery for harm caused by Defendants' improper conduct related to actions undertaken both during and after their employment with Plaintiff Plintron USA. As set forth in more detail herein, and by example, during their employment Defendants engaged in a scheme designed to funnel money from Plintron USA's customers to a separate entity connected to Defendants. Defendants also altered Plintron USA customer contracts in a manner to allow for Defendants' new employer to divert business from Plintron USA. Moreover, after their departure Defendants have continued to interfere with Plintron USA's business by refusing to return Plintron USA property, including its computers, files, email system, domain name, and other material. By Defendants' willful actions, Plintron USA has had to "recreate" its business operations because Defendants have failed to simply return their company property. Plintron USA has been exposed to additional harm because Defendants withheld access to Plintron USA's payroll and benefits system, and they possess information necessary to renew company filings with the Federal Communications Commission. The harm Plintron USA has incurred and will continue to incur as it engages in normal business operations has been caused and exacerbated by Defendants conduct.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

2. By way of background, Defendant Joseph Phillips was hired as the Chief Executive Officer ("CEO") to establish and manage Plintron USA, a group company of Plintron Holdings PTE LTD ("Plintron Global"). Mr. Phillips in turn hired Defendant Richard Pelly as Plintron USA's Chief Operating Officer and Defendant Thomas Mathew as Plintron USA's Executive Vice President. Mr. Phillips also hired Defendant Greg McKervey as Plintron USA's Senior Director of IT Operations, and Defendant Desiree Michelle Gray as an administrative assistant (together with Mr. Phillips, the "Individual Defendants").

3. All Defendants were hired to work for Plintron USA on a full-time basis. Yet all Defendants, at one point or another, violated their employment duties owed to Plintron USA and engaged in other improper activities. Upon information and belief, these improper activities include, but are not limited to:

a) The use of a fraudulent company called Stratabites LLC ("Stratabites"), which overbilled Plintron USA for data analytics services. One or more of the Defendants financially benefitted from this overbilling, which amounted to upwards of $3.6 million. One or more of the Defendants were also directly involved in Stratabites, including Mr. Mathew, who redacted third party clauses to hide from Plintron Global payments to Stratabites, and Ms. Gray, who acted as Stratabites "Finance Manager" at the same time she was employed by Plintron USA and collected the fraudulent billings.

b) The use of a company called MVNO Connect, which overbilled Plintron USA for referral fees to funnel over a million dollars to one or more Defendants. MVNO Connect later emerged (and currently exists) as a competitor to Plintron USA. One or more of the Defendants was and/or are involved in MVNO Connect, including Mr. Phillips, who misrepresented to Plintron Global the nature of the MVNO Connect



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

entity and its relationship with Plintron USA. In addition, Stratabites is related to MVNO Connect; a Stratabites website page directs the user to the MVNO Connect account login page.

c) Defendants' renegotiation of Plintron USA customer contracts to remove various exclusivity clauses during their employment Plintron USA. After the removal of these exclusivity clauses, Defendants now, in the current positions, have utilized MVNO Connect to improperly take business away from Plintron USA.

d) The retention, disclosure and use and the threatened disclosure and use of, on information and belief, Plintron USA's confidential information and trade secrets to the detriment of Plintron USA.

e) An unknown association between Defendants and a company called KonnectOne Inc. (formerly KonnectOne LLC). KonnectOne appears to be a legitimate company, offering handsets that run on mobile virtual network operator systems. Mr. Phillips reported to Plintron USA that he was a member of the Board of Directors of KonnectOne. However, Mr. Phillips did not disclose until just before his departure from Plintron USA he owned thirty percent (30%) of KonnectOne. At various points during their employment with Plintron USA, Plintron USA employees also worked for KonnectOne. Mr. Phillips both knew and approved of this improper arrangement. The majority of Defendants and other former employees of Plintron USA now appear to work for KonnectOne. Moreover, Mr. Cory Van Arsdale, an officer of both KonnectOne and MVNO Connect, has a role in both Mr. Phillips departure as CEO of Plintron USA and in Mr. Phillips new employment.

f) The improper retention of Plintron USA property and accounts,



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

including computers and related electronic business records, Plintron USA's email account (with its past records), and even Plintron USA's domain name. Defendants' retention of Plintron USA's property has interfered with Plintron USA's ongoing business and caused an ongoing harm.

4. Defendants' schemes began to unravel approximately a year ago when Plintron Global decided to terminate the Stratabites contract with Plintron USA. Receiving no direct evidence that Stratabites even existed as a legitimate company, Plintron Global began to audit the entire Stratabites relationship. At the same time, MVNO Connect began to emerge as a competitor. Given these events and a review of Defendants' activities while employed by Plintron USA, all of the Defendants resigned from Plintron USA except for Ms. Gray, whom Plintron USA ultimately terminated.

5. Plintron USA has undertaken efforts short of litigation to obtain its property, to no avail. Plintron USA requested that all Defendants return Plintron USA property, including computers owned by Plintron USA that contain Plintron USA's confidential information and trade secret information. These requests have been ignored and/or impeded. For example, since 2019 Plintron USA issued two computers to Mr. Phillips, at least four computers to Mr. Pelly, and two computers to Mr. Mathew. Mr. Phillips has only accounted for one of his computers, yet he has – despite nearly two months of requests from Plintron USA – refused to hand over that computer. Mr. Pelly and Mr. Mathew returned *to Mr. Phillips* only one of their respective computers (with four computers unaccounted for); it took over a month before Mr. Phillips returned those devices to Plintron USA, but only after Mr. Phillips impermissibly made a copy of the information contained on those devices.

6. Plintron USA also requested that its former CEO – Mr. Joseph Phillips enable Plintron USA to continue to use both its domain name and email system upon his departure. Mr. Phillips brazenly refused to even turn over these most basic business essentials, which



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

contain critical information to allow Plintron USA to conduct its business. Mr. Phillips instead told Plintron USA that it had to create new accounts. Of course, creating new accounts would remove *all* of the historical records and documents accrued by Plintron USA since its inception, and would also destroy any evidence of wrongdoing by Defendants. Only recently has Mr. Phillips provided the Microsoft 365 email account credentials to Plintron USA, *but only for the remaining Plintron USA employees*. In essence, the email records of all Defendants – former Plintron USA employees who committed wrongdoing – are either in Mr. Phillips possession or are gone entirely. Defendant Mr. McKervey – Plintron USA's Director of all IT systems – also refused to effectuate the transfer of the email system so that the remaining and any new Plintron USA employees could use the prior email system. Mr. McKervey – an IT specialist – remarkably told Plintron USA that he could not provide access to the Plintron USA email system upon his departure.

7. Plintron USA also requested all Defendants to return any paper copies or electronic copies stored on external devices. Three of the Defendants (Pelly, Mathew, and McKervey) have simply not responded to Plintron USA's request. The other two Defendants (Phillips and Gray) have stated that they have no paper documents, nor any electronic copies, even though they worked from home offices during much of their tenure at Plintron USA (and certainly during the COVID-19 pandemic), and even though they worked on personal home computers conducting Plintron USA business.

8. The failure of Defendants to return Plintron USA's property has caused real and immediate harm. For example, Plintron USA's attempt to determine the exact magnitude of the fraud involving Stratabites and MVNO Connect, and the full divulgence of the KonnectOne relationship, has been hindered by the withholding of Plintron USA's computers and other files.

9. electronic copies, even though they worked from home offices during much of their tenure at Plintron USA (and certainly during the COVID-19 pandemic), and even though



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

they worked on personal home computers conducting Plintron USA business. The failure of Defendants to return Plintron USA's property has caused real and immediate harm. For example, Plintron USA's attempt to determine the exact magnitude of the fraud involving Stratabites and MVNO Connect, and the full divulgence of the KonnectOne relationship, has been hindered by the withholding of Plintron USA's computers and other files. Mr. Phillips' interference is not limited to his refusal to properly transfer the email and domain name accounts to Plintron USA. Mr. Phillips also interfered with Plintron USA's account with its payroll and benefits provider, Paychex Solutions, Inc. ("Paychex"). Plintron USA's account was created under Plintron USA's federal Employer ID Number. However, Mr. Phillips secretly commingled benefits for his *other business ventures* (including Arrow Sales Group LLC and KonnectOne LLC) into Plintron USA's account in some as yet unknown manner. After he departed, Mr. Phillips attempted to conceal that fact by first blocking all access to the Plintron USA account by anyone at Plintron USA or Plintron Global, and then by seeking to terminate the Plintron USA account altogether to erase his tracks. Mr. Phillips' reckless behavior rendered Plintron USA unable to fund its payroll and risked a lapse in benefits and compensation to Plintron USA's remaining employees. Moreover, Mr. Phillips' wrongful assertion to Paychex that he personally owned Plintron USA's Paychex account led Paychex to freeze Plintron USA's account.

10. Thus, Defendants deceptively worked for other companies while employed by Plintron USA, manipulated Plintron USA contracts for their own benefit and to Plintron USA's detriment, and interfered with Plintron USA's customer relationships. They all work in the same competitive environment as Plintron USA, yet most of the Defendants have failed to return their Plintron USA documents, electronic equipment, and files, and all risk disclosing Plintron USA's proprietary trade secret information. Moreover, since their departure they have sought to hide their activities and delete or impair their files and documents.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

11. Defendants' wrongful conduct has caused substantial damage to Plintron USA.

## THE PARTIES

12. Plaintiff Plintron USA is a Limited Liability Company incorporated in Delaware with its principal place of business in Bellevue, Washington. Plintron USA is a wholly owned subsidiary of Plintron Western Holdings Ltd. ("Plintron Western"). Plintron Western is privately held entity based in Ireland. Therefore, for purposes of diversity jurisdiction, Plintron USA is a citizen of Ireland. Plintron USA is a Mobile Virtual Network Aggregator (MVNA), providing access from Mobile Network Operators (MNO), such as T-Mobile US Inc., to its end users.

13. Defendant Joseph Phillips is a former employee of Plintron USA, who served as Plintron USA's Chief Executive Officer ("CEO") during the period May 30, 2014 through November 8, 2023. Upon information and belief, Mr. Phillips is currently a resident of Sammamish, Washington and currently works for KonnectOne, MVNO Connect, and Panda Mobile (businesses also in the wireless telecommunications space), among other businesses.

14. Defendant Richard Pelly is a former employee of Plintron USA, who served as an executive of Plintron USA as its Senior Director/Vice President of Business Operations and Chief Operating Officer from on or around October 16, 2014 until October 13, 2023. Upon information and belief, Mr. Pelly is currently a resident of Seattle, Washington and currently works for KonnectOne and MVNO Connect (businesses also in the wireless telecommunications space), among other businesses.

15. Defendant Thomas Mathew is a former employee of Plintron USA, who served as an executive of Plintron USA as its Director, Senior Director, and Executive Vice President of Products and Technology from on or around August 16, 204 until October 13, 2023. Upon information and belief, Mr. Mathew is currently a resident of McKinney, Texas, and currently works for KonnectOne and MVNO Connect (businesses in the wireless telecommunications space as well), among other businesses.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

16. Defendant Greg McKervey is a former employee of Plintron USA, who served as an executive of Plintron USA as its Senior Director of IT Operations from on or around December 1, 2019, until October 25, 2023. Upon information and belief, Mr. McKervey is currently a resident of Austin, Texas, and currently works for KonnectOne (another business in the wireless telecommunications space).

17. Defendant Desiree Michelle Gray ("Michelle Gray") is a former employee of Plintron USA, who served as an executive assistant to Mr. Phillips from March 1, 2021, until Ms. Gray's termination on November 8, 2023. Upon information and belief, Ms. Gray is currently a resident of Bossier City, Louisiana, and currently works for KonnectOne (another business in the wireless telecommunications space). Ms. Gray was the finance manager of Stratabites LLC, a relevant entity in this action.

18. Defendant KonnectOne Inc. is a Wyoming corporation with its principal place of business in Bellevue, Washington. Prior to the change in its corporate form, KonnectOne was a limited liability company formed in Wyoming. At the time of all the acts and omissions referenced in the Complaint, Mr. Phillips was the sole member and shareholder of KonnectOne. All actions taken by KonnectOne were taken on its behalf by its employees, agents, or representatives, including individuals who are not named as parties to this action.

19. Defendant MVNO Connect LLC is a Wyoming limited liability company with its principal place of business in Bellevue, Washington. The sole member of MVNO Connect LLC is Joseph Phillips, a resident and citizen of King County, Washington. All actions taken by MVNO Connect were taken on its behalf by its employees, agents, or representatives, including individuals who are not named as parties to this action.

## JURISDICTION AND VENUE

20. This Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plintron USA has asserted federal claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq*. against all Defendants.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

21. This Court has an independent basis for jurisdiction over all claims herein against Defendants in accordance with 28 U.S.C. §1332 because there is diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff Plintron USA is a citizen of Ireland. Mr. Mathew and Mr. McKervey are residents of Texas, and Ms. Gray is a resident of Louisiana. Mr. Pelly and Mr. Phillips are residents of Washington. KonnectOne was incorporated in the state of Wyoming and its primary place of business is Washington. MVNO Connect is a citizen of Washington by virtue of the domicile of its sole member, Mr. Phillips.

22. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plintron USA's non-DTSA claims because these claims form part of the same case or controversy as the federal question claim under Article III of the United States Constitution and Plintron USA forms a common nucleus of operative facts

23. This Court has personal jurisdiction over MVNO Connect, Mr. Phillips and Mr. Pelly because they reside within this District pursuant to 18 U.S.C. § 1391.

24. This Court has personal jurisdiction over KonnectOne, Mr. Mathew, Mr. McKervey, and Ms. Gray because they have caused tortious injury by acts and omissions within Washington by willfully and maliciously engaging in conversion of Plintron USA property. These acts and omissions are set forth herein, and include without limitation misappropriation of trade secrets, fraud, and the refusal to turn over Plintron USA's property and material. *See* RCW 4.28.185.

25. In addition, this Court's exercise of personal jurisdiction over these nonresident Defendants is consistent with due process:

a) Mr. Mathew has been acting as the Executive Vice President of Products and Technology at Plintron USA, located in Washington, for about nine (9) years. Mr. Mathew engaged in a series of continuous obligations over the years through the negotiation and finalization of



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

numerous business agreements on behalf of Plintron USA. He obtained knowledge of Plintron USA's proprietary and confidential information and trade secrets through his employment and was obligated not to disclose this information. At the same time he was working for Plintron USA, Mr. Mathew also improperly worked for, and currently works for KonnectOne, another Washington-based telecommunications company. On information and belief, Mr. Mathew has improperly retained Plintron USA proprietary and confidential information and trade secret information, and has used this information in connection with third parties to cause damage to Plintron USA's reputation and business interests, and he has committed fraud and other tortious activity to cause damage to Plintron USA's reputation and business interests, thereby specifically aiming such acts at Washington and causing harm in Washington.

b) Mr. McKervey has been acting as the Senior Director of IT Operations at Plintron USA, located in Washington, for about four (4) years. Mr. McKervey engaged in a series of continuous obligations over the years by providing information technology services for Plintron USA employees both in Washington and in other states. He obtained knowledge of Plintron USA's proprietary and confidential information and trade secrets through his employment and was obligated not to disclose this information. On information and belief, Mr. McKervey has improperly retained Plintron USA proprietary and confidential information and trade secret information, and has used this information in connection with third parties to cause damage to Plintron USA's reputation and business interests, and he has committed fraud and other



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

tortious activity to cause damage to Plintron USA's reputation and business interests, and he has committed fraud and other tortious activity to cause damage to Plintron USA's reputation and business interests, thereby specifically aiming such acts at Washington and causing harm in Washington.

c) Ms. Gray has been acting as Mr. Phillips' executive assistant at Plintron USA, located in Washington, for two years. Ms. Gray engaged in a series of continuous obligations over the years by assisting Mr. Phillips in various Plintron USA affairs, including human resources and finance management. She obtained knowledge of Plintron USA's proprietary and confidential information and trade secrets through his employment and was obligated not to disclose this information. At the same times she was working for Plintron USA, Ms. Gray also improperly worked for, and currently works for KonnectOne, another Washington-based telecommunications company. On information and belief, Ms. Gray has improperly retained Plintron USA proprietary and confidential information and trade secret information, and has used this information in connection with third parties to cause damage to Plintron USA's reputation and business interests, and she has committed fraud and other tortious activity to cause damage to Plintron USA's reputation and business interests, thereby specifically aiming such acts at Washington and causing harm in Washington.

d) KonnectOne is headquartered in Bellevue, Washington, and has operated there throughout its existence. KonnectOne maintains substantial and continuous business operations in Washington, employing numerous key personnel domiciled in Washington,



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

including but not limited to its Chief Executive Officer Mr. Phillips and its Chief Regulatory Officer Mr. Pelly. KonnectOne holds itself out as an original equipment manufacturer which designs, builds, and sells mobile handset and IoT devices and related services to mobile operators and enterprise customers, including those within Washington. KonnectOne has executed multiple contracts with Washington-based companies (including Plintron USA) through which it conducted and still conducts substantial business activities.

26. Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

27. This Court has the power to issue declaratory relief pursuant to 28 U.S.C.§§ 2201 and 2202.

## FACTUAL ALLEGATIONS

### I. Plintron USA's Business

28. Plintron USA was formed as an LLC on November 27, 2012, and is a group company of Plintron Global. Plintron USA provides access to wireless communication services throughout the United States.

29. Plintron USA is a Mobile Virtual Network Aggregator (MVNA). An MVNA buys bulk network access from a Mobile Network Operator (MNO) in the "aggregate" and resells that access to several small Mobile Virtual Network Operators (MVNOs). A MVNO is a wireless communications services provider that does not own the wireless network infrastructure over which it provides services to its customers, whom are cell phone users. When an MVNA enters into a business agreement with a MNO, it does so to obtain bulk access to network services at wholesale rates, then sells network services, which are often pre-paid services, to its customers, and sets retail prices independently to its users. MVNOs may use



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

their own customer service, billing support systems, marketing, and sales personnel, or employ the services of a Mobile Virtual Network Enabler (MVNE) to perform such tasks.

30. Plintron USA is based in Bellevue, Washington. From its inception, Plintron USA has supported the growth of Plintron Global into the US market and is one of the United States' telecom leaders, providing services for various MVNOs including Affordable Connectivity Programs, Lifeline Program for Low-Income Consumers, and Internet of Things ("IoT") players.

31. Plintron USA purchases network access from T-Mobile US Inc., a MNO, through its Wholesale Supply Agreement with T-Mobile.

32. Plintron USA also operates as a MVNE which provides network infrastructure and related services, such as business support systems, administration, and operations support systems to third-party resellers and other MVNOs. Plintron USA purchases MVNE technology and services for its business from Plintron Mobility Solutions Pvt Ltd, a group company of Plintron Global. Plintron Global has evolved their MVNE capabilities to a comprehensive digital experience platform and an innovative MVNA model serving MNOs, MVNOs, IoT players, and Enterprises/Brands, including Over the Top innovators.

33. In 2012, Plintron Global desired to expand its operations in the United States. To that end, Plintron Global established Plintron USA and obtained customers for their services. In 2014, to further expand its business, Plintron USA hired Defendant Mr. Phillips to manage the US operations, onboard new MVNOs according to Plintron USA's business plan, and manage Plintron USA's commercial relationships and contract with T-Mobile.

## II. Mr. Phillips Was Entrusted to Run Plintron USA for Over Nine Years

34. Plintron USA and Mr. Phillips entered into an Employment Agreement on May 30, 2014, whereby Mr. Phillips agreed to serve as Plintron USA's Chief Executive Officer. *See* **Exhibit 1**. Mr. Phillips served as Plintron USA's CEO until his departure on November 8, 2023.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

35. In his Employment Agreement, Mr. Phillips acknowledged and agreed that he would "devote his business time and commercially reasonable efforts, business judgment, skill, and knowledge exclusively to the advancement of the business and interests of [Plintron USA] and its Affiliates. . . and shall do so in good faith." **Exhibit 1** at 2. Mr. Phillips also acknowledged that he agreed to "refrain from any interest, of any kind whatsoever, which are competitive to [Plintron USA's]'s business" and "will not engage in any form of activity that produces a 'conflict of interest'... unless agreed to in advance and in writing." *Id*

36. In his Employment Agreement, Mr. Phillips also acknowledged and agreed to a non-solicitation clause, stating that "for a period of 12 months following termination of employment, for any reason whatsoever, [Mr. Phillips] will not solicit customers or clients of [Plintron USA]." *Id*. at 6. Mr. Phillips also acknowledged and agreed to a non-recruit clause, agreeing "not to recruit any of [Plintron USA]'s Executives for the purpose of outside business either during or for a period of 12 months after [Mr. Phillips]'s tenure of employment with [Plintron USA]." *Id*.

37. Plintron Global entrusted Mr. Phillips as CEO to run an entire branch of its business. Mr. Phillips was vested with discretionary power to manage every aspect of Plintron USA's operations in the United States, with agreement that he would do so with integrity and reliability and in accordance with and respect of his fiduciary duties.

38. Plintron Global hired Mr. Phillips to conduct Plintron USA's operations, relying on him to hire employees, manage an office and customer accounts, and oversee the day-to-day activities of the company, among other responsibilities

39. As CEO of Plintron USA, Mr. Phillips owed certain fiduciary duties to Plintron USA, including a duty of loyalty not to use his control over Plintron USA's property to his advantage at the expense of Plintron USA. He also owed a duty to act in Plintron USA's best interest.

40. Mr. Phillips also owed a fiduciary duty of care and prudence to manage Plintron



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

USA's property with the care an ordinary prudent person in a like position would exercise under similar circumstances, including assessing information critically, seeking all relevant information necessary before making and executing decisions, and avoiding and preventing unnecessary waste and expense.

41. Mr. Phillips owed a fiduciary duty of good faith by authorizing transactions only for the purpose of genuine attempts to advance corporate welfare.

42. Mr. Phillips owed a fiduciary duty of confidentiality to ensure Plintron USA's property was properly inaccessible to the public, and that only authorized personnel accessed Plintron USA's property through limited means for proper business operations.

43. Mr. Phillips owed a fiduciary duty to manage Plintron USA's money and property carefully. He owed a duty to maintain proper recordkeeping of Plintron USA's money and property.

44. As an officer of the company, Mr. Phillips owed Plintron USA these and other fiduciary duties, and also was required to act in good faith and fair dealing for Plintron USA's benefit.

45. In his role as CEO of Plintron USA, Mr. Phillips frequently created, accessed, and used Plintron USA proprietary and confidential information and Plintron USA trade secrets during the operations of Plintron USA.

46. "Confidential Information" within Mr. Phillips' Employment Agreement is defined as:

> trade secrets, confidential or proprietary information, and all other information, documents or materials owned, developed or possessed by the [Plintron USA] that are not generally known to the public or within the industry of the [Plintron USA]. Confidential Information includes, but is not limited to, financial information, business plans, product cost or pricing, information regarding future development, locations or acquisitions, personnel records and software programs. Confidential Information shall not include any information that is or becomes generally publicly available or known by the Executive prior to his employment with [Plintron USA] (other than as a result of violation of this Agreement by Executive).



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

47. Far from protecting Plintron USA's proprietary and confidential information, and its trade secrets, Mr. Phillips and other Defendants have engaged in a series of actions that have and will continue to compromise Plintron USA's business.

## III. Remaining Defendants Are Former Plintron USA Employees

48. As Plintron USA's CEO, Mr. Phillips hired Defendants Mr. Pelly, Mr. Mathew, Mr. McKervey, and Ms. Gray. Mr. Pelly and Mr. Matthew served executive or director roles as Plintron USA's Chief Operating Officer and Executive Vice President, respectively.

49. Mr. McKervey was Plintron USA's Senior Director of Information Technology ("IT"). In this role he provided IT services for Plintron USA, including administering emails services connected to Microsoft Office 365 and administering the plintronamericas.com domain, among other responsibilities.

50. Ms. Gray served as Mr. Phillips' executive assistant. In this role she helped handle human resources, complete tax and other regulatory compliance filings, coordinate billing information with T-Mobile, and compile monthly invoice and revenue reports, among other responsibilities. In performing these tasks, Ms. Gray coordinated with various third-party entities.

51. As officers and directors of Plintron USA, Mr. Pelly, Mr. Mathew, and Mr. McKervey all owed fiduciary duties to Plintron USA.

52. As employees of Plintron USA, Defendants were subject to company policies regarding trade secrets and proprietary and confidential information.

53. All Defendants are former employees of Plintron USA, resigning or otherwise departing since September 2023. On information and belief, all Defendants now work for KonnectOne.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

## IV. Use of Stratabites to Improperly Siphon Money from Plintron USA and its Customers

### A. Overview

54. The evidence uncovered thus far indicates that while they were employed by Plintron USA, one or more Defendants engaged in operations with a fraudulently created company called "Stratabites" for Defendants' own financial benefit and to the detriment of Plintron USA.

55. Under Mr. Phillips' leadership, Plintron USA entered into a contract with Stratabites to pay millions of dollars for services that could have been performed by Plintron USA employees.

56. Defendants have withheld, destroyed, or otherwise concealed much of the information surrounding their engagement with Stratabites. Notably, Mr. Phillips has refused to transfer the Microsoft 365 accounts for all Defendants, which upon information and belief contain all of Defendants' emails while they were employed at Plintron USA, other than those that were deleted.

57. The information that is currently available to Plintron USA regarding Stratabites indicates that the company was not a bona fide company but rather was fraudulently created by one or more Defendants and used to extract money from Plintron USA and its customers. Specifically, such information includes but is not limited to the following:

a) Aside from the Stratabites LLC Wyoming incorporation and dissolution documents, there is virtually no information online about the company.

b) The Minnesota-based individuals listed as the company executives on the incorporation documents stated that they have never heard of the company and are unfamiliar with data analytics services which Stratabites supposedly offered.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

c) Stratabites LLC was incorporated the very same day it signed its first Statement of Work with Plintron USA.

d) The Stratabites signatory on the agreements between Stratabites and Plintron USA spells her name three different ways across the agreements (Anna Gohi, Anna Goh, Ann Goh), yet no information could be located indicating that this is a real person, under any spelling.

e) At some point in time, Ms. Gray worked as Stratabites' Finance Manager while she was also employed by Plintron USA, and held herself out in that capacity to various third parties.

f) Defendants signed agreements between Plintron USA and Plintron USA's customers that required Plintron USA's customers to make kickback payments to Stratabites. One or more Defendants then deleted or hid the Stratabites payment clauses in the versions of those agreements provided to Plintron Global, Plintron USA's parent company.

g) After Plintron USA paid millions of dollars to Stratabites, Plintron Global instituted an audit of the Stratabites activity. Once this audit began, one or more Defendants refused to provide full names or contact information for anyone at Stratabites; and Stratabites to end the operations of its company.

**B. Stratabites is a Sham Company**

58. The Stratabites saga begins in 2020, when Plintron USA and Strata Core, d/b/a Stratabites, entered into a Master Services Agreement ("MSA"), effective May 2, 2020. Mr. Phillips and Mr. Pelly set up this service agreement with Stratabites, and Mr. Pelly signed the MSA on behalf of Plintron USA. An individual by the name of "Anna Gohi" also signed, presumably on behalf of Strata Core, as its "VP, Sales" representative. The agreement set out



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

that Stratabites would provide IT services to Plintron USA, including building a cost optimization engine to change user status to reduce costs, and building and delivering portals or platforms for Plintron USA customers. The details of the IT services and mechanisms by which Stratabites would get paid were described in later Statements of Work ("SOWs").

59. Stratabites was an LLC created and filed in the state of Wyoming on June 16, 2020 by Robin Jones of Registered Agents, Inc., located at 30 North Gould St, Sheridan, Wyoming, 82801.

60. While "Strata Core" appears to be a legitimate business located in Bellevue, Washington, it appears to have no connection with the "Stratabites" entity that entered into the contractual relationship with Plintron USA. Plintron USA's investigation as to whether Strata Core ever conducts business as "Stratabites" turned up zero results. Moreover, Stratabites does not appear to be a brand or affiliate of Strata Core.

61. The first SOW executed between Plintron USA and Stratabites was signed by Mr. Pelly on May 20, 2020. It was signed for Stratabites by an "Anna Goh" and thus executed on June 16, 2020. Notably and significantly, the company Stratabites – the entity that signed the MSA and SOW with Plintron USA – **did not exist** until that very same day "Anna Goh" executed the contract, being formed in the State of Wyoming on June 16, 2020.

62. The point of contacts for Stratabites in each of the SOWs were one or both individuals by the names "Michelle Lynn" and "Janakiram Reddy" with the emails michelle@stratabites.com and janakiramr@stratabites.com. Plintron USA's investigation could not turn up any information on these individuals. The stratabites.com domain name was registered through Domains by Proxy, LLC, an Arizona company that permits a company to anonymously establish a domain name.

63. Upon information and belief, the entire LLC formation of Stratabites was a sham. The LLC formation documents for Stratabites lists three individuals as its officers and corporate contacts: Mr. John S. Elder as the President, Mr. David B. Perkkio as Vice-President,



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

and Mr. Mark R. Utne, also as Vice-President. The same address for all three individuals was provided as 1120 E. 80th Street, Bloomington, Minnesota, 55420.

64. That Minnesota address is associated with the firm of Elder-Jones Inc., a construction contractor. Counsel for Plintron USA contacted all three individuals – Messrs. Elder, Perkkio, and Utne – to inquire about their role in Stratabites. All three responded that they had never heard of the company and credibly denied that they ever formed Stratabites, let alone acted as its President, or Vice-Presidents. Moreover, all three indicated that their expertise was in the general contracting business, and that they did not engage in any mobile telephone analytic services, let alone the type of service allegedly provided by Stratabites.

65. However, it is known that Defendants had a role in Stratabites. For example, Mr. Phillips, Mr. Pelly, and Mr. Mathew would request funds from Plintron USA to pay Stratabites. By January 2023, Plintron USA had paid over $3.6 million to Stratabites for its IT services. The points of contact for Plintron USA in the SOWs were Mr. Mathew and Mr. McKervey, and Ms. Gray acted as Stratabites' Finance Manager as of November 2022.

66. As set forth herein, when Plintron Global began to question the payments it had paid to Stratabites over a number of years, Stratabites went dark – it quickly stopped all communications, ceased any form of viable contact, and dissolved itself and ceased to exist shortly thereafter.

### C. Defendants Siphoned Funds from Plintron USA Customers Through a Fraudulent Shell Company, and Doctored Customer Agreements to Actively Conceal This Information

67. In addition to siphoning money out of Plintron USA, one or more Defendants utilized the Stratabites LLC company to generate additional income from Plintron USA customers and hid those payments from Plintron USA's parent company.

68. Throughout 2021 and 2022, Plintron USA, by and through Mr. Phillips, Mr. Pelly, and Mr. Mathew, entered into various MVNO Agreements with certain Plintron USA customers that would purchase and distribute wireless communication services to end users



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

through Plintron USA's MVNA access. Through these agreements, Mr. Phillips, Mr. Pelly, and Mr. Mathew fraudulently transferred money to Stratabites from certain Plintron USA's customers for their own personal financial benefit.

69. Unbeknownst to Plintron Global at the time, one or more of the Defendants were altering these contracts to hide payments to themselves, either directly or indirectly through Stratabites. While Plintron USA has not yet discovered the full scope of this fraud, it is known that material "Third-Party Service Fees" clauses in these contracts **were deleted** to hide payments made to Stratabites in at least some of these agreements. These "Third-Party Service Fees" clauses required an MVNO to pay a service fee to Stratabites LLC for reporting, billing and pool management services.

70. Plintron Global never saw the real contracts containing these clauses. Around March 2022, Plintron Global requested that Plintron USA (and specifically, Defendants) provide all contracts that Plintron USA had entered into with other parties (or would execute in the future) within ten business days of being fully executed. Defendants agreed to provide these contracts, but ultimately failed to send all final contracts to Plintron Global.

71. Upon information and belief, one or more Defendants took active steps **to conceal** the Third-Party Service Fees clause from Plintron Global. For example, Defendants provided Plintron Global an electronic copy in PDF form of an agreement between Plintron USA and one of its customers that omitted the Third-Party Service Fees clause providing for the payment of fees to Stratabites. On closer inspection, the PDF metadata of that agreement indicates that a white box was placed in the electronic copy provided to Plintron Global to cover the Third-Party Service Fees clause requiring payment to Stratabites. The PDF's metadata identifies the creator of the white box as one of the Defendants, Mr. Mathew.

72. Comparison of other customer Agreements executed by one or more Defendants with the same Agreement provided to Plintron Global shows similar **deletions** of the Third-Party Service Fees clause from those Agreements. All told, Defendants intentionally



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

withheld agreements with the clause or deleted the clause in six (6) customer contracts (with four different customers) to hide their activity. Plintron USA cannot identify more contracts, which upon information and belief exist, because of the actions undertaken by Defendants, particularly Messrs. Phillips, Pelly, and Mathew to retain the historical Plintron USA information and not provide that information to Plintron USA.

73. Upon information and belief, one or more of the Defendants, including Mr. Mathew, intentionally deleted the Stratabites kickback clauses from the copies of the MVNO Agreements and Amendments provided to Plintron Global, or intentionally withheld the agreements with these clauses altogether.

### D. When Plintron Global Probed into Stratabites, Defendants Suddenly Disavowed Having Contacts and Stratabites Promptly Dissolved

74. In November of 2022, Plintron Global wanted Plintron USA to terminate the contract with Stratabites LLC. Kamaraj Sivakumar, a Plintron Global employee, followed up repeatedly with Mr. Pelly to confirm whether Plintron USA had contacted someone at Stratabites LLC about the termination, and whether Stratabites LLC acknowledged receipt.

75. Mr. Pelly indicated in November of 2022 that he provided notice of termination to a person named "Dave" back in September of 2022 over a phone conversation. Mr. Pelly ignored Plintron Global's requests to provide written confirmation of the communication with Stratabites. Nor would Mr. Pelly provide the full name or contact information for "Dave." Despite signing, on behalf of Plintron USA, the original Masters Services Agreement and various Statements of Works with Stratabites, and despite being in business with Stratabites for the past three years, Mr. Pelly stated that he had no contacts at Stratabites LLC. Mr. Pelly later told Plintron Global that "Dave" was no longer with Stratabites LLC by September of 2022.

76. After failing to identify a point of contact from one or more of the Defendants, Plintron Global ultimately contacted the registered agent for Stratabites to seek the correct



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

contact information for Stratabites. Less than a month after that inquiry, Stratabites – through that registered agent – applied for dissolution of Stratabites LLC. The state of Wyoming (the state of incorporation for Stratabites) approved Stratabites LLC's dissolution on August 16, 2023.

77. Upon information and belief, Stratabites was, in fact, a shell company which Mr. Phillips, Mr. Pelly, Mr. Mathew, Mr. McKervey, and/or Ms. Gray, and possibly other individuals, utilized to generate additional personal income for themselves by siphoning money from Plintron USA and Plintron USA's customers.

### V. Defendants Fraudulently Developed MVNO Connect as a Competitor and Overbilled For its Services

78. Defendants engaged in additional wrongful conduct through a company called MVNO Connect. On information and belief, while one or more of the Defendants were employed by Plintron USA, they were simultaneously working on behalf of MVNO Connect to both overbill Plintron USA for unnecessary services and to develop MVNO Connect as a competitor to Plintron USA.

79. Defendants, including Mr. Phillips and Mr. Pelly, negotiated a contract between Plintron USA and MVNO Connect (a Wyoming-incorporated company) wherein MVNO Connect would refer customers to Plintron USA for a referral fee. This relationship lasted several years. On information and belief, Plintron USA overpaid MVNO Connect for these referral services by over a million dollars, a fact known, aided, and abetted by one or more Defendants.

80. More recently, Plintron USA began to lose business to a competitor company also called MVNO Connect. Plintron Global executives asked Mr. Phillips whether the "MVNO Connect" company that was referring customers to Plintron USA was the same company now competing and taking business away from Plintron USA. Mr. Phillips denied the relationship and claimed that two separate companies called "MVNO Connect" existed,



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

one incorporated in Wyoming (the referral company) and the other incorporated in Florida (the competing company).

81. On information and belief, Mr. Phillips intentionally misrepresented the nature of MVNO Connect, and that the two companies are, in fact, one and the same company. That one same company is incorporated in Wyoming and registered to do business in Florida as a foreign LLC.

82. On information and belief, Mr. Phillips has intimate knowledge of MVNO Connect. MVNO Connect and Plintron USA's principal places of business were in the same building (40 Lake Bellevue Drive, Bellevue WA 98005) for many years. Moreover the two companies leased adjacent space; MVNO Connect is located in Suite 340, and Plintron USA is located in Suite 350.

83. Other connections between Mr. Phillips and MVNO Connect exist. For example, Mr. Cory Van Arsdale, a director of MVNO Connect, has some yet unknown role in Mr. Phillips resignation from Plintron USA.

**A. Defendants Interfered With Plintron USA's Contracts**

84. The interference with Plintron USA's business and the diversion of that business to MVNO Connect has been assisted by one or more of the Defendants. Upon information and belief, one or more of the Defendants orchestrated a long-term scheme where they utilized Plintron USA proprietary and confidential information and trade secrets for different competitive entities, such as MVNO Connect, and thereby take business away from Plintron USA.

85. For example, Plintron USA and one of its customers entered into a contract in which the customer agreed to an exclusive arrangement where all of its MVNO services would be provided by Plintron USA. Before departing Plintron USA, Mr. Pelly, on information and belief with the knowledge of Mr. Phillips and others, removed that exclusivity clause with



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

Plintron USA from that contract. This customer now utilizes MVNO Connect as an additional MVNO provider.

86. One of more of the Defendants also amended the MVNO Agreement Plintron USA has with another client to **remove** the exclusivity clause. This loss of exclusivity with a second client is further evidence that Defendants, while working as CEO of Plintron USA, was harming Plintron USA's business and orchestrating a scheme to steal Plintron USA's clients and send them over to MVNO Connect.

87. On information and belief, one or more of the Defendants successfully established a service relationship between MVNO Connect and a third Plintron USA customer that had an exclusivity clause in their Plintron USA Agreement. Upon information and belief, the exclusivity clause in the MVNO Agreement between Plintron USA and this third customer has not been amended, but that customer is utilizing MVNO Connect as a second service provider (in addition to Plintron USA). Thus, on information and belief one or more of the Defendants interfered and induced a breach of Plintron USA's contract with this customer

88. In addition, upon information and belief, one or more Defendants also used Plintron proprietary and confidential information and trade secrets involving Plintron USA's relationship with its sim card vendor Giesecke+Devrient to help create services for MVNO Connect as well and increase MVNO Connect's business advantage.

89. Upon information and belief, one or more employees of T-Mobile are aware that Defendants have been transferring business from Plintron USA to MVNO Connect.

90. Upon information and belief, in addition to steering improperly many former Plintron USA customers to MVNO Connect, one or more of the Defendants have also repeatedly misrepresented to Plintron USA customers and others in the wireless telecommunications industry that Plintron USA was "failing" or "going out of business," despite the fact that Plintron USA remains a viable company with existing contracts.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

**B. MVNO Connect, KonnectOne and Stratabites Are All Connected**

91. There are ties between one or more of the Defendants, Stratabites, and MVNO Connect.

92. Cory Van Arsdale is the Chief Operating Officer of KonnectOne. KonnectOne, as set forth herein, is at least partially owned by Mr. Phillips, employed numerous Plintron USA employees while they were working "full-time" at Plintron USA, and currently employs many former Plintron USA employees. On information and belief, KonnectOne had its payroll or financial services account at Paychex commingled with Plintron USA by Mr. Phillips.

93. KonnectOne is connected with MVNO Connect; MVNO Connect utilizes "Moxee Services" which are offered and operated by KonnectOne.

94. Further, Stratabites, the fraudulent company used by one or more Defendants as a repository for funneled Plintron USA funds, is also associated with MVNO Connect. For example, the Registered Agent that filed MVNO Connect LLC's organization papers is located at 30 North Gould St, Sheridan, Wyoming, 82801. This location is the same as the Registered Agent used to register and dissolve Stratabites LLC

95. In addition, Stratabites and MVNO Connect are related through the use of a stratabites.com website. In particular, the website located at demo.stratabites.com/auth/login resolved to a MVNO Connect login page, as shown below on a screen page last accessed on December 11, 2023:






96. On information and belief, over the past month one or more of the Defendants have caused MVNO Connect to attempt to hide this relationship with stratabites.com The website located at the url demo.stratabites.com/auth/login now resolves to an "error" webpage (see above, accessed on January 9, 2023).

97. However, this domain is still associated with MVNO Connect in the Google search engine (as shown below). Upon information and belief, one or more of the Defendants intentionally altered, or caused to be altered, the webpage after December 11, 2023 to intentionally obscure the relationship between Stratabites and MVNO Connect.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650




98. Finally, on information and belief, one or more of the Defendants, including Mr. Phillips, have an ownership interest and/or other substantial ties with MVNO Connect.

## VI. Defendants Attempted to Cover-Up their Misconduct

99. To date, Defendants have been non-cooperative in, among other actions, in returning Plintron USA files and equipment, including computers and other electronic devices, to Plintron USA after their departure. One or more of the Defendants, including Joseph Phillips, has also interfered with the business operations of Plintron USA's email services through its Microsoft 365 account, and refuses to turn over the prior email records to Plintron USA. Defendant Joseph Phillips has refused to turn over control of Plintron USA's domain name, thereby causing harm to Plintron USA's business operations. Defendant Joseph Phillips also failed to timely transfer the payroll and benefits account (offered by Paychex), and caused harm to the company by, among other actions, causing employee benefits to fail to transfer and placing Plintron USA at risk of missing its payroll requirements.

### A. Defendants Have Not Returned Plintron USA's Property

100. Mr. Phillips, Mr. Pelly, and Mr. Mathew all received computers, laptops, or



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

other electronic devices, paid for by Plintron USA through reimbursement, in the course of their employment at Plintron USA. These devices were used to carry out their employment duties and obligations.

101. During their employment at Plintron USA, Mr. Phillips, Mr. Pelly, Mr. Mathew, Mr. McKervey, and Ms. Gray all received Plintron USA confidential and proprietary information and trade secrets related to the complete range of Plintron USA services and customer relationships. The information Defendants had access to covered not only programs and processes that covered the technical aspects of Plintron USA's mobile network services, but also all the financial and commercial information related to the business of Plintron USA, including detailed information on business and operating plans, efficiency goals, budgets, capacity, pricing, margin, output, supplies, sales, profit margins, competitive intelligence, customer lists and contacts, and customer reports and performance history, customer negotiations and agreements. The information constitutes both trade secrets, as well as proprietary and confidential information such as product offerings, customer agreements, vendor agreements, and Plintron USA's contractual agreements with the cellular carrier T-Mobile.

102. The confidential and proprietary information and trade secrets were accessed, among other means, through the Plintron USA devices in custody of Mr. Phillips, Mr. Pelly, and Mr. Mathew, and through the personal devices of Mr. McKervey and Ms. Gray. As indicated above and herein, many of these Plintron USA devices have not been returned to Plintron USA despite multiple requests that they be returned. Likewise, the extent to which Plintron USA material exists and is used on Mr. McKervey and Ms. Gray's personal devices is currently unknown.

103. On their last employment date of October 13, 2023, Mr. Pelly and Mr. Mathew both indicated over email, using the exact same language, that they "made arrangements" to turn in their laptops or computers. Despite constant outreach from Plintron Global, neither Mr.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

Pelly nor Mr. Mathew responded to indicate with whom these arrangements were made or otherwise reveal the location of their computers.

104. Nearly two months later, on December 6, 2023, Plintron USA's counsel received two laptops from Mr. Phillips, via his counsel: Microsoft Surface Studio (model 1964 silver) with serial number 0F004KS213400C, and Apple Computer MacBook Air (model A2337) with serial number HXJL12MW1WFY. Mr. Phillips later stated that Mr. Pelly and Mr. Mathew were the custodians of these laptops.

105. Mr. Phillips had the computers of Mr. Pelly and Mr. Mathew in his possession for almost two months. Mr. Phillips, without Plintron USA's knowledge or consent, had a third-party vendor, Lighthouse Consulting, access the computers and create images of these laptops, which contain Plintron USA's trade secrets and confidential and proprietary information, during the many months in which the laptops were in his possession as an ex-Plintron USA employee. While Mr. Phillips has returned one of the computers used by Mr. Pelly and Mr. Mathew, respectively, Mr. Phillips has refused to return any improperly obtained images of Messrs. Pelly and Mathew's devices.

106. Beyond these two laptops, there are additional Plintron USA devices that Mr. Phillips, Mr. Pelly, and Mr. Mathew still have in their possession. Mr. Phillips sought reimbursement from Plintron USA for at least one more laptop. Mr. Phillips has denied knowing the whereabouts of this computer, even though Mr. Phillips, as CEO of Plintron USA, was ultimately responsible for its property, including its computers. Mr. Phillips' counsel also stated in a December 9, 2023 letter that he has a computer in his possession that "is in the process of review for Plintron USA records, and which has been preserved" despite the lack of permission to access, image, or otherwise create copies of materials of Plintron USA computers. Mr. Phillips has failed to return any equipment or materials that are therefore the property of Plintron USA.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

107. As noted above, one computer each for Mr. Pelly and Mr. Mathew have been returned via Mr. Phillips. But during the course of his employment Mr. Pelly was issued at least four computers. Upon information and belief, Mr. Pelly has failed to return or account for three of his issued computers, not to mention other equipment or materials that are therefore the property of Plintron USA.

108. During the course of his employment Mr. Mathew was issued at least two computers. Upon information and belief, Mr. Mathew has failed to return or account for one of his issued computers not to mention other equipment or materials that are therefore the property of Plintron USA.

109. Upon information and belief, Mr. McKervey and Ms. Gray used personal devices to carry out their duties and obligations as Plintron USA employees.

110. Although Ms. Gray represented that she does not have a Plintron USA computer, she has failed to return to Plintron USA any files whatsoever from her two years working at Plintron USA, including any Plintron USA confidential and proprietary information and Plintron USA trade secrets in her possession.

111. Although Mr. McKervey represented that he does not have a Plintron USA computer, he has ignored all communication concerning whether he possesses any Plintron USA confidential or financial information, and he has returned no such information.

**B. Mr. Phillips and Mr. McKervey Refused to Provide Plintron USA Full Access to Microsoft Office 365 and the Mail Service Systems**

112. As part of his role as CEO of Plintron USA, Mr. Phillips set up the tenant credentials for Plintron USA's Microsoft Office 365 system and e-mail system, and the plintronamericas.com email address service.

113. Since Mr. Phillips announced his resignation, officials of Plintron USA have been in constant communication with Mr. Phillips and his counsel in attempts to complete various exit procedure requirements, including returning Plintron USA equipment and



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

transferring control of Plintron USA technology and accounts. To date, Mr. Phillips has failed to fully transfer any of these accounts.

114. For months after his departure from Plintron USA, Mr. Phillips held onto Plintron USA's Microsoft Office 365 accounts (including Plintron USA's email accounts) and refused to provide the necessary credentials to transfer the accounts to Plintron USA.

115. When attempts to obtain access to the accounts from Mr. Phillips proved difficult, Plintron USA attempted to do so through Mr. McKervey, who specialized in IT services for Plintron USA and administered the email services that were connected to the Microsoft Office 365 tenant to which he had administrator access. After ignoring Plintron USA's requests for months, Mr. McKervey incredibly took the position that he did not know how to access the Microsoft Office 365 account, notwithstanding his IT expertise and his role as the head of Information Technology for Plintron USA. Upon information and belief, Mr. McKervey was coordinating with Mr. Phillips to block Plintron USA's access to its accounts.

116. Since Mr. Phillips announced his resignation from Plintron USA, Plintron USA employees have reported that their mail files were being deleted, and that they had been blocked from accessing their Plintron USA emails through the Microsoft 365 account. In addition, emails—including emails from customers—were not being received, nor were they "bouncing" back to the sender indicating that the addressee was not receiving the email. Thus Plintron USA for various times since Mr. Phillips refusal to turn over the Microsoft 365 account credentials, has been unaware of any customer, vendor, or other communications, and thus unable to respond to its detriment.

117. It was not until November 28, 2023, nearly two months after Mr. Phillips' announced his departure, that Mr. Phillips restored access to Plintron USA's email system for existing Plintron USA employees. However, Mr. Phillips withheld the email accounts and historical information for former employees, including all of the Defendants. Plintron USA has repeatedly and continuously demanded access to those accounts, which are the property of



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

Plintron USA, but to date Mr. Phillips has refused to provide access to the email history and records of Defendants and other former employees.

118. Upon information and belief, Mr. Phillips' refusal to provide a straightforward transfer of the credentials for Plintron USA's Microsoft Office 365's system was to obstruct the ability for Plintron USA to identify past evidence of Defendants' fraudulent and wrongful conduct as described in this Complaint.

### C. Mr. Phillips and Mr. McKervey Refuse to Provide Plintron USA Full Access to the Website Domain

119. As part of his role as CEO of Plintron USA, Mr. Phillips set up the "plintronamericas.com" domain name. Mr. McKervey managed the plintronamericas.com domain during his employment at Plintron USA as the Director of IT Operations.

120. Since August of 2022, Plintron Global officials have repeatedly asked Mr. McKervey for the transfer of the domain name credentials so that other Plintron USA employees can access the site. Mr. McKervey has not provided the credentials to Plintron Global. In October 2023 Mr. McKervey continued to refuse to provide the domain name credentials, stating that this "discussion is between attorneys."

121. Plintron USA has also sought the transfer of the domain name credentials from Mr. Phillips. Mr. Phillips has refused to provide these credentials. Mr. Phillips has alternatively stated that he, not Plintron USA, owns the domain name, and also that he will transfer the domain name to Plintron USA only upon a payment of a fee. Mr. Phillips has taken these positions notwithstanding the fact that he has no association with the term "Plintron USA" aside from his employment by Plintron USA, and the fact that part of his role as CEO of Plintron USA was to establish operating accounts, including a domain name, for the company and not his own personal benefit.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

### D. Mr. Phillips Set Up Plintron USA's Paychex Payroll Accounts Under Plintron USA's Tax ID But Used It For Other Businesses and Upon His Departure, Attempted to Delete the Account and is Blocking Plintron USA's Access

122. As part of his role as CEO of Plintron USA, Mr. Phillips set up payroll and benefits services through Plintron USA's third-party servicer, Paychex.

123. Paychex is a company that provides human resource, payroll, and benefits outsourcing services for businesses.

124. Paychex has been Plintron USA's payroll and benefits servicer since 2014. Plintron USA's Paychex account was set up by Mr. Phillips under Plintron USA's Employer ID Number ("EIN"). Mr. Phillips controlled the account, and designated himself, Defendant Mr. Pelly, and Ms. Gray as authorized users. Two Plintron Global employees, Ramesh Kandaswamy and Lavanya Nandakumar, also had access to the Paychex account.

125. As Plintron USA attempted to complete the final compensation disbursements to Defendants and other employees in November 2023, Plintron USA learned that Ramesh and Lavanya's access had been revoked, and that no other Plintron employees other than Mr. Phillips, Mr. Pelly, and Ms. Gray had access to the account.

126. Mr. Phillips then claimed ownership of Plintron USA's Paychex account and directed Paychex to revoke access by anyone other than himself. Mr. Phillips told Plintron USA that it needed to set up a new account with Paychex, and that the existing account would be terminated. On information and belief, Mr. Phillips intentionally tried to have Plintron USA establish a new Paychex account so that details involving various misdeeds undertaken by Mr. Phillips in the existing Plintron USA Paychex account would be deleted.

127. Despite repeated requests throughout October and November 2023, Mr. Phillips refused requests to transfer authorization of Plintron USA's Paychex account to Plintron USA or other Plintron USA employees to allow Plintron USA to continue its payroll and employee benefits without disruption.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

128. Eventually, a Paychex representative informed Plintron USA that its account was set to expire arbitrarily on November 16, 2023, that Paychex would only engage with authorized account users (which by that point Mr. Phillips had limited to himself), and that Plintron USA's only option forward was to create a new account, which can only be created once the existing account is deleted. As Plintron USA was locked out of its payroll account due to Mr. Phillips' actions, Plintron USA was forced to expend resources and funds to engage in repeated contact and escalation of the issue to Paychex's legal department to ensure that its business operations and payroll were not further interrupted. In addition, during this period at least one former employee indicated that their benefits were not being transferred to their new employer's account due to the fact that Plintron USA did not have control of the account. At other times after Mr. Phillips refused access, Plintron USA had to engage in extensive work to simply fund Plintron USA's payroll through the Paychex account.

129. Eventually, after repeated and continuous requests to Mr. Phillips to return account access to Plintron USA, counsel for Mr. Phillips admitted in correspondence that Plintron USA's Paychex account provided payroll and benefit services for Plintron Technologies USA LLC along with other businesses with which Mr. Phillips was, and is, associated, including a company called Arrow Sales Group and the company KonnectONE. Mr. Phillips attorney then "walked back" and denied this commingling of funds and benefits among different companies, claiming that the Plintron USA Paychex account only provides payroll services to Plintron USA.

130. Paychex has stated to Plintron USA that if Mr. Phillips had commingled information from other businesses into Plintron USA's account, Paychex would have no way to segregate and disassociate that information. Paychex has since deactivated the account and will not return the records absent a Court order or subpoena.

131. Upon information and belief, Mr. Phillips used Plintron USA's Paychex account, set up under Plintron USA's EIN, for the benefit of multiple other businesses, which



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

was a misuse of Plintron USA's account and was in violation of his fiduciary duties to Plintron USA. Upon information and belief, Mr. Phillips asked Paychex to delete Plintron USA's payroll account to conceal the fact that he misused Plintron USA's account for other non-Plintron USA operations.

## VII. Defendants' Co-Employment With KonnectONE

132. Upon information and belief, all Defendants currently work for Mr. Phillips' company, KonnectOne. Mr. Phillips has openly stated that he has been on the board for KonnectOne since 2018, later admitted that he owns thirty percent (30%) of KonnectOne, and at one point stated, through his attorney, to commingling Plintron USA's payroll and benefits funds in Plintron USA's Paychex account in some manner with KonnectOne.

133. According to its website, KonnectOne is an "original equipment manufacturer that designs and builds best-in-class products and services for mobile operators and enterprise customers." Products include smartphones, and IoT devices for car, home, personal safety, and enterprise under their Moxee brand or white-labeled products.

134. Mr. Phillips has represented to Plintron Global that KonnectOne was a customer of Plintron USA. Plintron Global was not aware that, beyond Mr. Phillips' board position and KonnectOne acting as a Plintron USA customer, Mr. Phillips or any other Plintron USA employees had any association or interaction with KonnectOne.

135. In reality, many of Plintron USA's employees, including all Defendants, were working for KonnectOne at the same time they were fully employed by Plintron USA. Mr. Mathew has sent emails from a KonnectOne email domain on multiple occasions. Ms. Gray has also sent an email from a KonnectOne email domain. Upon information and belief, Plintron USA employees "co-working" for KonnectOne did so at Mr. Phillips' direction and approval.

## VIII. Mr. Phillips Breached His Fiduciary Obligations to Plintron USA by Managing Other Companies

136. In addition to MVNO Connect, Arrow Sales Group, and KonnectOne, Mr.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

Phillips also owns and manages another company in the wireless telecommunications industry: Panda Mobile LLC. On information and belief, Mr. Phillips managed Panda Mobile LLC's operations at the same time he was CEO of Plintron USA.

137. According to its website, Panda Mobile offers "mobile connectivity at affordable prices on the nation's largest 5G network." Formerly Panda Cellular, Panda Mobile LLC is registered in Nevada and was formed on February 13, 2023. Mr. Phillips is listed as the Managing Member in its Nevada Secretary of State filing.

138. In managing Panda Mobile LLC while serving as Plintron USA's CEO, Mr. Phillips further breached his fiduciary duties to Plintron USA.

## IX. KonnectOne is Created to Usurp Plintron USA's Opportunity While Using Plintron USA's Resources and Confidential Information.

### A. Phillips Creates KonnectOne to Usurp Plintron USA's Opportunities in Selling and Distributing Handsets and in the Internet of Things Market.

139. Originally called "P Americas LLC," Mr. Phillips created KonnectOne on or about June 30, 2016 as a Wyoming limited liability company. Mr. Phillips is and always has been its sole member and, for nearly its entire existence, KonnectOne's only manager. On February 3, 2025, Mr. Phillips converted KonnectOne to a profit corporation. KonnectOne is an original equipment manufacturer engaged in the design, manufacture, and distribution of mobile handsets and "internet of things," or IoT, devices. Its products include smartphones, tablets, hotspots, and LTE-enabled IoT hardware for cars, homes, personal safety, and enterprise, all as marketed under the "Moxee" brand or offered to operators on a white-label basis. Mr. Phillips created KonnectOne for the sole purpose of exploiting opportunities Plintron USA was pursuing at the time, to take Plintron USA's business, and to financially benefit Defendants, including Mr. Phillips and KonnectOne, at Plintron USA's expense.

140. As an MVNA and as allowed under its Wholesale Supply Agreement with T-Mobile, Plintron USA was uniquely situated to offer mobile handsets to existing and potential



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

MVNO customers. Plintron USA could offer handsets and connectivity solutions to its MVNO customers with greater flexibility, speed, and cost-efficiency than were otherwise available to entities that only provided handsets.

141. Plintron USA also had a significant opportunity to capitalize on the emerging IoT market by offering wireless connectivity services and complementary products to IoT providers. At the time—and to this day—the IoT market was rapidly expanding with billions of connected devices projected to be connected. Because IoT devices required low-bandwidth, low-cost, and high-reliability wireless connectivity, they posed an ideal opportunity for Plintron USA, which could negotiate and offer favorable wholesale rates with MNOs. Plintron USA could then negotiate and offer those favorable rates to MVNOs offering IoT devices to their customers, based on volume and the ability to tailor connectivity solutions and packages, including low-data subscriber identity modules (SIMs), global roaming, and private access point names (APNs), while also providing value-added services such as device management, analytics, and security.

142. Plintron USA was uniquely able to couple its interconnectivity services with the provisioning of handsets and IoT devices themselves. The synergies were self-evident. With access to core network capabilities, such as SIM provisioning, authentication, and data routing, Plintron USA could readily provide deep integration with any handsets and IoT devices offered so as to allow for optimized connectivity, lower latency, and better control over device behavior. Plintron USA could manage SIMs directly, including remote provisioning, activation, deactivation, and diagnostics. Plintron USA could bundle handsets and IoT devices with connectivity services, streamlining procurement and deployment for enterprise customers. Plintron USA's direct MNO relationship reduced dependence on third-party intermediaries and enabled quicker onboarding and support. Plintron USA could offer platforms to enterprise providers for device management, usage analytics and performance insights, thus allowing the enterprise providers with real-time insights into device behavior



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

and network performance. Based on its existing tie to an MNO, Plintron was better equipped to handle and resolve any regulatory requirements, including lawful interception, data sovereignty, and emergency services compliance that are required in many highly-regulated industries, such as automotive, energy, and healthcare.

143. Indeed, Plintron USA's 2014 Wholesale Supply Agreement with T-Mobile expressly recognized that Plintron's MVNA business included the sale and distribution of handsets and devices, including specifically through the application and terms of Sections 1.10 and 1.16. Under the Agreement, Plintron USA was required to ensure that Devices bundled with its SIMs were PTCRB-certified and approved, after which Plintron USA could launch and distribute those Devices. The Agreement also promised technical support to Plintron USA for approved Devices and reinforced Plintron's role in handset provisioning by assigning it responsibility for device-level configuration and by authorizing Plintron USA to purchase and sell approved Mobile Broadband Devices (such as data dongles and hotspots). Handset/device distribution and support were not ancillary to Plintron USA's MVNA role, but an integral, contractually authorized component of its business line.

144. Based on the IoT market opportunity, in late 2016, Plintron USA began offering wireless services to IoT providers. As one of the few MVNAs that contracted with T-Mobile and in the absence of other companies that offered similar services with as much experience, technological acumen, and resources as Plintron USA, Plintron USA was uniquely positioned to expand into the IoT category for MVNA services and devices. Indeed, Plintron USA, based on its years of experience acting as an MVNA and its existing affiliated relationship with a broader group of affiliated companies and global presence, stood alone in the marketplace as a company that could successfully exploit this market opportunity.

145. Expansion into the IoT space was a key initiative on the part of Plintron USA and it tasked Mr. Phillips to both manage and expand the IoT business. Plintron USA, led by Mr. Phillips, negotiated with its MNO provider, T-Mobile, to amend its existing agreement to



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

allow it to offer wireless services to IoT providers. By June 2017, Plintron USA had amended its Wholesale Supply Agreement with T-Mobile to allow it to purchase and resell IoT services to end users as part of a bundled IoT offering. As Plintron USA's CEO, Mr. Phillips executed the agreement on Plintron USA's behalf. Plintron USA projected that it could successfully onboard hundreds of thousands of IoT devices and generate initial revenues of several million dollars a year and that, even with modest growth, it could generate tens of millions of dollars in revenues within a few years.

146. As part of Plintron USA's IoT initiative, Plintron USA actively sought out MVNOs and other service providers that allowed it to rapidly expand in the IoT space. Consistent with that effort, in the third quarter of 2017, Mr. Phillips proposed that Plintron USA enter into an IoT agreement with a company called KonnectOne. Plintron was unfamiliar with KonnectOne, but Mr. Phillips represented to Plintron USA that KonnectOne was a "new Incubator Company" that could serve as means to reach out to prospective customers that would obtain wireless services from Plintron USA for their IoT devices. Despite presenting KonnectOne as a "partner" to Plintron USA, Phillips never revealed that he had formed KonnectOne just a year earlier, that he was its sole member, and that he had changed its name from "P Americas" to KonnectOne in order to conceal his ownership and association when presenting the opportunity to Plintron USA.

147. Based on Mr. Phillips' advocacy and recommendation, Plintron USA entered into an MVNO Agreement with KonnectOne on August 29, 2017 under which Plintron USA agreed to provide access to T-Mobile wireless services to KonnectOne. As Plintron USA's CEO, Mr. Phillips executed the MVNO Agreement on Plintron USA's behalf while he simultaneously was KonnectOne's sole member. Two days later, on August 31, 2017, Plintron USA and KonnectOne amended the MVNO Agreement to allow KonnectOne to "purchase and re-sell IOT Services directly to End Users as part of a Bundle IoT offering." Once again, as Plintron USA's CEO, Mr. Phillips executed the amendment to the MVNO Agreement on



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

Plintron USA's behalf while he simultaneously was KonnectOne's sole member. At no time did Mr. Phillips or anyone else on KonnectOne's behalf ever disclose to Plintron USA that Mr. Phillips owned KonnectOne and was in a position to obtain a potential advantage based on KonnectOne's entry of the agreement and its amendment with Plintron USA, despite the obviousness of the potential conflict of interest that existed in being on "both sides of the transaction." Indeed, KonnectOne offered the same services Plintron USA was already capable of offering directly to consumers.

**B. KonnectOne Obtains Substantial Economic Advantages from Plintron's Handset and IoT Opportunities While Mr. Phillips Simultaneously Thwarts Plintron USA.**

148. For the next six months, Plintron USA provided services to KonnectOne under its existing agreement. Unbeknownst to Plintron USA at the time, KonnectOne leveraged its relationship with Plintron USA and the connectivity services it was receiving to rapidly expand its own sale of handsets and IoT wireless services to both its own and existing Plintron USA customers and otherwise use its access to wireless services via Plintron USA as a segue for further developing its own handset and IoT business. KonnectOne achieved these gains based on its relationship with Plintron USA, through Plintron USA's contacts and contracts with other MVNOs, and by using Plintron USA's corporate resources, such as its leased space, employees, business relationships, and technology.

149. Evidence developed to date indicates that KonnectOne exploited Plintron USA's opportunities in a variety of ways. Among others, it began distributing handsets and devices directly to Plintron USA's existing MVNO customers by leveraging existing government subsidy programs such as the "Affordable Connectivity Program" (ACP), which was designed to help low-income households afford internet access and IoT connected devices, and the Federal Communications Commission's "Lifeline Program," which is a federal initiative aimed at making telephone and internet services available to low-income households. KonnectOne would not have information about Plintron USA's customers, their connectivity



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

provider, terms of service, business needs, and other critical information that it used to solicit and contract with these MVNO customers but for the fact that Mr. Phillips knew that information in his position as Plintron USA's CEO. KonnectOne generated tens of millions of dollars in revenues that rightfully should have been earned by Plintron USA.

150. In June 2018, Mr. Phillips provided a business update to Plintron's owners and other Board Members about Plintron USA's efforts to expand into the IoT market. Despite the continued opportunity that the IoT market presented and Plintron USA's ability to capitalize on that opportunity, Mr. Phillips reported the exact opposite. He announced that despite his efforts, IOT had turned out to be a "bust," that there was no connectivity business to be had, that the technical team had not delivered necessary functionality, and that the potential benefit of pursuing IoT would not justify the cost. All of these statements were false. However, Mr. Phillips announced that, based on all this, he intended to terminate the Plintron USA business development staff person dedicated to the IoT business at the year's end, forever ending Plintron USA's efforts to expand into the IoT business.

151. In juxtaposition to Plintron USA's inability to proceed in the IoT business, Mr. Phillips instead represented that one of the only "current plays for connectivity" was KonnectOne and suggested that Plintron should simply maintain its existing relationship with KonnectOne rather than attempting to develop its own IoT business. Again, Mr. Phillips failed to notify Plintron USA's non-conflicted directors and owners that he was the sole member of KonnectOne and was actively directing KonnectOne to pursue the very same IoT opportunity that was originally available to Plintron USA.

152. Mr. Phillips knew that his representations to Plintron, in addition to his own efforts to sabotage Plintron's business, would cause Plintron to halt its efforts to pursue the IoT business opportunity. He specifically intended for his representations—that IoT was a "bust" and that instead the only "play" was to continue to work with KonnectOne—to advance his own personal gains via KonnectOne and to ensure that Plintron USA could not, and would



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

not, compete against his solely-owned company. Mr. Phillips' false and misleading representations to Plintron were made in an effort to discourage Plintron's expansion or pursuit of the IoT business and so that KonnectOne would continue to have the ability to exploit Plintron's corporate resources to develop KonnectOne's own business.

### C. KonnectOne Was Aware that Mr. Phillips Actively Misled Plintron USA About His Relationship to KonnectOne.

153. To dispel any of Plintron USA's suspicions about his interest in KonnectOne or his motivations as it relates to the IoT business, Mr. Phillips, as KonnectOne's representative, sought to mislead Plintron USA. A few days after reporting that KonnectOne was one of the only "current play[s] for connectivity" in the IoT space, he suddenly announced to Plintron USA Board Member and co-owner, Mohan Sundaram, that he had recently been "appointed to the KonnectONE Board." He explained that KonnectOne's hardware sales largely originated from its connection to T-Mobile and that, in exchange, T-Mobile was providing favorable connectivity plans or subsidizing the hardware purchases. Mr. Phillips sought to discourage Plintron from doing the same, explaining that "unless we are subsidizing or financing hardware with our connectivity plans[,] any sort of direct connectivity play will be almost impossible."

154. In explaining KonnectOne's business and discouraging Plintron, Mr. Phillips never revealed that he had started KonnectOne and had, in fact, exploited the existing relationship between Plintron USA and T-Mobile to obtain both the connectivity plan and subsidized hardware purchases that now were allowing KonnectOne to be so successful.

155. While hiding their involvement in, and/or ownership of, KonnectOne from Plintron's owners and directors, Defendants were also representing and holding out to the public that KonnectOne and another of Mr. Phillips' entities, Moxee Technologies, were part of Plintron USA. For example, Phillips executed a Second Amendment to Lease for Plintron's office space in Bellevue on behalf of "Plintron Technologies USA LLC, a Delaware Limited



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

Liability Company, doing business as KonnectOne and Moxee Technologies." Defendants then altered and forged the authentic version of the Second Amendment to Lease to remove the reference to KonnectOne and Moxee Technologies. Had Plintron's owners and non-conflicted directors known that Defendants, including but not limited to Mr. Phillips and Mr. Pelly, had forged these documents, they would have terminated them for cause. These are not the only documents that Plintron has now discovered were forged and altered by Defendants while they were employees, officers, and agents of Plintron. Had Plintron known that these Defendants, including but not limited to Mr. Phillips, Mr. Pelly, and Mr. Mathew, were forging and altering formal Plintron contracts and documents, each of these individuals would have been terminated for cause.

156. Later, Plintron began questioning Phillips about his relationship with KonnectOne and inquired whether that relationship may be a related-party transaction based on Mr. Phillips' claim that he sat on KonnectOne's Board of Directors. Mr. Phillips, again as KonnectOne's agent and representative, sought to mislead Plintron that his relationship went well beyond anything he previously disclosed. To the contrary, he claimed he was an investor in KonnectOne and the chairman of its board but held no shares. When questioned about his statement, he further misled Plintron by claiming that he was only one of the members of a multifaceted investment LLC which is also a Member in KonnectOne, which he said had many other members. He also represented that he had only been involved with KonnectOne since 2018, and that KonnectOne was formed by former Microsoft and ZTE executives. All of these statements were false. Mr. Phillips was, and has been, KonnectOne's only member and shareholder since its formation in 2016. Mr. Phillips also represented that there was no business overlap between KonnectOne and Plintron. This too was a false statement.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

**D. KonnectOne Exploits Mr. Phillips and Other Plintron USA Officers and Employees for its own Economic Benefit.**

157. In fact, Mr. Phillips operated KonnectOne for years, from 2016 to 2023, all the while acting as Plintron USA's CEO and Director. Throughout, KonnectOne used Plintron USA's own employees to work for KonnectOne on an "almost full-time basis." By 2018, if not earlier, nearly every Plintron employee had assumed a formal or informal position working for or on behalf of KonnectOne, notwithstanding that many of those same persons were simultaneously serving as Plintron USA officers and were subject to their own restrictions and limitations prohibiting them from acting in competition to Plintron USA.

158. Plintron USA's Chief Operating Officer, Richard Pelly, had contracted with Plintron USA, agreeing not to engage in any activities competitive to Plintron USA while he was employed by Plintron USA. Yet he assumed the position of KonnectOne's Chief Regulatory Officer at KonnectOne while still employed by Plintron USA. Plintron USA's Director of Technology, Thomas Mathew, also had contracted with Plintron USA, agreeing to not to engage in any activities competitive to Plintron USA while he was employed by Plintron USA. He assumed the role of KonnectOne's Senior Director of Product Realization while still employed by Plintron USA. Plintron USA's IT Director, Greg McKervey, became KonnectOne's Senior Director of IT while still employed by Plintron USA. Plintron USA's account director, Timm Tobin, became KonnectOne's Director of Planning at KonnectOne while still employed by Plintron USA. Plintron USA's account director, Ilsang Yoon, became KonnectOne's Manager of Product Realization while still employed by Plintron USA. Other employees who worked for KonnectOne while employed by Plintron USA included Desiree Michelle Taylor and Ashley Rayford. Throughout this time period—from KonnectOne's original formation in 2016 to Mr. Phillips' termination in November 2023—KonnectOne operated out of Plintron USA's offices and from at least approximately 2018 forward used



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

Plintron's Microsoft 365 Exchange Tenant (MS Tenant) as the host for all of its electronically-stored information.

159. KonnectOne had complete knowledge about these conflicts of interest, breaches of fiduciary duties, and breaches of contract, based on Phillips' status as KonnectOne's sole member, owner, and CEO. Mr. Phillips' knowledge is imputed to KonnectOne based on his position as its sole member, manager, and agent. KonnectOne, by virtue of Mr. Phillips, knowingly exploited another company's resources for its own financial gain, despite being aware that many of the individuals performing services on its behalf were bound by existing employment restrictions that precluded them from performing such services.

160. At no time did Mr. Phillips ever disclose to Plintron USA's non-conflicted board members, or Plintron USA's owners, that he owned KonnectOne and established KonnectOne as a company to exploit the original opportunity pursued by Plintron USA. Mr. Phillips never disclosed to Plintron USA's non-conflicted board members, or Plintron USA's owners, the personal gains he received based on that ownership, KonnectOne's diversion of personnel and resources, or its usage of Plintron USA's customer relationships and confidential information.

161. Plintron only discovered Mr. Phillips' ownership of KonnectOne after it terminated him in November 2023. Plintron USA now understands that, within just a couple of years of its formation, KonnectOne began generating substantial revenues and that Mr. Phillips personally benefitted financially based on those operations. Had Mr. Phillips and the other former Plintron USA officers and employees fulfilled their fiduciary and contractual obligations to Plintron USA, it would instead have developed the same business opportunity and obtained the economic benefits that flowed from that line of business.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

### E. Mr. Phillips and Other Plintron USA Officers Use MVNO Connect to Compete Against Plintron USA While They Were Still Acting as Plintron USA Officers.

162. In or around January 2023, MVNO Connect's business fundamentally changed when Defendants began using MVNO Connect as a vehicle to compete directly with Plintron USA as an MVNA. Defendants planned to have Mr. Pelly and Mr. Mathew, with the assistance of the other Defendants, initially operate MVNO Connect by soliciting and onboarding Plintron USA's existing customers, while they were still employed by Plintron USA. They would then resign and become the public face of MVNO Connect. Once Plintron USA's customers were onboarded and Plintron USA's demise appeared to be a certainty, Mr. Phillips would join them at MVNO Connect. It was MVNO Connect's specific intent to replace Plintron USA and assume its business, using Plintron USA's resources.

163. Defendants anticipated that their plan would likely result in Plintron USA taking legal action against Mr. Pelly and Mr. Mathew. In response, Defendants planned to have Mr. Phillips remain at Plintron USA, feign cooperation with Plintron USA's owners and directors to "work through" the issues associated with MVNO Connect competing against Plintron USA, to ultimately advise Plintron USA about the futility about pursuing legal claims, and then, when Plintron USA had wound-down, to have Mr. Phillips resign and move to MVNO Connect.

164. As the first stage of their plan, MVNO Connect initially sought approval to act as a wholesaler distributor of wireless services, just like Plintron USA. By no later than March 2023, MVNO Connect had gained approval and begun operating as an MVNA.

165. Defendants' intention not only was for MVNO Connect to compete with Plintron USA but to *take its customers* and eliminate its ability to operate at all. MVNO Connect outlined its scheme to others. In one PowerPoint presentation, MVNO Connect described how its target customers were the high value existing Plintron USA customers that it could then immediately onboard on to MVNO Connect's platform. In another PowerPoint



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

presentation prepared at approximately the same, MVNO Connect identified two of Plintron USA's existing customers as being MVNO Connect's customers.

### F. MVNO Connect, Through Mr. Phillips and Other Plintron USA Officers, Use Plintron USA's Confidential Information to Take Plintron's Customers.

166. Using its knowledge of Plintron USA's customers by virtue of Messrs. Phillips, Pelly, and Mathews' positions at Plintron USA, MVNO Connect worked to onboard Plintron USA's existing customers. MVNO Connect gained access to Plintron's customer information solely because its principal agents and representatives were simultaneously serving as Plintron USA's officers. MVNO Connect's representatives, who also simultaneously were Plintron employees, then systematically targeted each Plintron USA customer, convincing them to switch to MVNO Connect based on their representations that Plintron USA no longer would exist.

167. Throughout 2023, Defendants engaged in countless activities on MVNO Connect's behalf that conflicted with their existing duties to Plintron USA as its officers and/or director. As Plintron USA's officers, employees, and representatives, Defendants were privy to Plintron USA's confidential and proprietary business arrangements, including being aware of the contract between Plintron USA and T-Mobile and each of its material terms. They deliberately and improperly used that information for MVNO Connect's benefit, thus allowing MVNO Connect to, in turn, offer equal or better terms to MVNOs, including Plintron's MVNO customers.

168. By virtue of the Individual Defendants' work on behalf of MVNO Connect, MVNO Connect was fully aware of their contractual, fiduciary, and common law conflicts, as well as their and misuse of confidential information but failed to take any steps to ensure that it did not use those conflicts and divided loyalties to its advantage. To the contrary, MVNO Connect did exactly the opposite by exploiting that confidential information to repeatedly



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

induce Plintron USA's existing customers, and those that would otherwise have been potential customers of Plintron USA, to contract with MVNO Connect.

169. MVNO Connect's misuse of Plintron USA's confidential information extended beyond its knowledge of Plintron's contract with T-Mobile but also involved the use of confidential information regarding Plintron USA's contracts with its customers. For instance, in addition to their removal of exclusivity provisions from Plintron USA's contracts with its MVNO customers, the Individual Defendants also used Plintron USA's confidential information in soliciting Plintron USA's customers for MVNO Connect. In targeting two of Plintron's largest customers, Defendants developed rates to propose to them by comparing and contrasting the rates in the companies' *existing agreements with* Plintron USA to rates that MVNO Connect could provide. It allowed MVNO Connect to develop a proposal to undercut Plintron's pricing and offered as a savings to successfully onboard the customers. Mr. Phillips also began soliciting Plintron USA's employees, customers and potential customers to abandon Plintron USA at the end of his employment to continue their work with him.

170. MVNO Connect boasted about its success in taking Plintron USA's customers and destroying Plintron's business, all the while disparaging Plintron.

171. As a result of defendants' actions on MVNO Connect's behalf, Plintron USA was substantially impacted by losing a significant share of its ongoing MVNA business at a cost of tens of millions of dollars.

## X. Defendants Unlawfully Retain, Destroy, and Conceal Plintron's Proprietary Electronic Data.

172. Prior to October 2023, Defendants contracted with one or more third parties to obtain possession of Plintron USA's proprietary electronic data, including at least specifically Plintron USA's email data, without Plintron's authorization and in direct defiance of Plintron USA's express instruction.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

173. Defendants did not disclose that they had taken control of Plintron USA's email and other electronic data to any of Plintron USA's non-conflicted board members, or Plintron USA's owners.

174. In or around late 2023, Defendants intentionally caused Plintron USA to lose access to, and control over, its email and other electronic data, including by taking, unlawfully retaining, and/or destroying the same. Defendants deleted electronic data from Plintron USA's devices, computer systems, databases, email servers, cloud-based email accounts, website software platforms, and/or other cloud computing-hosted data and services accessed via the internet. Defendants accessed, transferred, and deleted these materials despite Plintron USA's repeated instructions to preserve and return to Plintron USA all of Plintron USA's data and computer systems. Defendants did this for the purpose of crippling Plintron USA's business, to facilitate Defendants' competing businesses, and to prevent Plintron USA from being able to operate.

175. Since at least the fall of 2023, Defendants have maintained possession and/or control over what remains of Plintron USA's electronic data, including at least Plintron USA's emails, and have refused to return the same to Plintron USA, thereby depriving Plintron USA of possession over, and access to, its proprietary data and computer systems.

## CAUSES OF ACTION

### COUNT I – MISAPPROPRIATION OF TRADE SECRETS
### (18 U.S.C. § 1836, *et seq*.)
### Against All Defendants

176. Plintron USA re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

177. Plintron USA operates its business and sells its products in interstate and foreign commerce, transacting and doing business with customers, vendors and others throughout the United States and internationally.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

178. Plintron USA conceives, designs, develops, and owns various trade secrets, as that term is defined under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b), as amended (the "DTSA").

179. Among other information, Plintron USA's trade secrets include financial and business information such as business and operating plans, customer usage reports, customer performance reports and metrics, finance reports, technology cost reports, product development reports, information regarding customers, customer pricing and profit margins, forecasts, and competitive intelligence information.

180. Plintron USA's trade secrets are related to services and products used in, or intended for use in, interstate or foreign commerce.

181. Plintron USA obtains independent economic value from its trade secrets through devoting substantial resources, time, and investment to creating, developing, and using such information since Plintron USA's formation, as well as from the information offering an economic advantage over competitors for many years. The actual and potential economic value of its trade secrets derive from them not being generally known and readily ascertainable through proper means by another person or entity who could obtain economic value from the disclosure or use of the information. Plintron USA's trade secret information is not readily known or ascertainable to non-Plintron USA employees.

182. Plintron USA has taken reasonable steps and precautions to safeguard its trade secrets and to limit and restrict others outside of Plintron USA from knowing, readily ascertaining or using its trade secrets, including by requiring the confidential treatment of Plintron USA's information, limiting access to sensitive information by electronic passwords and other means, requiring strict protection for Plintron USA's email and computer systems, and creating and enforcing policies prohibiting employee use and disclosure of such information.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

183. Individual Defendants had extensive knowledge of Plaintiffs' trade secrets while working at Plintron USA. By virtue of their employment, as well as otherwise, Defendants owed a duty to Plintron USA to maintain this information as a trade secret. Individual Defendants' knowledge of Plintron USA's trade secrets was imputed to KonnectOne and MVNO Connect by virtue of their status as owners, officers, employees, agents, or representatives of those companies.

184. Defendants willfully and maliciously misappropriated, and by their actions are threatening to misappropriate, Plintron USA's trade secrets by improper means and without the consent or permission of Plintron USA. This misappropriation includes the acquisition, use, and disclosure, and the threatened acquisition, use, and disclosure of Plintron USA's trade secrets during and after Defendants' employment by Plintron USA. These improper means include but are not limited to misrepresentation and breach or inducement of a duty to maintain the secrecy of the trade secret information. Individual Defendants misused this trade secret information on behalf of KonnectOne and MVNO Connect as its employees and agents, acting within the scope of their employment or agency. Plintron USA's trade secrets qualified as trade secrets at the time they were misappropriated by Defendants.

185. Defendants have willfully and maliciously engaged in various acts of misappropriation regarding Plintron USA's trade secrets, including but not limited to the improper acquisition, disclosure, and use of Plintron USA's trade secrets related to various existing and potential customers. Defendants improperly acquired Plintron USA's trade secrets while knowing or having reason to know that this acquisition was improper and/or in violation of his duty to maintain the confidentiality and/or secrecy of the trade secrets.

186. Defendants' actual and threatened misappropriation of those trade secrets is causing Plintron USA to suffer irreparable harm, including but not limited to the actual and potential loss of customers, loss of reputation and customer goodwill, and loss of their



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

investment in their trade secrets. This harm cannot be adequately remedied at law and requires preliminary and permanent injunctive relief.

187. As a result of Defendants' improper misappropriation, disclosure and use of Plintron USA's trade secrets, Defendants have substantially harmed Plintron USA.

188. As a direct and proximate result of Defendants' violations of the DTSA, Plintron USA is entitled to full compensatory and consequential damages, as well as full attorneys' fees, costs and expenses.

189. Because Defendants' DTSA violations have been willful and malicious, Plintron USA is entitled to exemplary damages of twice the amount of damages for any actual loss and any unjust enrichment.

190. Defendants' DTSA violations have caused and will continue to cause Plintron USA irreparable harm that is not adequately remedied at law and that requires preliminary and permanent injunctive relief.

**COUNT II – MISAPPROPRIATION OF TRADE SECRETS**

**(Wash. Rev. Code § 19.108 *et seq*.)**
**Against All Defendants**

191. Plintron USA re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

192. Plintron USA conceives, designs, develops, and owns trade secrets, as that term is defined under the Washington Uniform Trade Secrets Act ("WUTSA"), Wash. Rev. Code § 19.108 et seq. (2023).

193. Among other information, Plintron USA's trade secrets include financial and business information such as business and operating plans, customer usage reports, customer performance reports and metrics, finance reports, technology cost reports, product development reports, information regarding customers, customer pricing and profit margins, forecasts, and competitive intelligence information.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

194. Plintron USA's trade secrets are related to services and products used in, or intended to for use in, interstate or foreign commerce.

195. Plintron USA obtains independent economic value from its trade secrets through devoting substantial resources, time, and investment to creating, developing, and using such information since Plintron USA's formation, as well as from the information offering an economic advantage over competitors for many years. The actual and potential economic value of its trade secrets derive from them not being generally known and readily ascertainable through proper means by another person or entity who could obtain economic value from the disclosure or use of the information. Plintron USA's trade secret information is not readily known or ascertainable to non-Plintron USA employees.

196. Plintron USA has taken reasonable steps and precautions to safeguard its trade secrets and to limit and restrict others outside of Plintron USA from knowing, readily ascertaining or using its trade secrets, including by requiring the confidential treatment of Plintron USA's information, limiting access to sensitive information by electronic passwords and other means, requiring strict protection for Plintron USA's email and computer systems, and creating and enforcing policies prohibiting employee use and disclosure of such information.

197. Individual Defendants had extensive knowledge of Plaintiffs' trade secrets while working at Plintron USA. By virtue of their employment, as well as otherwise, Defendants owed a duty to Plintron USA to maintain this information as a trade secret. Individual Defendants' knowledge of Plintron USA's trade secrets was imputed to KonnectOne and MVNO Connect by virtue of their status as owners, officers, employees, agents, and representatives of those companies.

198. Defendants willfully and maliciously misappropriated, and by their actions are threatening to misappropriate, Plintron USA's trade secrets by improper means and without the consent or permission of Plintron USA. This misappropriation includes the acquisition,



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

use, and disclosure, and the threatened acquisition, use, and disclosure of Plintron USA's trade secrets during and after Defendants' employment by Plintron USA. These improper means include but are not limited to misrepresentation and breach or inducement of a duty to maintain the secrecy of the trade secret information. Individual Defendants misused this trade secret information on behalf of KonnectOne and MVNO Connect as its employees and agents, acting within the scope of their employment or agency. Plintron USA's trade secrets qualified as trade secrets at the time they were misappropriated by Defendants.

199. Defendants have willfully and maliciously engaged in various acts of misappropriation regarding Plintron USA's trade secrets, including but not limited to the improper acquisition, disclosure, and use of Plintron USA's trade secrets related to various existing and potential customers. Defendants improperly acquired Plintron USA's trade secrets while knowing or having reason to know that this acquisition was improper and/or in violation of his duty to maintain the confidentiality and/or secrecy of the trade secrets.

200. Defendants' actual and threatened misappropriation of those trade secrets is causing Plintron USA to suffer irreparable harm, including but not limited to the actual and potential loss of customers, loss of reputation and customer goodwill, and loss of their investment in their trade secrets. This harm cannot be adequately remedied at law and requires preliminary and permanent injunctive relief.

201. As a result of Defendants' improper misappropriation, disclosure and use of Plintron USA's trade secrets, Defendants have substantially harmed Plintron USA.

202. As a direct and proximate result of Defendants' violations of the DTSA, Plintron USA is entitled to full compensatory and consequential damages, as well as full attorneys' fees, costs and expenses.

203. Because Defendants' WUTSA violations have been willful and malicious, Plintron USA is entitled to exemplary damages of twice the amount of damages for any actual loss and any unjust enrichment.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

204. Defendants' WUTSA violations have caused and will continue to cause Plintron USA irreparable harm that is not adequately remedied at law and that requires preliminary and permanent injunctive relief.

**COUNT III – BREACH OF CONTRACT**
**Against Defendants Joseph Phillips**

205. Plintron USA re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

206. Mr. Phillips entered into a valid, enforceable, and binding Employment Agreement dated May 30, 2014 prohibiting the improper acquisition, use, and disclosure of Plintron USA proprietary and confidential information and Plintron USA trade secrets. Mr. Phillips' Employment Agreement also required that Mr. Phillips devote his entire business time and attention to the performance of duties on behalf of Plintron USA during his employment. Moreover, Mr. Phillips agreed to non-solicitation and non-recruitment of Plintron Executives as part of his Employment Agreement.

207. Mr. Phillips has materially breached his 2014 Employment Agreement by refusing to return all Plintron USA property to Plintron USA upon the termination of Mr. Phillips' employment with Plintron USA.

208. Mr. Phillips further breached his contract by improperly using and disclosing Plintron USA proprietary and confidential information in furtherance of his own interests.

209. Mr. Phillips further breached his contract by improperly misappropriating, including using and disclosing, Plintron USA's trade secret information in furtherance of his own interests.

210. Mr. Phillips further breached his contract by soliciting Plintron USA's customers and potential customers to do business with MVNO Connect, both during his employment and after his termination on November 8, 2023.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

211. Mr. Phillips further breached his contract by recruiting Plintron USA executives Richard Pelly, Thomas Mathew, and Greg McKervey for the purposes of outside business at MVNO Connect and KonnectOne.

212. As a result of Mr. Phillips' breaches of his 2014 Employment Agreement, Plintron USA has been injured irreparably.

213. Plintron USA is entitled to full compensatory and consequential damages, as well as full injunctive relief, for Mr. Phillips breaches of his contract.

**COUNT IV – BREACH OF FIDUCIARY DUTIES**
**Against Defendants Joseph Phillips, Richard Pelly, Thomas Mathew, Greg McKervey, and Desiree Michelle Gray**

214. Plintron USA re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

215. As corporate officers of Plintron USA, Mr. Phillips, Mr. Pelly, Mr. Mathew, and Mr. McKervey had fiduciary duties to Plintron USA. These duties included duty of loyalty, duty of care, duty of disclosure, and duty of good faith. These Defendants were also required to refrain from interfering with Plintron USA's legitimate business interests, usurping for themselves corporate opportunities that they learned about in their capacities as officers and employees of Plintron USA, and competing with Plintron USA during their employment. As an employee of Plintron USA, Ms. Gray owed a duty of loyalty, duty of disclosure, and duty of good faith to Plintron USA.

216. Mr. Phillips, Mr. Pelly, Mr. Mathew, and Mr. McKervey breached their fiduciary duties to Plintron USA by, among other items, (a) pursuing opportunities with customer contracts for their own benefit and to the detriment of Plintron USA; (b) during their employment with Plintron USA, soliciting Plintron USA's customers and employees to discontinue their relationship with Plintron USA; (c) revealing Plintron USA proprietary and confidential information, and (d) engaging in fraudulent services with Stratabites LLC and other entities. Mr. Mathew and Ms. Gray breached their fiduciary duties by, among other items,



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

working for another company and not providing Plintron USA the full benefit of their time while working for Plintron USA, and by engaging in a scheme to engage in fraudulent services with Stratabites LLC.

217. As a result of Defendants' breaches of fiduciary duty, Plintron USA has been injured irreparably.

218. Defendants' violations of their fiduciary duties were the proximate cause of Plintron USA's injury.

219. Plintron USA is entitled to full compensatory, consequential, and punitive damages for its injury.

**COUNT V – UNFAIR COMPETITION**
**(Wash. Rev. Code § 19.86 et seq.)**
**Against All Defendants**

220. Plintron USA re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

221. Plintron USA has been injured in its business through unfair competition in violation of Washington's Consumer Protection Act, Wash. Rev. Code § 19.86 et seq. (2023).

222. Defendants engaged in unlawful and deceptive business practices by usurping for their own use corporate opportunities belonging to Plintron USA, including but not limited to secretly soliciting Plintron USA's employees, customers and potential customers to abandon Plintron USA, and join Mr. Phillips in his business ventures including MVNO Connect and KonnectOne. Defendants further engaged in unlawful and deceptive business practices by misrepresenting to others in the industry that Plintron USA's business is "failing" and that Plintron USA has been replaced by MVNO Connect, causing confusion in the telecommunications marketplace.

223. Defendants' unlawful and deceptive business practices occurred in trade and commerce as defined by Washington's Consumer Protection Act, Wash. Rev. Cod § 19.86.010. (2023).



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

224. Defendants' unlawful and deceptive business practices involved and engaged third parties to this lawsuit, affecting the public interest, including by improperly obtaining and using customers' information for their own benefit and making material misrepresentations to customers, other businesses, potential investors, and other members of the public. Defendants' culpable acts were not confined to their transactions with Plintron. Their conduct extended to multiple Plintron employees, Plintron's customers, and Plintron's contractual partners.

225. For example, MVNO Connect identified all of Plintron USA's existing customers, gained access to Plintron USA's customer information, then systematically targeted each Plintron USA customer, working to convince them to switch to MVNO Connect based on their false and misleading representations (*e.g.*, that Plintron USA was going out of business).

226. MVNO Connect also accepted millions in deposits from Stratabites, which charged Plintron USA and its customers for services that were either nonexistent or unnecessary by secretly embedding third-party service-fee provisions in Plintron USA's agreements with customers and then forging these agreements to avoid detection.

227. KonnectOne used its employees, agents, and representatives to access information about Plintron USA's customers, their connectivity provider, terms of service, business needs, and other critical information, which it then used to solicit and contract with Plintron USA's MVNO customers. By doing so, KonnectOne generated tens of millions that rightfully should have been derived by Plintron USA.

228. When Defendants' ruse was discovered, they hired third-party vendors to take and then destroy Plintron USA's data with the intent to cripple Plintron USA's business.

229. These are just a few examples of how Defendants' actions have impacted others outside of Plintron USA. Defendants' pattern of deception spanned the course of several years and continues to this day.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

230. Defendants' unlawful and deceptive business practices have caused injury in Plintron USA's business and property by leading to a diminution in value of Plintron USA's confidential and proprietary information and by injuring Plintron USA's relationship with their employees, customers, and potential customers.

231. Defendants' unlawful and deceptive business practices was the cause of Plintron USA's injuries.

232. Plintron USA has sustained, and will continue to sustain, substantial injury, loss, and damages in an amount to be proven at trial based on Mr. Phillips' unfair competition.

233. Plintron USA is entitled to treble damages and recovery of reasonable attorney's fees pursuant to Wash. Rev. Code § 19.86.090.

**COUNT VI – TORTIOUS INTERFERENCE WITH CONTRACT**
**Against Defendants KonnectOne, MVNO Connect, Joseph Phillips, Richard Pelly, and Thomas Mathew**

***Tortious Interference with Customer Contracts***

234. Plintron USA re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

235. Plintron USA was a party to valid and enforceable contracts with its existing customers to provide telecommunications services and has formed valuable relationships with its customers.

236. KonnectOne, MVNO Connect, Mr. Phillips, Mr. Pelly and Mr. Mathew were aware of Plintron USA's contracts and relationships with its customers. By virtue of Mr. Phillips' position at Plintron USA, as well as those of its other agents and representatives, KonnectOne and MVNO Connect also knew of Plintron USA's contractual relationships. Indeed, KonnectOne and MVNO Connect's knowledge was identical to that of Plintron USA's knowledge based on Mr. Phillips' role of simultaneously acting as Plintron's CEO and being the sole owner and member of KonnectOne and MVNO Connect. KonnectOne and MVNO Connect also had knowledge based on the roles and relationships that Mr. Pelly and Mr.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

Mathew had in acting as KonnectOne and MVNO Connect's agents and representatives while simultaneously serving as Plintron USA's officers and employees.

237. KonnectOne, MVNO Connect, Mr. Phillips, Mr. Pelly, and Mr. Mathew have intentionally and improperly interfered with Plintron USA's contractual relationships with its customers by amending these customer contracts to Plintron USA's detriment, and by securing customer contracts for MVNO Connect despite existing exclusivity clauses. KonnectOne, MVNO Connect, Mr. Phillips, Mr. Pelly, and Mr. Mathew have intentionally induced or caused various Plintron customers to breach their contracts with Plintron USA, and/or caused Plintron's performance of its services to be more expensive and burdensome.

238. KonnectOne, MVNO Connect, Mr. Phillips, Mr. Pelly, and Mr. Mathew's interferences with Plintron USA's contracts were for improper purposes and by improper means, by subterfuge, violation of their fiduciary duties, and violations of established standards of trade.

239. As a result of KonnectOne, MVNO Connect, Mr. Phillips, Mr. Pelly, and Mr. Mathew's tortious interference with Plintron USA's contracts, Plintron USA has been injured. Mr. Phillips, Mr. Pelly, and Mr. Mathew's conduct is a proximate cause of the harm to Plintron USA.

***Tortious Interference with Employee Contracts***

240. Plintron USA also had valid contractual relationships with each of its employees, including its CEO and Director, Mr. Phillips, its Chief Operating Officer, Mr. Pelly, and its Director of Technology, Mr. Mathew. Pursuant to those contracts, Plintron USA's employees had a duty to refrain from engaging in competing activities and a duty not to use Plintron USA's office space, personnel, IT systems, software, equipment, or customer/vendor connections to the benefit of another company.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

241. KonnectOne and MVNO Connect had knowledge of those contracts between Plintron and its employees by virtue of those employees' status as owners, members, employees, agents and/or representatives of KonnectOne and MVNO Connect.

242. KonnectOne and MVNO Connect intentionally interfered with the contracts between Plintron and its employees by acting with an intent to harm, in violation of existing laws and ethical standards, and by making misrepresentations about the involvement in, and role of, Individual Defendants and other employees with each of their companies. By way of KonnectOne and MVNO Connect's acts and omissions, they caused or induced a breach of those employment agreements, thereby proximately causing injury to Plintron USA.

243. As a result of KonnectOne and MVNO Connect's tortious interference with Plintron USA's contracts, Plintron USA has been injured. KonnectOne and MVNO Connect's conduct is a proximate cause of the harm to Plintron USA.

244. Plintron USA is entitled to full compensatory, consequential and punitive damages resulting from KonnectOne, MVNO Connect, Mr. Phillips, Mr. Pelly, and Mr. Mathew's tortious conduct.

## COUNT VII – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS OR EXPECTANCY

**Against Defendants KonnectOne, MVNO Connect, Joseph Phillips, Richard Pelly, and Thomas Mathew**

245. Plintron USA re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

246. Plintron USA has business relationships and the expectancy of business relationships with existing and future customers with a probability of future economic benefit for Plintron USA.

247. KonnectOne, MVNO Connect, Mr. Phillips, Mr. Pelly and Mr. Mathew were aware of Plintron USA's relationships with its customers and Plintron USA's expectancy of further business relationships. The knowledge of Mr. Phillips, Mr. Pelly and Mr. Mathew was



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

imputed to KonnectOne and MVNO Connect based on their respective status as KonnectOne and MVNO Connect's owners, managers, agents, representatives, and/or employees.

248. KonnectOne, MVNO Connect, Mr. Phillips, Mr. Pelly, and Mr. Mathew have intentionally and improperly interfered with Plintron USA's business relationships and expected relationships by amending these customer contracts and securing customer contracts and other business opportunities for themselves, by representing a "failure" of Plintron USA's business to others, causing confusion in the telecommunications marketplace. This interference intentionally caused the termination of some of Plintron USA's business relationships and business expectancies.

249. KonnectOne, MVNO Connect, Mr. Phillips, Mr. Pelly, and Mr. Mathew have interfered with Plintron USA's business relationships through improper means, namely subterfuge, violation of their fiduciary duties, and violations of established standards of trade.

250. As a result of KonnectOne, MVNO Connect, Mr. Phillips, Mr. Pelly, and Mr. Mathew's tortious interference with Plintron USA's business relationships, Plintron USA has been injured. Mr. Phillips, Mr. Pelly, and Mr. Mathew's conduct is a proximate cause of the harm to Plintron USA.

251. Plintron USA is entitled to full compensatory, consequential and punitive damages resulting from Mr. Phillips, Mr. Pelly, and Mr. Mathew's tortious conduct.

**COUNT VIII – FRAUD**
**Against All Defendants**

252. Plintron USA re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

253. Defendants made numerous representations regarding Stratabites LLC, MVNO Connect, and Paychex with respect to Plintron USA as set forth herein and in this Complaint. For example, Defendants represented to Plintron USA that services provided by Stratabites and MVNO Connect were necessary as set forth in those parties' contracts with Plintron USA,



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

and that the amount charged to Plintron USA was a correct amount for the services allegedly offered by Stratabites and MVNO Connect. Defendants represented, directly or by omission, to Plintron USA that various third party contracts did not contain Third-Party Fee clauses benefitting Stratabites. Defendants represented that Stratabites and MVNO Connect were distinct companies with no connection to any of the Defendants, and represented to Plintron USA that Stratabites was a legitimate company established for legitimate purposes. Defendants represented to Plintron USA that the fees paid by Plintron USA's customers were accurate and the only fees paid by those customers. Mr. Phillips represented to Plintron USA that Plintron USA's Paychex account was solely for the benefit of Plintron USA. Mr. Mathew and Ms. Gray also represented that the amount of time they worked for Plintron USA and provided services to Plintron USA was fair and accurate.

254. The representations made by Defendants were material, were false, and Defendants knew of the falsity of the representations and intended Plintron USA to act upon those representations.

255. Plintron USA was without knowledge of the falsity of Defendants' misrepresentations.

256. Plintron USA relied on the truth of the representations made by Defendants, and had a right to rely on those representations. For example, and without limitation, Plintron USA made payments to Stratabites and MVNO Connect believing the representations and services offered by Stratabites and MVNO Connect to be necessary, true, and accurate, and that Stratabites and MVNO Connect were independent and bona fide companies that were not related in any manner to any Plintron USA employees. Plintron USA relied on various third party contracts being accurate and representing the full value that those customers were paying for Plintron USA's services, and that no other services were needed from Plintron USA, and Plintron USA forfeited the ability to bill its clients for those services. Plintron USA relied on representations regarding the Paychex account to account for employee payroll, benefits, and



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

Plintron USA tax payments, and with the understanding that Plintron USA controlled the Paychex account. Plintron USA also paid Mr. Mathew and Ms. Gray salaries for their services as full-time employees, even though Mr. Mathew and Ms. Gray overstated the amount of payment they were entitled to by working simultaneously for KonnectOne.

257. Defendants knowingly misled Plintron USA into believing that Stratabites LLC was a bona fide company,

258. Defendants attempted to conceal from Plintron USA their fraudulent conduct with respect to Stratabites, MVNO Connect, and Paychex.

259. Additionally, KonnectOne and MVNO Connect each knowingly made materially false representations of then-existing purported fact to Plintron USA (as are alleged herein) with the intent that Plintron USA would act or refrain from acting based on such representations.

260. Defendants' intent is supported by Defendants' communications and other documents, in which Defendants admit to their motives; and by Defendants' efforts to conceal their misconduct and from Plintron USA, which included falsification of contracts. Such materially false representations include, but are not limited to, the following:

a) Prior to the execution of KonnectOne's contract with Plintron USA, Mr. Phillips, on KonnectOne's behalf and/or with KonnectOne's knowledge, represented to Plintron leadership that he was merely an "investor" in KonnectOne and held a "chairman role on the board" with "no shares," when in fact Mr. Phillips was KonnectOne's sole owner. Plintron USA would not have contracted with KonnectOne had it been aware of Mr. Phillips' (Plintron's CEO at the time) true relationship with, and interest in, KonnectOne.

b) In June 2018, Mr. Phillips told Plintron USA directors that "IoT has turned out to be a bust" and "at this point, there is not an ROI to justify



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

any IoT platform spending," identifying only "two current plays for connectivity: KonnectONE and China Telecom." Mr. Phillips did so on KonnectOne's behalf to cause the Plintron USA directors to forego IoT opportunities and to contract with KonnectOne, which he owned. This representation, on which the Plintron USA directors relied, was false. Had the Plintron USA directors known of this representations' falsity, they would never have authorized Plintron to contract with KonnectOne and would have pursued the very IoT opportunities which KonnectOne later profited from.

c) In May 2020, Defendants signed a Master Services Agreement with Plintron USA on behalf of the sham company Stratabites, using a fictitious individual's named "Anna Goh," whom Defendants falsely held out as Stratabites' "VP of Sales." Defendants did the same in August 2020 when Plintron USA signed a Statement of Work for Cost Optimization with Stratabites. Defendants also falsely represented to Plintron USA prior to executing the Master Services Agreement, that it was affiliated with StrataCore, a well-known technology consulting firm. This was not true. Defendants also told Plintron USA that it had employees when it did not, created fictitious email accounts and sent emails from them in order to deceive Plintron into thinking Stratabites was an independently owned and operated company unconnected to Defendants, and misrepresented its relationship with other Plintron USA service providers.

d) From 2020 to 2023, Defendants inserted fee provisions for services in Plintron USA's contracts with its customers that they knew Stratabites never intended to perform or that were already being performed by



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

Plintron USA. Defendants signed these contracts, purportedly on behalf of Plintron USA, but for the benefit of themselves and to the detriment of Plintron USA and Plintron USA's customers. Mr. Phillips, Mr. Pelly, and Mr. Mathew then forged many of these agreements to hide the presence of these fee provisions from Plintron USA's non-conflicted board members, owners, and financial services team. Plintron USA's owners, directors, and financial services team were therefore unaware of the existence of these fee provisions in the contracts with Plintron USA's customers.

e) From 2017 to 2023, Defendants altered and forged multiple amendments to Plintron's Wholesale Agreement with T-Mobile to remove or hide various provisions with the intent of concealing these provisions from Plintron's owners, non-conflicted directors, and financial services team. These alterations included references to Minimum Purchase Guarantees and other financial terms. These forged or altered amendments included the 5th Amendment, 6th Amendment, 7th Amendment, 16th Amendment, 17th Amendment, and 18th Amendment to Plintron's Wholesale Agreement with T-Mobile.

f) Defendants also forged and altered Plintron's lease agreements and amendments in an effort to hide Defendants' relationships with KonnectOne and KonnectOne's dependency on, and interconnectedness with, Plintron USA.

261. At all times material hereto, Plintron USA was unaware of the falsity of the representations of fact made by Defendants, and reasonably and justifiably relied on the purported truth of the same. Plintron USA had a right to rely on these representations, which



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

in many cases were made by its own employees and/or officers and, in others, were made in apparent good-faith business negotiations.

262. Defendants also each failed to disclose material facts to Plintron (as are alleged herein), which they had a duty to disclose, with the intent that Plintron would act or refrain from acting based upon such omissions. Defendants' intent is supported by Defendants' internal communications and other documents, in which Defendants admit to their motives; and by Defendants' efforts to conceal their misconduct from Plintron USA, which included falsification of contracts. Such omissions of material fact include, but are not limited to, the following:

a) Defendants never disclosed to Plintron USA's non-conflicted board members, or Plintron USA's owners, that Plintron USA's CEO held an ownership interest in, and was an officer of, KonnectOne and MVNO Connect.

b) Defendants never disclosed to Plintron USA's non-conflicted board members, or Plintron USA's owners, that Plintron USA's officers and employees were also performing work for MVNO Connect and/or KonnectOne.

c) Defendants never disclosed to Plintron USA's non-conflicted board members, or Plintron USA's owners, that they were utilizing Plintron's office space, personnel, IT systems, MS Tenant, software, equipment, and customer / vendor connections to operate their businesses.

d) Defendants never disclosed to Plintron USA's non-conflicted board members, or Plintron USA's owners, that they had access to or were utilizing Plintron USA's confidential information to compete with it in the market.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

e) Defendants never disclosed to Plintron USA's non-conflicted board members, or Plintron USA's owners, that Seema Mathew, Thomas Mathew's wife, was the owner of Stratabites and that, as such, Thomas Mathew, an employee of Plintron, had a material interest in Plintron USA's transactions with Stratabites.

f) Defendants never disclosed to Plintron USA's non-conflicted board members, or Plintron USA's owners, that they had inserted fee provisions for services that were already being performed by Plintron USA, into contracts between Plintron USA and its customers.

g) Defendants never disclosed to Plintron USA's non-conflicted board members, or Plintron USA's owners, that Individual Defendants were performing work for Stratabites.

263. At all times material hereto, Plintron USA was unaware of the material facts omitted and concealed by Defendants, and reasonably and justifiably relied on the same. Again, Plintron USA had a right to rely on the representations made by its own employees and/or officers, who had fiduciary and contractual obligations to disclose the above material omissions, and those made during apparent good-faith business negotiations, where Defendants also had a duty to disclose facts material to the transaction.

264. Plintron USA reasonably relied upon KonnectOne and MVNO Connect's materially false representations and omissions of material fact in manifesting its assent to contract with these entities. Had Plintron USA's non-conflicted board members, or Plintron USA's owners, been aware of these omissions of material fact or of the falsity of these representations of material fact Plintron USA would not have contracted with KonnectOne or MVNO Connect. As such, because Plintron USA's assent to contract with these entities was fraudulently induced, Plintron USA's contracts with these entities are rescinded as if they had never been executed.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

265. As a proximate result of KonnectOne and MVNO Connect's fraud, Plintron USA suffered damages in an amount to be proved at trial.

266. Based on KonnectOne and MVNO Connect's fraud, Plintron USA seeks an order imposing and enforcing a constructive trust on the membership interests in KonnectOne and MVNO Connect to the benefit of Plintron USA.

267. The acquisition of property by KonnectOne, MVNO Connect, and any of their representatives and/or beneficiaries was accomplished through fraud and concealment and therefore a constructive trust has automatically been impressed on all of their assets, including their membership interests. As such, KonnectOne, MVNO Connect, and any of their representatives and/or beneficiaries do not hold legal title to these assets and title is held for Plintron's benefit in the constructive trust.

268. Enforcement of the constructive trust is warranted due to the unconscionable and unfair circumstances under which these defendants owe their existence and were unjustly enriched. Defendants KonnectOne, MVNO Connect, and the holder of any assets acquired through their fraud and concealment, have a legal duty to recognize and effectuate the transfer of those assets (including these entities' membership interest) to Plintron, the rightful equitable owner. No other adequate remedy exists to compel the transfer and rectify the harm caused.

269. As a result of Defendants representations, Plintron USA has been damaged. Plintron USA is entitled to full compensatory, consequential and punitive damages resulting from Defendants' conduct.

**COUNT IX – DEFAMATION**
**Against Defendants Joseph Phillips, Richard Pelly and Thomas Mathew**

270. Plintron USA re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

271. Mr. Phillips, Mr. Pelly, and Mr. Mathew have made multiple false statements about Plintron USA "failing" or "going out of business" to Plintron USA's customers and others in the wireless telecommunications industry.

272. Such statements are false – Plintron USA is very much still conducting its operations in the United States.

273. Mr. Phillips, Mr. Pelly, and Mr. Mathew made these false statements intentionally, but at the least made these false statements negligently.

274. As a result of Mr. Phillips, Mr. Pelly, and Mr. Mathew's false statements, Plintron USA's business has been injured. Plintron USA is entitled to full compensatory, consequential and punitive damages resulting from Defendants defamation.

**COUNT X – CONVERSION**
**Against All Defendants**

275. Plintron USA re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

276. Plintron USA owns the various computers and related equipment used by Defendants Phillips, Pelly, and Mathews during their employment by Plintron USA. Plintron USA also owns all business files belonging to Plintron USA provided to or generated by the Defendants, as well as the confidential and proprietary information belonging to Plintron USA that is in the current possession of Defendants. Plintron USA is entitled to the immediate possession of such devices and confidential business information.

277. Plintron USA owns the emails associated with its business operations, as well as access to the Plintron USA Microsoft 365 used by Plintron USA in its business operations. Plintron USA owns the Paychex vendor account associated with Plintron USA's business operations. Further, Plintron USA owns the domain name plintronamericas.com.

278. Defendants interfered with Plintron USA's right of property in, or use or possession of, its computing devices, confidential and proprietary information, emails,



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

Microsoft 365 account, Paychex account, and plintronamericas.com domain name, by retaining such property in their possession therewith without lawful justification.

279. Due to Defendants' interference with Plintron USA's property in its computing devices, confidential and proprietary information, emails, Microsoft 365 account, Paychex account, and plintronamericas.com domain, Plintron USA has been deprived of possession of its property as its rightful owner.

280. Defendants wrongfully converted Plintron USA's computing devices, confidential and proprietary information, emails, Microsoft 365 account, Paychex account, and plintronamericas.com domain name.

281. Plintron USA has suffered, and will continue to suffer, harm as a direct and proximate result of Defendants' unlawful actions.

**COUNT XI – UNJUST ENRICHMENT**
**Against KonnectOne and MVNO Connect**

282. Plintron USA re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

283. By virtue of Mr. Phillips' and other Plintron USA employees and officers' breaches of their fiduciary and contractual duties, Plintron USA conferred benefits on KonnectOne and MVNO Connect, including services, property, opportunities, money, and other forms of advantage. Plintron USA's conferral of these benefits was not incidental or accidental, but on account of the intentional acts on the part of Mr. Phillips and other former Plintron USA officers and employees.

284. KonnectOne and MVNO Connect were fully aware of the benefits they were receiving secondary to Mr. Phillips' sole ownership of KonnectOne, MVNO Connect, and all other entities he formed while CEO of Plintron USA; Individual Defendants' interest and



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

involvement in Stratabites; and these defendants' status as corporate representatives of these companies. KonnectOne and MVNO Connect knowingly and purposefully received those benefits.

285. Because of the circumstances under which KonnectOne and MVNO Connect acquired these benefits – through their misconduct and at Plintron USA's expense – it would be entirely inequitable for KonnectOne and MVNO Connect to retain and continue to enjoy these benefits without compensating Plintron USA for the full value of the same.

286. Plintron USA is entitled to compensation for the full value of the benefits it conferred on KonnectOne and MVNO Connect in an amount to be proven at trial, or, in the alternative, in the form of imposition of a constructive trust, disgorgement, recovery in quantum meruit, or the establishment of an equitable lien.

287. Based on KonnectOne and MVNO Connect's unjust enrichment, Plintron USA seeks an order imposing and enforcing a constructive trust on the membership interests in KonnectOne and MVNO Connect to the benefit of Plintron USA.

288. The acquisition of property by KonnectOne and MVNO Connect, and any of their owners, employees, officers, representatives and/or beneficiaries, was accomplished through breach of fiduciary duty, fraud, and concealment and therefore a constructive trust has automatically been impressed on all of their assets, including their membership interests. As such, KonnectOne, MVNO Connect, and any of their representatives and/or beneficiaries do not hold legal title to these assets and title is held for Plintron's benefit in a constructive trust. Enforcement of the constructive trust is warranted due to the unconscionable and unfair circumstances under which these defendants owe their existence and were unjustly enriched.

289. KonnectOne and MVNO Connect, and the holder of any assets acquired through the unjust enrichment of KonnectOne and MVNO Connect, have a legal duty to recognize and effectuate the transfer of those assets (including these entities' membership interest) to Plintron USA, the rightful equitable owner. No other adequate remedy exists to



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

compel the transfer and rectify the harm caused.

**COUNT XII – CIVIL CONSPIRACY**
**Against All Defendants**

290. Plintron USA re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

291. KonnectOne and MVNO Connect, on their own behalf and in concert with each other and the Individual Defendants, combined to commit the unlawful acts and purposes described above against Plintron USA, including:

a) Soliciting and usurping Plintron USA's customers and business opportunities under unfair and improper circumstances;

b) Entering into contracts with Plintron USA under false pretenses and false representations;

c) Taking, retaining, and using Plintron USA's data, personnel, office space, IT systems, software, equipment, customer/vendor connections, and trade secrets for their own benefit and profit, and in competition against Plintron;

d) Using Plintron USA's officers and employees simultaneously despite their knowledge of these individuals' contractual obligations not to compete against Plintron USA and otherwise using those offices and employees being paid by Plintron USA for KonnectOne and MVNO Connect's financial benefit and to the detriment of Plintron USA;

e) Misleading through concealment, material omissions, and false statements regarding Mr. Phillips' ownership of, or role in, KonnectOne, MVNO Connect, Moxee, and Stratabites, and the terms of Plintron USA's contracts and agreements; and/or



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

f) Diverting monies to Defendants through wrongful acts and omissions and to Plintron USA's financial detriment.

292. Defendants each agreed to accomplish the unlawful acts and/or purposes described above against Plintron USA.

293. As a direct and proximate result of the agreement and unlawful acts described above, Plintron USA suffered damages in an amount to be proven at trial.

**COUNT XIII – VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030, *et seq.*) Against KonnectOne and MVNO Connect**

294. Plintron USA re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

295. Chapter 18 U.S.C. § 1030(g) provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator…."

296. KonnectOne and MVNO Connect – acting at all times material hereto through their employees, agents, and representatives – intentionally accessed Plintron USA's computers, including its devices, computer systems, databases, email servers, cloud-based email accounts, website software platforms, and other cloud computing-hosted data and services accessed via the internet (collectively, "Computers and Computer Systems") without authorization and used such access to obtain and alter information in the Computers that Defendants were not entitled to obtain or alter, thereby obtaining information from Plintron USA's Computers.

297. Plintron USA's Computers and Computer Systems are protected under the meaning of 18 U.S.C. § 1030, *et seq.* because they are connected to the internet and thus used in and affect interstate and foreign commerce.

298. KonnectOne and MVNO Connect further knowingly and with intent to defraud Plintron USA, accessed Plintron USA's Computers and Computer Systems without



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

authorization and used such access to obtain and alter information in the Computers and Computer Systems that KonnectOne and MVNO Connect were not entitled so to obtain or alter. By such conduct, KonnectOne and MVNO Connect furthered their intended fraud and obtained information, files, competitive advantage, business opportunities and other things of value, other than mere Computer and Computer System access, thus proximately causing damage and loss to Plintron USA in an amount exceeding $5,000 in a one-year period.

299. KonnectOne and MVNO Connect further knowingly caused the transmission of Plintron USA's electronically stored information and, as the result of such conduct, intentionally caused damage without authorization to Plintron USA's Computers and Computer Systems.

300. KonnectOne and MVNO Connect further intentionally accessed Plintron USA's Computers and Computer Systems without authorization and, as the result of such conduct, recklessly caused damage to Plintron USA.

301. KonnectOne and MVNO Connect further intentionally accessed Plintron USA's Computers and Computer Systems without authorization and, as the result of such conduct, caused damage and loss to Plintron USA.

302. Plintron USA is entitled to damages in an amount to be proven at trial, and to injunctive relief (in the form of the return of all its property still in KonnectOne and MVNO Connect's possession) as a result of KonnectOne and MVNO Connect' violation of the CFAA.

**COUNT XIV – NEGLIGENCE**
**(Wash. Rev. Code § 9A.90, *et seq.*)**
**Against KonnectOne and MVNO Connect**

303. Plintron USA re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

304. KonnectOne and MVNO Connect, and each of them, had a duty, pursuant to Wash. Rev. Code § 9A.90.080, to refrain from:



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

a) Accessing Plintron USA's computer system and/or electronic database without Plintron's authorization;

b) Causing the transmission of data, data program, or other electronic command that interrupts or suspends access to or use of Plintron USA's data network or data service without Plintron's authorization;

c) Altering or destroying Plintron USA's data as it was transmitted between two data systems over an open or unsecured network without Plintron's authorization;

d) Obtaining Plintron USA's electronic data without Plintron's authorization with the intent to either devise or execute any scheme to defraud, deceive, extort, or commit any other crime; or to wrongfully control, gain access to, or obtain money, property or electronic data.

305. KonnectOne and MVNO Connect breached these duties, acting by and through the conduct of their employees, agents, and representatives, which included but was not limited to the following:

a) Intentionally accessing their Plintron-issued devices with the intent to transfer, alter, and/or destroy the data stored therein, without Plintron's authorization;

b) Intentionally accessing Plintron USA's Microsoft Office 365 systems with intent to transfer, alter, and/or delete data stored therein, without Plintron's authorization;

c) Maliciously transferring, altering, and/or deleting Plintron USA's data housed on its MS tenant without Plintron's authorization;

d) Intentionally accessing Plintron USA's email system with intent to transfer, alter, and/or delete data stored therein, without Plintron's authorization;



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

e) Maliciously transferring, altering, and/or deleting Plintron's email data without Plintron's authorization;

f) Maliciously and without Plintron's authorization, causing the transmission of data, data program, or other electronic command that interrupted or suspended Plintron's access to, and use of its data network and/or other data services;

g) Intentional use of Corrus Cloud, Barracuda, and other contractors, to access Plintron USA's computer systems without Plintron's authorization, with the intent to transfer, alter, and/or destroy Plintron's electronic information; and

h) Maliciously transferring, altering, and/or deleting the data stored in Plintron USA's computer systems without Plintron's authorization.

306. KonnectOne and MVNO Connect committed these acts with the intent to devise and execute a scheme to defraud, deceive, extort, and wrongfully control, gain access to, and obtain money, property, and electronic data from Plintron USA; and to wrongfully control, gain access to, and obtain money, property, and electronic data from Plintron USA.

307. KonnectOne and MVNO Connect therefore violated Wash. Rev. Code §§ 9A.90.040–060 and 080–100.

308. The purpose of Wash. Rev. Code § 9A.90.080 is to "punish and deter misuse or abuse of technology" perpetrated upon consumers just like Plintron USA. It was thus intended to protect against the very same conduct committed by KonnectOne and MVNO Connect here and exactly the kind of harm Plintron USA suffered as a result.

309. As a proximate result of KonnectOne and MVNO Connect's actions described above, Plintron USA suffered damages in an amount to be proved at trial.



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

## PRAYER FOR RELIEF

WHEREFORE Plintron USA respectfully requests that this Court enter judgment in their favor, granting the following relief against the Defendants:

a) Issuing temporary, preliminary, and permanent injunctive relief restraining all Defendants and anyone associated with Defendants from acquiring, using or disclosing Plintron USA's proprietary and confidential information, and Plintron USA's trade secrets;

b) issuing temporary, preliminary, and permanent injunctive relief requiring all Defendants and anyone associated with Defendants to account for and return to Plintron USA all Plintron USA property in Defendants' possession, custody, and control, including electronic devices and equipment, proprietary and confidential information, Plintron USA's trade secrets, and other data or information, in whatever form, including electronic, physical, and/or photographic form, including any copies thereof;

c) issuing temporary, preliminary, and permanent injunctive relief requiring Mr. Phillips to abide fully by the confidentiality, non-compete and non-solicitation covenants he agreed to during his employment with Plintron USA;

d) issuing temporary, preliminary, and permanent injunctive relief requiring Defendant Mr. Phillips, Mr. Pelly, and Mr. Mathew to not disparage or make false statements about the state of Plintron USA's business;

e) imposing and enforcing a constructive trust over the membership interests in KonnectOne and MVNO Connect to the benefit of Plintron;

f) disgorgement of all funds received by Defendants from their respective breaches and wrongful conduct;

g) awarding recovery under quantum meruit in an amount to be determined at trial, factoring in all interests, costs, and expenses;



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650

h) establish an equitable lien on Defendants' property in an amount to be determined at trial, factoring in all interests, costs, and expenses;

i) entering judgment in Plintron USA's favor and awarding full compensatory and consequential damages to Plintron USA and against all Defendants jointly and severally, in an amount to be determined at trial, factoring in all interest, costs and expenses;

j) awarding Plintron USA exemplary and punitive damages;

k) awarding Plintron USA its reasonable attorneys' fees and costs incurred in bringing and having to pursue this action; and

l) providing Plintron USA with such other and further relief as the Court may deem just and proper.

Dated this 13th day of February, 2026.

BRYAN CAVE LEIGHTON PAISNER LLP

By: *s/ Shane P. Cramer*
Jenny A. Durkan, WSBA # 15751
Randall T. Thomsen, WSBA #25310
Shane P. Cramer, WSBA # 35099
Caleb T. Mathena, WSBA #57001
Courtney Stout, *admitted pro hac vice*

*Attorneys for Plaintiff and Counterclaim Defendants*



BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue, Suite 4400
Seattle, WA 98104
206-600-6650